KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - #84065
rvannest@keker.com
MATTHIAS KAMBER - #232147
mkamber@keker.com
PAVEN MALHOTRA - #258429
pmalhotra@keker.com
SHARIF E. JACOB - #257546
sjacob@keker.com
THOMAS E. GORMAN - #279409
tgorman@keker.com
EDWARD A. BAYLEY - #267532
ebayley@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:   415 397 7188

Attorneys for Defendant
NETFLIX, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| BROADCOM CORPORATION and AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LIMITED,<br><br>        Plaintiffs,<br><br>    v.<br><br>NETFLIX, INC.,<br><br>        Defendant. | Case No. 8:20-cv-00529-JVS-ADS<br><br>**DEFENDANT NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO TRANSFER VENUE PURSUANT TO SECTION 1404(A)**<br><br>Date:       July 13, 2020<br>Time:      1:30 p.m.<br>Dept.:      Courtroom 10C, 10th Floor<br>Judge:     Hon. James V. Selna<br><br>Date Filed:  March 13, 2020<br><br>Trial Date:  None |

# TABLE OF CONTENTS

**Page**

I.      BACKGROUND ....................................................................................................2

II.     LEGAL STANDARD.............................................................................................3

III.    ARGUMENT..........................................................................................................4

        A.      This case could have been filed in the Northern District of California. ..................4

        B.      The Northern District is more convenient than the Central District for the
                vast majority of witnesses. .........................................................................5

        C.      Plaintiff's choice of forum should be entitled to little weight. ............................10

        D.      The Northern District has stronger ties to the parties and Broadcom's
                causes of action than the Central District. .............................................11

        E.      Judicial efficiency would not be served by maintaining the case in the
                Central District.........................................................................................14

        F.      Litigating in the Central District would be more expensive. ................................15

        G.      All relevant documentary evidence is in the Northern District. ...........................16

IV.     CONCLUSION....................................................................................................16

DEFENDANT NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
ITS MOTION TO TRANSFER VENUE PURSUANT TO SECTION 1404(A)
Case No. 8:20-cv-00529-JVS-ADS

1384121

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Acer Am. Corp.*,
626 F.3d 1252 (Fed. Cir. 2010), *as amended* (Jan. 13, 2011)...................................................9

*Acer, Inc. v. Tech. Props. Ltd.*,
2009 WL 279330 (N.D. Cal. Feb. 4, 2009) ...........................................................................14

*Agere Sys., Inc. v. Broadcom Corp.*,
2003 WL 21700458 (E.D. Pa. July 23, 2003).........................................................................12

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC*,
666 F. Supp. 2d 1109 (C.D. Cal. 2009) .................................................................................10

*Amini Innovation Corp. v. JS Imps., Inc.*,
497 F. Supp. 2d 1093 (C.D. Cal. 2007) ...................................................................................5

*Ancora Techs., Inc. v. Apple Inc.*,
2011 WL 13157060 (C.D. Cal. Dec. 12, 2011) .................................................................5, 13

*Avago Techs. Gen. IP (Singapore) Pte Ltd. v. Asustek Computer, Inc.*,
2016 WL 3029674 (N.D. Cal. May 27, 2016) ........................................................................14

*Azure Networks, LLC v. CSR PLC*,
2012 WL 12843207 (E.D. Tex. Sept. 27, 2012) ....................................................................12

*Broadcom Corp. v. Amazon.com Inc.*,
2017 WL 5151356 (C.D. Cal. Sept. 1, 2017) .........................................................................14

*Broadcom Corp. v. Sony Corp.*,
2016 WL 9108913 (C.D. Cal. Oct. 5, 2016)...........................................................................14

*Callidus Software, Inc. v. Xactly Corp.*,
2013 WL 12136523 (C.D. Cal. Mar. 11, 2013)......................................................10, 11, 13, 16

*Cheah IP, LLC v. Plaxo, Inc.*,
2008 WL 9746595 (C.D. Cal. Oct. 17, 2008)......................................................5, 11, 13, 15

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F.2d 834 (9th Cir. 1986) ................................................................................................10

*Denver & Rio Grande W. R.R. Co. v. Bhd. of R.R. Trainmen*,
387 U.S. 556 (1967).................................................................................................................5

*FastVDO LLC v. Netflix, Inc.*,
1:12-cv-01425-RGA (D. Del. filed Nov. 9, 2012)..................................................................12

ii

DEFENDANT NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
ITS MOTION TO TRANSFER VENUE PURSUANT TO SECTION 1404(A)
Case No. 8:20-cv-00529-JVS-ADS

1384121

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*,
    2017 WL 750290 (E.D. Tex. Feb. 27, 2017) ........................................................12

*Golden Bridge Tech., Inc. v. Apple Inc.*,
    2012 WL 3999854 (C.D. Cal. Sept. 11, 2012) ......................................................5

*Gunn v. Minton*,
    568 U.S. 251 (2013) ...............................................................................................4

*Intel Corp. v. Broadcom Corp.*,
    167 F. Supp. 2d 692 (D. Del. 2001) ....................................................................12

*Intellisoft, Ltd. v. Toshiba Corp.*,
    2012 WL 12888547 (C.D. Cal. June 11, 2012) ....................................................5

*J. McIntyre Mach., Ltd. v. Nicastro*,
    564 U.S. 873 (2011) ...............................................................................................4

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) .................................................................................4

*In re Link_A_Media Devices Corp.*,
    662 F.3d 1221, 1224 (Fed. Cir. 2011) .................................................................16

*Locata LBS, LLC v. Yellowpages.com, LLC*,
    2014 WL 12703743 (C.D. Cal. April 18, 2014) .........................................5, 13, 15

*LSI Corp. v. Funai Elec. Co., Ltd.*,
    2015 WL 12711648 (C.D. Cal. Aug. 21, 2015) ..................................................15

*Max Blu Techs., LLC v. Netflix, Inc.*,
    2:15-cv-01766-JRG (E.D. Tex. filed Nov. 13, 2015) ..........................................12

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
    518 F.3d 897 (Fed. Cir. 2008) ............................................................................14

*Monolithic Power Sys., Inc. v. Silergy Corp.*,
    2014 WL 12586380 (C.D. Cal. April 14, 2014) .............................................5, 16

*Nazomi Commc'ns v. Nokia*,
    2010 WL 11509140 (C.D. Cal. Oct. 2, 2010) ..................................................5, 7

*In re Nintendo Co., Ltd.*,
    589 F.3d 1194 (Fed. Cir. 2009) ........................................................................5, 6

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
    2008 WL 11338129 (C.D. Cal. June 3, 2008) ......................................................5

*Nuance Commc'ns, Inc. v. eCopy, Inc.*,
    2008 WL 11400729 (C.D. Cal. Sept. 2, 2008) .....................................................5

iii

DEFENDANT NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
ITS MOTION TO TRANSFER VENUE PURSUANT TO SECTION 1404(A)
Case No. 8:20-cv-00529-JVS-ADS

1384121

*Personnel Staffing Grp.*, 2020 WL 2039945, at *5 (C.D. Cal. Apr. 28, 2020) ...................5, 6, 13

*Synopsys, Inc. v. Mentor Graphics Corp.*,
  2013 WL 1365946 (N.D. Cal. Apr. 3, 2013) ..........................................................................14

*Tessera, Inc. v. Broadcom Corp.*,
  2017 WL 1065865 (D. Del. Mar. 21, 2017) ............................................................................12

*Tessera, Inc. v. Broadcom Corp.*,
  No. 16-379-LPS-CJB (D. Del. July 18, 2016) ..................................................................11, 15

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) ...................................................................................................................3

**Federal Statutes**

28 U.S.C. § 1391 .............................................................................................................................4

28 U.S.C. § 1400 .............................................................................................................................4

28 U.S.C. § 1404 .................................................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 45(c)(1) ...................................................................................................................9

**Other Authorities**

*About Netflix*, Netflix Media Center, https://media.netflix.com/en/about-netflix
  (last visited May 18, 2020) .......................................................................................................2

Patrick McGreevy et al., *New signs that coronavirus restrictions are here for the
  long haul in California*, Los Angeles Times (May 12, 2020) .................................................13

Quoctrung Bui et al., *When 511 Epidemiologists Expect to Fly, Hug and Do 18
  Other Everyday Activities Again*, The New York Times (June 8, 2020)...................................8

Patent No. US 2005/005940 .............................................................................................................8

Patent No. US 2006/0268166 A1......................................................................................................9

Patent No. US 2010/0208818 A1......................................................................................................9

Patent No. US 2012/0128067 ...........................................................................................................9

U.S. Patent No. 5,508,732.................................................................................................................8

U.S. Patent No. 6,341,375.......................................................................................................3, 7, 8

U.S. Patent No. 6,636,480.................................................................................................................8

DEFENDANT NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
ITS MOTION TO TRANSFER VENUE PURSUANT TO SECTION 1404(A)
Case No. 8:20-cv-00529-JVS-ADS

1384121

U.S. Patent No. 6,744,387....................................................................................................3

U.S. Patent No. 6,952,401....................................................................................................8

U.S. Patent No. 6,982,663...............................................................................................3, 15

U.S. Patent No. 7,266,079....................................................................................................3

U.S. Patent No. 8,259,121.................................................................................................3, 6

U.S. Patent No. 8,270,992.................................................................................................3, 8

U.S. Patent No. 8,572,138 ...........................................................................................3, 7, 9

U.S. Patent No. 8,959,245....................................................................................................3

U.S. Patent No. 9,332,283.................................................................................................3, 9

U.S. Patent No. 10,499,063..................................................................................................9

Yashaswini Swamynathan, *Broadcom completes move to U.S. from Singapore*,
  Reuters (Apr. 4, 2018) .................................................................................................12

DEFENDANT NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
ITS MOTION TO TRANSFER VENUE PURSUANT TO SECTION 1404(A)
Case No. 8:20-cv-00529-JVS-ADS

1384121

This action is a dispute between companies headquartered in the Northern District of California over accused technology that was entirely developed in that District.  Plaintiff Broadcom Corp. maintains its sole headquarters in San Jose, California, where Plaintiff Avago Technologies International Sales Pte. Limited ("Avago") maintains its only known U.S. office.[1]  Defendant Netflix, Inc. ("Netflix") is headquartered nearby in Los Gatos.  All documentary evidence relating to the accused technology is in the Northern District of California.  The vast majority of witnesses, including third-party witnesses, reside in the Northern District.  Even the parties' outside counsel are based either in the Northern District or outside of California entirely.  For these reasons, this action should be transferred, under 28 U.S.C. § 1404(a), to the U.S. District Court for the Northern District of California.

Broadcom cannot reasonably argue that the Northern District is inconvenient.  To the contrary, Broadcom has moved to transfer for convenience *to* the Northern District in at least five different patent cases.  Justifiably so, considering Broadcom employs over 2,000 employees in at least four different offices in the Northern District.  In those offices, Broadcom maintains its Video Technology, Enterprise Switching, and Home Networking Groups—the types of technology its asserted patents purport to cover.  Although Broadcom has chosen to sue in the Central District instead of the more natural and convenient Northern District, the deference normally afforded to a plaintiff's choice of forum is limited where, as here, the plaintiff and disputed technology are both based in the transferee forum.

Broadcom's only apparent basis for filing in this forum is the fact that this Court has previously considered claims in three of the nine asserted patents.  That fact does not outweigh all the others.  *First*, the Court has not considered six asserted patents—the bulk of this nine-patent case.  *Second*, the present case

---

[1] Plaintiffs Broadcom Corp. and Avago are collectively referred to as "Broadcom."

involves different technology, implicating new questions of fact and law.  *Third*, to the extent prior experience matters, the Northern District is also familiar with two of the asserted patents.  Under these circumstances, there is no significant savings in time or resources by maintaining the case in the Central District.

Ultimately, convenience to the witnesses and litigants is the most important consideration in a Section 1404(a) transfer.  Since Broadcom filed its complaint, the COVID-19 pandemic has created logistical and safety concerns that will render travel inadvisable and even unsafe for witnesses and litigants for the foreseeable future, making local court access more important than ever.  In a case like this where the parties, documents, witnesses, and lawyers are all located outside of this District, and all but a few lawyers are in the transferee district, transfer is warranted.

## I.      BACKGROUND

Netflix is a global leader in streaming digital video content.  Compl. ¶ 11.  It streams videos, including TV series, documentaries, and feature films, to over 183 million subscribers in over 190 countries worldwide.[2]  Netflix is a Delaware corporation that maintains its principal place of business and global headquarters in Los Gatos, California.  Compl. ¶ 8.  Los Gatos is the epicenter for Netflix's product, engineering, development, and design activities.  *See* Declaration of Elena Garnica in Support of Defendant Netflix, Inc.'s Motion to Transfer Venue Pursuant to Section 1404(A) ("Garnica Decl.") ¶¶ 3-4.  While Netflix maintains a group of offices in Los Angeles, those offices are primarily focused on content licensing, content production, and marketing.  *Id.* ¶ 5.

Broadcom develops semiconductor devices that are used in end products such as enterprise and data center networking, home connectivity, set-top boxes,

---

[2] *About Netflix*, Netflix Media Center, https://media.netflix.com/en/about-netflix (last visited May 18, 2020).

1384121

telecommunication equipment, and smartphones.[3]  It also offers infrastructure software that enables customers to manage secure applications across mainframe, distributed mobile, and cloud platforms.  *Id.*  Broadcom Corp. is headquartered in San Jose, California.  Compl. ¶ 6.  Avago is an indirect subsidiary of Broadcom Corp. with places of business in Singapore and San Jose, California.  *Id.* ¶ 7.

According to Broadcom, its set-top box business is declining.  *Id.* ¶ 20.  Broadcom accused Netflix's streaming service technology and infrastructure of patent infringement and "repeatedly attempted to engage Netflix in licensing discussions."  *Id.* ¶¶ 22-23.  These discussions included an in-person meeting on October 24, 2019—in the Northern District of California.  *Id.* ¶ 23; Garnica Decl. ¶ 7.  The parties did not reach an agreement, and Broadcom filed this lawsuit.[4]

## II.  LEGAL STANDARD

Section 1404(a) permits a district court to transfer a civil action to any other district where it might have been brought "[f]or the convenience of parties and witnesses" and "in the interest of justice."  28 U.S.C. § 1404(a).  This provision serves two key purposes: "to prevent the waste of time, energy and money"; and "to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quotations omitted).  To achieve these goals, courts may consider: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in

---

[3] *See* Exhibit 1 to the Declaration of Matthias Kamber in Support of Defendant Netflix, Inc.'s Motion to Transfer Venue Pursuant to Section 1404(A) ("Kamber Decl.").

[4] Broadcom accuses Netflix of infringing nine patents: U.S. Patent Nos. 7,266,079 (the "'079 Patent"); 8,259,121 (the "'121 Patent"); 8,959,245 (the "'245 Patent"); 8,270,992 (the "'992 Patent"); 6,341,375 (the "'375 Patent"); 8,572,138 (the "'138 Patent"); 6,744,387 (the "'387 Patent"); 6,982,663 (the "'663 Patent"); and 9,332,283 (the "'283 Patent").

DEFENDANT NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
ITS MOTION TO TRANSFER VENUE PURSUANT TO SECTION 1404(A)
Case No. 8:20-cv-00529-JVS-ADS

1384121

the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

## III.   ARGUMENT

The relevant *Jones* factors overwhelmingly favor transfer to the Northern District of California under normal circumstances. The Northern District affords greater convenience, stronger ties to the parties and causes of action, lower costs of litigation, and more convenient access to documentary evidence. In contrast, the only factors that arguably weigh against transfer—this Court's prior experience with certain asserted patents and Broadcom's choice of forum—are entitled to relatively little weight. But the COVID-19 pandemic further shifts the balance in favor of transfer. Considering the public health risks posed by travel for the foreseeable future, the forum closest to the witnesses and litigants is the most appropriate forum for this case.

### A.   This case could have been filed in the Northern District of California.

As a threshold matter, this lawsuit could have been filed in the Northern District of California. Federal courts, including the Northern District, have subject matter jurisdiction over federal statutory claims, including claims for patent infringement. *Gunn v. Minton*, 568 U.S. 251, 263 (2013); 28 U.S.C. § 1400(b). Moreover, Netflix is subject to personal jurisdiction in the Northern District, where it maintains its principal place of business. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). Finally, for the same reasons, and because Netflix has allegedly committed acts of infringement there, venue would be proper in the Northern District. *See* 28 U.S.C. §§ 1391(b)-(d), 1400(b); *see also* Compl. ¶ 13.

**B.     The Northern District is more convenient than the Central District for the vast majority of witnesses.**

According to the Federal Circuit, the convenience and the availability of relevant witnesses is "often the most important factor in determining whether a transfer pursuant to § 1404 is appropriate."  *Amini Innovation Corp. v. JS Imps., Inc.*, 497 F. Supp. 2d 1093, 1111 (C.D. Cal. 2007); *see also Denver & Rio Grande W. R.R. Co. v. Bhd. of R.R. Trainmen*, 387 U.S. 556, 560 (1967) ("[V]enue is primarily a matter of convenience of litigants and witnesses."); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009) (observing that "[a]dditional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.").  Courts in this District regularly transferred patent cases to the Northern District for witness convenience prior to the pandemic.[5]

The importance of witness convenience is even greater under the conditions imposed by COVID-19.  For example, in *Personnel Staffing Grp., LLC v. Protective Ins. Co.*, this Court considered COVID restrictions on travel for the parties in dismissing a case for *forum non conveniens*—a far more stringent standard than that of a Section 1404(a) transfer.  2020 WL2039945, at *5 (C.D.

---

[5] *See, e.g., Cheah IP, LLC v. Plaxo, Inc.*, 2008 WL 9746595, at *3 (C.D. Cal. Oct. 17, 2008) (Otero, J.) (rejecting the plaintiff's contention that litigating in the Central District would be equally convenient to the Northern District because Northern District witnesses "would have to travel over 300 miles and likely spend at least one night" in the Central District for trial); *see also Nuance Commc'ns, Inc. v. Abbyy Software House*, 2008 WL 11338129, at *4 (C.D. Cal. June 3, 2008); *Nuance Commc'ns, Inc. v. eCopy, Inc.*, 2008 WL 11400729, at *2 (C.D. Cal. Sept. 2, 2008); *Nazomi Commc'ns v. Nokia*, 2010 WL 11509140, at *3 (C.D. Cal. Oct. 2, 2010); *Ancora Techs., Inc. v. Apple Inc.*, 2011 WL 13157060, at *3 (C.D. Cal. Dec. 12, 2011); *Golden Bridge Tech., Inc. v. Apple Inc.*, 2012 WL 3999854, at *4 (C.D. Cal. Sept. 11, 2012); *Intellisoft, Ltd. v. Toshiba Corp.*, 2012 WL 12888547, at *5-6 (C.D. Cal. June 11, 2012); *Locata LBS, LLC v. Yellowpages.com, LLC*, 2014 WL 12703743, at *5 (C.D. Cal. April 18, 2014); *Monolithic Power Sys., Inc. v. Silergy Corp.*, 2014 WL 12586380, at *2 (C.D. Cal. April 14, 2014).

1384121

Cal. Apr. 28, 2020).  Besides the risk posed by domestic travel, the court also considered the fact that the plaintiff's headquarters, witnesses, and documentary evidence were all located in an alternative forum.  *Id.*

Here, witness convenience necessitates transfer.  As a general matter, Netflix's witnesses will be in the Northern District, where Netflix maintains its principal place of business and global headquarters and conducts its engineering, development, and design work.  Garnica Decl. ¶ 4.  Although this case is in its early stages, Netflix has already identified at least four specific employees who reside in the Northern District and may serve as potential witnesses:

- Anne Aaron, Menlo Park, CA, Director of Encoding Technologies;
- Alex Gutarin, Monte Sereno, CA, Director of Engineering and Content Delivery;
- Mark Watson, San Francisco, CA, Director of Streaming Standards; and
- Renee Rodriguez, Campbell, CA, Vice President, Corporate Controller.

Garnica Decl. ¶ 10.  Absent infringement contentions, it is difficult to determine which other employees might be relevant, but there will certainly be others.  Indeed, in a patent infringement case, the accused infringer possesses most of the relevant evidence.  *See In re Nintendo*, 589 F.3d at 1199.  The testimony of Netflix's employees about the accused technology and Netflix's business will therefore be critical.  These specific employees, as well as yet-unidentified others from Netflix's Northern District base of operations and engineering, will be significantly inconvenienced if the case were to proceed in the Central District.  *See* Garnica Decl. ¶ 11.

Moreover, of the fourteen inventors of the asserted patents, only four live in the Central District whereas the following six reside in the Northern District:

- Patrick Law, Milpitas, CA ('121 patent);
- Darren Neuman, Palo Alto, CA ('121 patent);
- David Baer, San Jose, CA ('121 patent);

1384121

- Jagane Sundar, Saratoga, CA ('138 patent);
- Sanjay Radia, Fremont, CA ('138 patent); and
- Daniel Watkins, San Jose, CA ('375 patent).

Kamber Decl. ¶ 4.  These individuals will provide important factual testimony on, among other things, issues related to priority dates, the meaning of certain terminology, purported improvements over the prior art, and the existence of commercial embodiments, if any.  That evidence will bear upon legal issues including claim interpretation, validity (including written description and enablement), and damages.  For these reasons, it is almost certain that some or all of them would be required to testify at trial.  *Cf. Nazomi Commc'ns,* 2010 WL 11509140, at *3 (noting the significance of inventor testimony).  But because the listed inventors reside in the Northern District, travel to the Central District will naturally be less convenient for them.  Moreover, at least three of the inventors who live in the Northern District no longer work for Broadcom and are therefore third-party witnesses, while all four inventors who reside in the Central District are currently employed by Broadcom.  Kamber Decl. ¶¶ 5-7.

Some third-party witnesses referenced by Broadcom's Complaint also reside in the Northern District:

- David Ronca, Campbell, CA, is a former Netflix employee and may offer testimony on Netflix's encoding technology, *see* Compl. ¶ 152;
- Timothy Bozarth, San Jose, CA, is a former Netflix employee and may offer testimony on Netflix's container technology, *see id.* ¶ 203;
- Amol Kher, San Jose, CA, is a former Netflix employee and may offer testimony about Netflix's playback application technology, *see id.* ¶ 178.

These individuals authored documents relied on by Broadcom in its Complaint and are thus likely to have relevant information.  Should these individuals choose to appear in the Central District, travel to Santa Ana would not only be less convenient for them but would pose unique complications to them and their families during the

DEFENDANT NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
ITS MOTION TO TRANSFER VENUE PURSUANT TO SECTION 1404(A)
Case No. 8:20-cv-00529-JVS-ADS

1384121

COVID-19 pandemic.  *See, e.g.*, Declaration of David Ronca in Support of Defendant Netflix, Inc.'s Motion to Transfer Venue Pursuant to Section 1404(A) ("Ronca Decl.") ¶¶ 6-7 (travel would require a fourteen-day self-quarantine following a hotel stay).  Though these risks may abate by the time these witnesses appear, the trajectory of the virus, and resultant travel restrictions, remain uncertain.[6]

Upon information and belief, the following additional prior art witnesses also reside in the Northern District:

- Shiri Kadambi, located in Los Altos, CA, may offer testimony regarding U.S. Patent No. 6,952,401, which is prior art to the '079 patent;

- Shekhar Ambe, located in San Jose, CA, may offer testimony regarding U.S. Patent No. 6,952,401, which is prior art to the '079 patent;

- Mohan Kalkunte, located in Sunnyvale, CA, may offer testimony regarding U.S. Patent No. 6,952,401, which is prior art to the '079 patent;

- Lakhinder Walia, Santa Clara, CA, may offer testimony regarding U.S. Patent No. 6,636,480, which is prior art to the '079 patent;

- Sanjay Jain, Santa Clara, CA, may offer testimony regarding U.S. Patent No. 6,636,480, which is prior art to the '079 patent;

- Romulus Pereira, Sunnyvale, CA, may offer testimony regarding U.S. Patent No. 6,636,480, which is prior art to the '079 patent;

- Bich Tu Nguyen, Los Altos, CA, may offer testimony regarding Patent No. US 2005/005940, which is prior art to the '992 patent;

- Robin Williams, San Jose, CA, may offer testimony regarding U.S. Patent No. 5,508,732, which is prior art to the '375 patent;

---

[6] Quoctrung Bui et al., *When 511 Epidemiologists Expect to Fly, Hug and Do 18 Other Everyday Activities Again*, The New York Times (June 8, 2020), https://www.nytimes.com/interactive/2020/06/08/upshot/when-epidemiologists-will-do-everyday-things-coronavirus.html (noting that 37% of epidemiologists do not anticipate traveling by airplane within the next 12 months).

- Alexandros Tourapis, Los Gatos, CA, may offer testimony regarding Patent No. US 2006/0268166 A1, which is prior art to the '283 patent;

- Peng Yin, Sunnyvale, CA, may offer testimony regarding Patent No. US 2010/0208818 A1, which is prior art to the '283 patent;

- Ximin Zhang, Santa Clara, CA, may offer testimony regarding U.S. Patent No. 10,499,063, which is prior art to the '283 patent; and

- Shan Liu, Palo Alto, CA, may offer testimony regarding U.S. Patent Nos. 10,499,063 and US 2012/0128067, which are prior art to the '283 patent.

Kamber Decl. ¶ 11. For these third-party witnesses, appearing in the Central District would be less convenient than appearing in their venue of residence.

Finally, there are several third-party companies based in the Northern District whose employees likely possess information relevant to this suit, including VMware, Inc., and Docker, Inc., both headquartered in Palo Alto, CA. Kamber Decl. ¶¶ 12-13. VMware, Inc. is specifically identified in the '138 patent as a known commercial virtual machine manager; therefore, VMware likely has critical information related to the automated deployment of virtual machine managers as described in that patent. *See* '138 patent at 32:62-64. As for Docker, Broadcom alleges that its container technology, as incorporated into the Netflix Titus platform, infringes the '138 patent. *See* Compl. ¶ 199 (equating an element of asserted claim 1 of the '138 patent with the Docker Registry). Therefore, Docker employees may have relevant information on the functionality of that aspect of the accused Titus platform. Notably, neither these employees nor the other anticipated third-party witnesses, including the prior art witnesses and inventors not currently employed by Broadcom, would be subject to compulsory process in the Central District—"an important factor in the § 1404(a) calculus." *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010), *as amended* (Jan. 13, 2011).[7]

---

[7] Fed. R. Civ. P. 45(c)(1) provides that a subpoena may command a party to attend a trial, hearing, or deposition "within the state where the person resides, is

Because witness convenience is central to the § 1404(a) inquiry and the vast majority of anticipated witnesses reside in the Northern District, this factor weighs heavily in favor of transfer, particularly in light of the ongoing COVID-19 pandemic.

## C. Plaintiff's choice of forum should be entitled to little weight.

After the parties met and conferred over the present Motion, the *only* reason Broadcom offered against transfer was that its choice of forum was entitled to deference. But here, Broadcom's choice of forum carries little significance. While a plaintiff's choice of forum is traditionally afforded deference, *see Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986), "the degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff does not reside in the venue or where the forum lacks a significant connection to the activities alleged in the complaint." *Callidus Software, Inc. v. Xactly Corp.*, 2013 WL 12136523, at *2 (C.D. Cal. Mar. 11, 2013); *see also Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1131 (C.D. Cal. 2009) ("A plaintiff's choice of forum is entitled to less deference, however, when the plaintiff elects to pursue a case outside its home forum.").

Both mitigating factors are present here. First, Broadcom's headquarters and Avago's only U.S. location are both in San Jose, California—in the Northern District. Compl. ¶¶ 6-7. Second, as described in Section III.D., *infra*, the Central District lacks significant connection to the activities alleged in the Complaint because the accused infringing products were developed in, and are operated out of, Netflix's headquarters in Northern District. Under these circumstances,

---

employed, or regularly transacts business in person," and a non-party to attend the same "within 100 miles of where the person resides, is employed, or regularly transacts business in person . . . ."

1384121

Broadcom's choice of venue deserves little, if any, deference.

### D. The Northern District has stronger ties to the parties and Broadcom's causes of action than the Central District.

The Northern District's contacts with the parties and the causes of action far outweigh those of the Central District. "[I]n patent infringement actions, the preferred forum is that which is the center of gravity of the accused activity." *Callidus,* 2013 WL 12136523, at *3. Courts assessing this factor primarily look to the location of the parties and the development of the accused technology. A district court "ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production," which often includes where the development, testing, and research of the subject product occurred. *Id.*; *see also Cheah,* 2008 WL 9746595, at *4 ("[I]n patent infringement cases, the locus of operative facts is where the allegedly infringing product was designed, developed, and managed.").

Where the parties *and* the accused technology are based in the transferee forum, transfer is warranted. For example, in *Callidus*, Judge Kronstadt found transfer to the Northern District to be appropriate because both parties were headquartered in the Northern District, the allegedly infringing products were designed there, and consequently the Northern District provided easier access to witnesses and sources of proof. 2013 WL 12136523, at *5. He discounted the plaintiff's choice of forum in light of these countervailing factors, reasoning that the "center of gravity" for the dispute was clearly the Northern District. *Id.*

Likewise, the "center of gravity" for this case is the Northern District. Broadcom and Netflix maintain their principal places of business in the Northern District. As of 2017, Broadcom employed over 2,000 people in offices located in San Jose, Petaluma, Santa Clara, and Sunnyvale. *See* Opening Brief in Support of Defendant Broadcom Corp.'s Motion to Transfer and Unopposed Motion to Stay at 5, *Tessera, Inc. v. Broadcom Corp.*, No. 16-379-LPS-CJB (D. Del. July 18, 2016),

11

DEFENDANT NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO TRANSFER VENUE PURSUANT TO SECTION 1404(A)
Case No. 8:20-cv-00529-JVS-ADS

1384121

1  ECF. 13 ("Tessera Br.").  This number is likely higher now that Broadcom has

2  relocated its sole headquarters to the Northern District.[8]

3      Moreover, the parties' *relevant* operations are in the Northern District.  For

4  example, while Netflix maintains offices in Los Angeles for its content licensing,

5  content production, and marketing, Netflix's Los Gatos headquarters is where

6  product design and development for its accused streaming service take place.  *See*

7  Garnica Decl. ¶¶ 4, 9.  Likewise, it appears that while Broadcom maintains an

8  office in Irvine, California, upon information and belief, its Digital Video

9  Technology, Enterprise Switching, and Home Networking Groups are in Sunnyvale

10 and San Jose.  *See Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 695 (D.

11 Del. 2001).  Broadcom and Netflix met to discuss the asserted patents in the

12 Northern District.  Garnica Decl. ¶ 7.  The mere presence of offices in the Central

13 District, when those offices are not relevant to the instant case, does not weigh

14 against transfer.

15     Broadcom's ties to the Northern District are further evidenced by the fact that

16 it has moved to transfer to the Northern District in no fewer than five patent cases.

17 *See Tessera, Inc. v. Broadcom Corp.*, 2017 WL 1065865, at *1 (D. Del. Mar. 21,

18 2017); *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, 2017 WL 750290, at *1 (E.D.

19 Tex. Feb. 27, 2017); *Azure Networks, LLC v. CSR PLC*, 2012 WL 12843207, at *1

20 (E.D. Tex. Sept. 27, 2012); *Agere Sys., Inc. v. Broadcom Corp.*, 2003 WL

21 21700458, at *1 (E.D. Pa. July 23, 2003); *Intel Corp.*, 167 F. Supp. 2d at 694.[9]

22

23 [8] Yashaswini Swamynathan, *Broadcom completes move to U.S. from Singapore*,
   Reuters (Apr. 4, 2018) https://www.reuters.com/article/us-broadcom-

24 domicile/broadcom-completes-move-to-u-s-from-singapore-idUSKCN1HB34G.

25 [9] In contrast, Netflix has only twice moved to transfer to the Central District for
   patent cases.  In one case, the motion was withdrawn.  *See FastVDO LLC v. Netflix,*

26 *Inc.*, 1:12-cv-01425-RGA (D. Del. filed Nov. 9, 2012).  And the second case was
   under vastly different circumstances.  *See Max Blu Techs., LLC v. Netflix, Inc.*,

27 2:15-cv-01766-JRG (E.D. Tex. filed Nov. 13, 2015).  In *Max Blu*, the plaintiff sued
   Netflix for infringing patents related to Blu-ray disc technology through Netflix's

28 Blu-ray and DVD rental subscription service.  Garnica Decl. ¶ 6.  Netflix did not

1384121

Having repeatedly argued that the Northern District is a convenient forum to litigate its patents, Broadcom cannot reasonably take the opposite position in this case.

Crucially, in this case Netflix designed, developed, and manages the allegedly infringing technology in the Northern District.  Garnica Decl. ¶ 9.  This is often a key consideration in the venue analysis.  *See, e.g.*, *Ancora,* 2011 WL 13157060, at *3 (transferring a case from the Central District to the Northern District when the allegedly infringing products were designed there); *Callidus*, 2013 WL 12136523, at *3 (same); *Cheah IP,* 2008 WL 9746595, at *4 (same); *Locata*, 2014 WL 12703743, at *4 (same).

Finally, even outside counsel for both parties are either in the Northern District or outside of California.[10]  Convenience of counsel is not typically afforded much if any weight in the transfer analysis.  *Cheah IP*, 2008 WL 9746595, at *2.  But given the COVID-19 pandemic, courts have begun to consider travel restrictions in assessing venue convenience.  *See, e.g.*, *Personnel Staffing Grp.,* 2020 WL 2039945, at *5 (C.D. Cal. Apr. 28, 2020).  It is unclear when travel restrictions will be lifted and if or when they might be reimposed.[11]  Either way, it will likely be some time before business travel goes back to normal.[12]  Accordingly, maintaining this case in the Central District creates unnecessary complications

---

make or sell any of the accused products but obtained them from third-party suppliers located in the Central District of California.  *Id.*  Accordingly, transfer to the Central District was appropriate in that case, since the relevant witnesses and documentary evidence relating to the accused technology were in the possession of third parties located in the Central District.

[10] On May 27, several Dallas-based attorneys appeared *pro hac vice* on behalf of Broadcom.  This should not impact the analysis, as it would be equally convenient for these attorneys to travel to California in either case.

[11] *See, e.g.*, Patrick McGreevy et al., *New signs that coronavirus restrictions are here for the long haul in California*, Los Angeles Times (May 12, 2020), https://www.latimes.com/california/story/2020-05-12/coronavirus-restrictions-stay-at-home-long-haul-california.

[12] *See* n.6, *supra*.

DEFENDANT NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO TRANSFER VENUE PURSUANT TO SECTION 1404(A)
Case No. 8:20-cv-00529-JVS-ADS

1384121

related to attending discovery, claim construction, and potentially trial proceedings.

The Northern District's strong ties to the dispute and the greater convenience of that forum make transfer appropriate.

### E. Judicial efficiency would not be served by maintaining the case in the Central District.

This case's only apparent connection to the Central District is that this Court previously considered claims in three of the nine asserted patents. *See Broadcom Corp. v. Sony Corp.*, 2016 WL 9108913, at *1 (C.D. Cal. Oct. 5, 2016) ('387 and '663 patents); *Broadcom Corp. v. Amazon.com Inc.*, 2017 WL 5151356, at *10-16 (C.D. Cal. Sept. 1, 2017) ('387, '663, and '375 patents). But this fact does not preclude transfer for three reasons.

***First***, as a practical matter, this Court is unfamiliar with six out of nine asserted patents. And those six patents represent eleven out of fourteen asserted claims in the Complaint. The Court's prior experience is therefore not applicable to the bulk of the instant case.

***Second***, as a legal matter, the Court's familiarity with several patents should matter little, if at all, to the transfer analysis. *See Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 905 (Fed. Cir. 2008) (observing that a transferee court's familiarity with patents, alone, "does not suggest a better forum" under 1404(a)); *accord Synopsys, Inc. v. Mentor Graphics Corp.*, 2013 WL 1365946, at *7 n.7 (N.D. Cal. Apr. 3, 2013) (finding that a transferor court's familiarity with one of several patents does not weigh against transfer). This is especially true when different products are at issue, because "there is no guarantee that the same claims will be asserted." *Acer, Inc. v. Tech. Props. Ltd.*, 2009 WL 279330, at *2 (N.D. Cal. Feb. 4, 2009). Given the entirely new factual and legal issues posed by this case, the Court's familiarity with several patents should carry little weight.

***Third***, to the extent prior experience is relevant, the Northern District has also considered two of the asserted patents. *See Avago Techs. Gen. IP (Singapore)*

*Pte Ltd. v. Asustek Computer, Inc.*, 2016 WL 3029674, at *1 (N.D. Cal. May 27, 2016). One court in this District transferred a case including the '663 patent to the Northern District based in part on that District's prior experience. *See LSI Corp. v. Funai Elec. Co., Ltd.*, 2015 WL 12711648, at *1 (C.D. Cal. Aug. 21, 2015). Thus, the Court will not save significant time or resources by denying a transfer.

Considering the overwhelming countervailing considerations, this Court's prior experience with three of the asserted patents should not, as a practical or legal matter, bar transfer.

### F.   Litigating in the Central District would be more expensive.

The relative costs of litigation also favor transfer. This factor typically considers the location of the witnesses, and it may also consider the location of parties' counsel. *Locata*, 2014 WL 12703743, at *5; *Cheah IP*, 2008 WL 9746595, at *2.

Here, both considerations favor the Northern District. As described in Section III.B., *supra*, most anticipated witnesses reside in the Northern District. The cost of transporting witnesses to the Central District will therefore increase the cost of litigation here. In addition, the fact that both parties' outside counsel are either in the Northern District our altogether outside California also tips the scales in favor of transfer. Indeed, in one of its many motions to transfer to the Northern District of California, Broadcom highlighted the importance of counsel's location, reasoning: "Plaintiffs' counsel . . . are all located in California. . . . Accordingly, transferring venue to the Northern District of California would substantially increase the convenience and decrease the cost of this case for all parties." *Tessera Br.* at 14. So too here. Broadcom's outside counsel are located in San Jose, and Netflix's counsel are located in San Francisco. Other counsel for Broadcom recently made appearances, but they are based in Dallas; therefore, their location does not impact the analysis. In short, because most witnesses *and* both parties'

1384121

outside counsel are located in the Northern District (or outside of California), the relative cost of litigating in the Central District will be higher.  This supports transfer.

### G.   All relevant documentary evidence is in the Northern District.

The location of evidence also favors transfer to the Northern District.  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *Callidus*, 2013 WL 12136523, at *5 (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). According to the Federal Circuit, "[w]hile advances in technology may alter the weight given to [the location of documentary evidence], it is improper to ignore [this factor] entirely."  *Monolithic Power*, 2014 WL 12586380, at *4 (quoting *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011)) (alterations in original).

Netflix developed the accused technology in the Northern District of California, so the business records and documents relating to its research, design, and development are located in or accessible from there.  Garnica Decl. ¶ 9.  There is no known documentary evidence relevant to the accused technology in the Central District.  *Id.*  The ease of access to this relevant evidence is yet another factor that makes the Northern District a more appropriate forum.

## IV.   CONCLUSION

For the reasons set forth herein, Netflix respectfully requests that the Court grant the motion to transfer venue to the Northern District of California.

1384121

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  June 8, 2020

KEKER, VAN NEST & PETERS LLP

BY:    */s/* Matthias Kamber
ROBERT A. VAN NEST
MATTHIAS KAMBER
SHARIF E. JACOB

Attorneys for Defendant
NETFLIX, INC.

DEFENDANT NETFLIX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
ITS MOTION TO TRANSFER VENUE PURSUANT TO SECTION 1404(A)
Case No. 8:20-cv-00529-JVS-ADS

1384121