1   Bruce S. Sostek, admitted *pro hac vice*
    bruce.sostek@tklaw.com
2   Richard L. Wynne, Jr., admitted *pro hac vice*
    richard.wynne@tklaw.com
3   Adrienne E. Dominguez, admitted *pro hac vice*
    adrienne.dominguez@tklaw.com
4   THOMPSON & KNIGHT LLP
    One Arts Plaza
5   1722 Routh Street, Suite 1500
    Dallas, Texas 75201
6   Telephone:  (214) 969-1700
    Facsimile:    (214) 969-1751
7
    John V. Picone III, Bar No. 187226
8   jpicone@hopkinscarley.com
    Christopher A. Hohn, Bar No. 271759
9   chohn@hopkinscarley.com
    HOPKINS & CARLEY
10  A Law Corporation
    The Letitia Building
11  70 South First Street
    San Jose, CA  95113-2406
12
    *mailing address:*
13  P.O. Box 1469
    San Jose, CA 95109-1469
14  Telephone: (408) 286-9800
    Facsimile:  (408) 998-4790
15
    Attorneys for Plaintiffs
16  BROADCOM CORPORATION and AVAGO
    TECHNOLOGIES INTERNATIONAL SALES
17  PTE. LIMITED.

18                    UNITED STATES DISTRICT COURT

19              FOR THE CENTRAL DISTRICT OF CALIFORNIA

20

21   BROADCOM CORPORATION, ET AL.,        Case No. 8:20-cv-00529-JVS-ADS

                              Plaintiffs,
22                                         MEMORANDUM ISO PLAINTIFFS'
23        v.                               OPPOSITION TO NETFLIX'S MOTION
                                           TO TRANSFER VENUE
24   NETFLIX, INC.,

25                              Defendant.  Judge:        Hon. James V. Selna
                                           Hearing Date: July 13, 2020
26                                         Time:         1:30 p.m.
27                                         Courtroom:    10C, 10th Floor

28

1

## TABLE OF CONTENTS

2

3 Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

4 Arguments and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . 1

5    A. Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6    B. Netflix has not met its burden of proving that the alleged

7       inconvenience of litigation in this forum favors transfer. . . . . . . . . . 2

8      1.  The first convenience factor—where the relevant

9         agreements were negotiated and executed—does not

10         favor transfer. . . . . . . . . . . . . . . . . . . . . . . . . 3

11      2.  The second factor—state most familiar with the

12         governing law—does not favor transfer. . . . . . . . . . . . . . 3

13      3.  The third convenience factor—Broadcom's choice of

14         forum—weighs strongly against transfer. . . . . . . . . . . . . . . 3

15         •  Netflix has not shown that the Court should

16            discount Broadcom's choice of forum. . . . . . . . . . . . . . . 4

17         a.  Netflix's Los Angeles "entertainment hub" is

18            responsible for significant infringement

19            damages suffered by Broadcom. . . . . . . . . . . . . . . 4

20         b.  Broadcom's facility in Irvine conducts business

21            relevant to this case. . . . . . . . . . . . . . . . . . 6

22      4.  The fourth convenience factor—the parties' contacts

23         with the forum—does not favor transfer. . . . . . . . . . . . . . 7

24         a.  The alleged inconvenience to Netflix employees

25            who "*may* serve as *potential* witnesses" should be

26            discounted. . . . . . . . . . . . . . . . . . . . . . . 8

27         b.  Inconvenience to counsel is irrelevant. . . . . . . . . . . . 8

28

c.  Netflix has not shown that alleged inconvenience
to potential third-party witnesses favors transfer. . . . . . . . . .   9

   i.   Netflix has not identified any former employees
who are likely to testify at trial. . . . . . . . . . . . . . . . . . .   9

   ii.  There is no basis for assuming that litigating in
the Northern District would be more
convenient for inventors than litigating in this
District. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

   iii. Netflix has not identified any employees of
third-party companies who are likely to testify
at trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

   iv.  Netflix has not shown that evidence from
"prior-art" witnesses is relevant. . . . . . . . . . . . . . . .  11

d.  The alleged inconvenience to unidentified and
irrelevant potential witnesses does not justify
transfer based on current pandemic-related travel
restrictions. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

5.  The fifth convenience factor—contacts relating to
plaintiff's cause of action in the chosen forum—does
not favor transfer. . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

6.  The sixth convenience factor—difference in cost of
litigation in the two forums—does not favor transfer. . . . . . . . . .  13

7.  The seventh convenience factor—availability of
compulsory process to compel attendance of unwilling
non-party witnesses—does not favor transfer. . . . . . . . . . . . . .  14

8.  The eighth convenience factor—ease of access to
sources of proof—does not favor transfer. . . . . . . . . . . . . . .  14

9.  The ninth convenience factor—relevant public policy
    of the forum state—does not favor transfer. . . . . . . . . . . . . . .  15

10. Judicial efficiency favors keeping the case in this
    Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Memorandum ISO Opposition
to Motion to Transfer

Case No. 8:20-cv-00529-JVS-ADS

1

TABLE OF AUTHORITIES

2

**Cases**

3  *Amini Innovation Corp. v. JS Imps., Inc.*,

4    497 F. Supp. 2d 1093 (C.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . 7, 11

5  *Avalon Glass & Mirror Co. v. Elec. Mirror, LLC*,

6    No. 216CV 6444 CAS (SK), 2016 WL 7217579 (C.D. Cal. Dec. 12, 2016) . . . 2

7  *Broadcom Corp. v. Amazon.com Inc.*,

8    No. SACV 16-1774 JVS (JCG) (filed Sept. 1, 2017) . . . . . . . . . . . . . . . 16

9  *Broadcom Corp. v. Qualcomm Inc.*,

10    No. SACV 05-468 JVS (MLG), 2005 WL 5925582 (C.D. Cal. Dec. 5, 2005) . . 3

11  *Broadcom Corp. v. Sony Corp.*,

12    No. SACV 16-1052 JVS (JCG), ECF No. 60-1 (Sept. 12, 2016) . . . . . . passim

13  *Butner v. Banco Mercantil Del Norte, S.E.*,

14    No. CV 801764 SJO (RZ), 2009 WL 10672324 (C.D. Cal. Apr. 7, 2009) . . . 8, 9

15  *Cochran v. NYP Holdings, Inc.*,

16    58 F. Supp. 2d 1113 (C.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . 11

17  *Covington v. Curtis*,

18    No. SACV 121258 JVS (AN), 2012 WL 13162890 (C.D. Cal. Oct. 30, 2012)   7, 10

19  *Decker Coal Co. v. Commonwealth Edison Co.*,

20    805 F.2d 834 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

21  *Essociate Inc. v. Adscend Media, LLC*,

22    No. SAC 12-2153 JVS (MLG), ECF No. 19 (C.D. Cal. Feb. 25, 2013) . . . . . . 4

23  *Hawkins v. Gerber Prods. Co.*,

24    924 F. Supp. 2d 1208 (S.D. Cal. 2013) . . . . . . . . . . . . . . . . . . . . . 2

25  *Javidinejad v. Altair Eng'g Inc.*,

26    No. SACV 08-509 JVS (RNB), 2008 WL 11342686 (C.D. Cal. Aug. 25, 2008)   2

27

28

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Kantor v. BigTip, Inc.*,
   No. CV 15-6950-R, 2015 WL 13721160 (C.D. Cal. Nov. 17, 2015) . . . . . . . . 2

*Lax v. Toyota Motor Corp.*,
   65 F. Supp. 3d 772 (N.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . . 15

*Metz v. U.S. Life Ins. Co. in City of N.Y.*,
   674 F. Supp. 2d 1141 (C.D. Cal. 2009). . . . . . . . . . . . . . . . . . . . . . 15

*Pralinsky v. Mut. of Omaha Ins.*,
   No. C 08-3191 MHP, 2008 WL 4532563 (N.D. Cal. Oct. 9, 2008) . . . . . . . . 9

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
   119 F.3d 1559 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Rosholm v. Byb Brands, Inc.*,
   No. SACV 15-1738 (KES), 2016 WL 1445592 (C.D. Cal. Feb. 22, 2016) . passim

*Sec. & Exch. Comm'n v. Hill Int'l, Inc.*,
   No. 20 CIV. 447 (PAE), 2020 WL 2029591 (S.D.N.Y. Apr. 28, 2020) . . . . . 12

*Secured Mail Sols., LLC v. Advanced Image Direct, LLC*,
   No. SACV 12-1090 DOC, 2013 WL 8596579 (C.D. Cal. Jan. 30, 2013) . . . . . 5

*Seely v. Cumberland Packing Corp.*,
   No. 10-cv-02019 LHK, 2010 WL 5300923 (N.D. Cal. Dec. 20, 2010) . . . . . . 3

*Signal IP, Inc. v. Volkswagen Grp. of Am., Inc.*,
   No. LA CV14-3113 JAK (JEM), 2010 WL 5766170 (C.D. Cal. Jan. 20, 2015) . . 4

*Solomon v. Cont'l Am. Life Ins. Co.*,
   472 F.2d 1043 (3d Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Sorensen v. Phillips Plastics Corp.*,
   No. C-08-3094 MHP, 2008 WL 4532556 (N.D. Cal. Oct. 9, 2008) . . . . . . . 3

Memorandum ISO Opposition
to Motion to Transfer

Case No. 8:20-cv-00529-JVS-ADS

*Sparling v. Hoffman Constr.*,

   864 F.2d 635 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Stanbury Elec. Eng'g, LLC v. Energy Prod., Inc.*,

   No. C16-362 JLR, 2016 WL 3255003 (W.D. Wash. June 13, 2016) . . . . . . . 14

*Stewart Org., Inc. v. Ricoh Corp.*,

   487 U.S. 22 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13

*Thermolife Int'l, LLC v. Vital Pharm., Inc.*,

   No. CV 142449 RSWL (AGR), 2014 WL 12235190 (C.D. Cal. Aug. 15, 2014) . 7

**Statutes**

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 9

Netflix is correct that this case could have been brought in the Northern District. Beyond that, Netflix has not shown that any of the relevant venue factors justify transfer. It ignores key facts, relies on unfounded assumptions and speculation, and attempts to place the burden on Broadcom[1] to show that the case should stay in this Court. When the proper standard is applied to all of the facts, it is clear that Netflix has not met *its* burden of proving that this case should be transferred to the Northern District. Broadcom therefore requests that the Court exercise its discretion to deny Netflix's motion.

**ARGUMENTS AND AUTHORITIES**

**A. Legal Standard**

Netflix brings its motion under 28 U.S.C. § 1404(a), which states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." There is no dispute that this case could have been brought in the Northern District, so the question is whether the convenience of the parties and witnesses and the interest of justice favors transfer. *See Rosholm v. Byb Brands, Inc.*, No. SACV 15-1738 (KES), 2016 WL 1445592, at *2 (C.D. Cal. Feb. 22, 2016). Answering this question requires an "individualized, case-by-case determination of convenience and fairness," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988), that includes consideration of the following factors:

1.  the location where the relevant agreements were negotiated and executed;

2.  the state that is most familiar with the governing law;

3.  the plaintiff's choice of forum;

---

[1]   Plaintiffs Broadcom Corporation and Avago Technologies International Sales PTE. Limited are referred to collectively as "Broadcom."

4.  the respective parties' contacts with the forum;

5.  the contacts relating to the plaintiff's cause of action in the chosen forum;

6.  difference in the costs of litigation in the two forums;

7.  the availability of compulsory process to compel attendance of unwilling non-party witnesses;

8.  the ease of access to sources of proof; and

9.  the relevant public policy of the forum state.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

Courts may also consider "the promotion of judicial efficiency and economy in determining whether to transfer an action." *Kantor v. BigTip, Inc.*, No. CV 15-6950-R, 2015 WL 13721160, at *1 (C.D. Cal. Nov. 17, 2015) (citing *Sparling v. Hoffman Constr.*, 864 F.2d 635, 639 (9th Cir. 1988)). Indeed, "some courts have found that while many factors may be considered in determining the interests of justice, 'concerns over judicial efficiency are paramount.'" *Avalon Glass & Mirror Co. v. Elec. Mirror, LLC*, No. 216CV 6444 CAS (SK), 2016 WL 7217579, at *3 (C.D. Cal. Dec. 12, 2016) (quoting *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1214 (S.D. Cal. 2013)).

**B. Netflix has not met its burden of proving that the alleged inconvenience of litigation in this forum favors transfer.**

"[Netflix] bears the burden of proving that the inconvenience of litigation in this forum favors transfer. It must make a '**strong showing** of inconvenience to warrant upsetting [Broadcom]'s choice of forum.'"

*See Javidinejad v. Altair Eng'g Inc.*, No. SACV 08-509 JVS (RNB), 2008 WL 11342686, at *1 (C.D. Cal. Aug. 25, 2008) (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (emphasis added)). And the Court "is vested with a large discretion" in determining whether Netflix has met that burden. *See Broadcom Corp. v. Qualcomm Inc.*, No. SACV 05-468 JVS

1 (MLG), 2005 WL 5925582, at *2 (C.D. Cal. Dec. 5, 2005) (quoting *Solomon v.*
2 *Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1045 (3d Cir. 1973)).

3    For the reasons set forth below, none of the relevant convenience factors favor
4 transfer. On the contrary, two—Broadcom's choice of forum and judicial
5 efficiency—weigh strongly in favor of keeping the case in this Court.

6   **1. The first convenience factor—where the relevant agreements were**
7      **negotiated and executed—does not favor transfer.**

8    The location of the negotiation and execution of "relevant agreements" is
9 neutral because this a patent-infringement suit that is not based on an agreement
10 between the parties. *See Seely v. Cumberland Packing Corp.*, No. 10-cv-02019 LHK,
11 2010 WL 5300923, at *4 (N.D. Cal. Dec. 20, 2010) ("There is no contract at issue
12 in this action [for false patent marking]. Thus, this factor is irrelevant to this
13 analysis.").

14   **2. The second factor—state most familiar with the governing law—does**
15      **not favor transfer.**

16    "The Northern District and the Central District [of California] are equally
17 familiar with federal patent law." *Broadcom Corp. v. Sony Corp.*, No. SACV 16-1052
18 JVS (JCG), ECF No. 60-1 at 8 (Sept. 12, 2016). This factor is also neutral. *See id.*
19 (citing *Sorensen v. Phillips Plastics Corp.*, No. C-08-3094 MHP, 2008 WL 4532556,
20 at *4 (N.D. Cal. Oct. 9, 2008) ("The second factor (familiarity with the governing
21 law) is inapplicable in a choice between two federal courts applying federal law.")).

22   **3. The third convenience factor—Broadcom's choice of forum—weighs**
23      **strongly against transfer.**

24    Contrary to Netflix's contention that Broadcom's choice of forum "carries
25 little significance,"[2] the law is clear and consistent that substantial deference must

26 
27    [2]   Mot. at 10.

28

be given to Broadcom's choice of forum. Indeed, "**the plaintiff's choice of forum carries the *most* weight**" of the convenience factors. *Broadcom v. Sony*, No. SACV 16-1052, ECF No. 60-1 at 3 (emphasis added) (citing *Decker*, 805 F.2d at 843); *see also Rosholm*, 2016 WL 1445592, at *2 ("Because the plaintiff's choice of forum is given 'great weight,' 'the defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.'") (quoting *Decker*, 805 F.2d at 843); *Signal IP, Inc. v. Volkswagen Grp. of Am., Inc.*, No. LA CV14-3113 JAK (JEM), 2010 WL 5766170, at *3 (C.D. Cal. Jan. 20, 2015) ("There is a strong presumption in favor of Plaintiff's choice of forum."); *Essociate Inc. v. Adscend Media, LLC*, No. SAC 12-2153 JVS (MLG), ECF No. 19 at 3 (C.D. Cal. Feb. 25, 2013) ("Generally, substantial deference is given to the plaintiff's choice of forum.").

- **Netflix has not shown that the Court should discount Broadcom's choice of forum.**

Netflix argues that Broadcom's choice of forum should be given less deference because (i) the accused products were developed in the Northern District and (ii) Broadcom's headquarters are in San Jose.[3] Netflix ignores the fact that Netflix and Broadcom both have a substantial presence in this District related to the subject matter of this action.

a. **Netflix's Los Angeles "entertainment hub" is responsible for significant infringement damages suffered by Broadcom.**

Netflix contends that all activities related to its alleged infringement occurred in the Northern District. Netflix ignores key facts. There is no question, for example, that Broadcom has alleged that Netflix commits infringing acts in this

---

[3]   Mot. at 10.

District.[4] *See Secured Mail Sols., LLC v. Advanced Image Direct, LLC*, No. SACV 12-1090 DOC, 2013 WL 8596579, at *5 (C.D. Cal. Jan. 30, 2013) ("[T]he location of the alleged infringing activity is afforded extra weight in patent cases."). In addition, it is undisputed that "Netflix maintains a group of offices in Los Angeles [that] are primarily focused on content licensing, content production, and marketing."[5] In fact, "the Los Angeles office 'is the entertainment hub for Netflix with teams such as Content, Legal, Marketing & Publicity and is located on the Sunset Bronson Studio Lot where a variety of Netflix content is created.'"[6] In short, this "entertainment hub" is responsible for creating, marketing, and managing the streaming services that "generate billions of dollars of revenue for Netflix each year."[7]

Netflix's operations in Los Angeles are highly relevant here because its streaming business is built, in part, on Broadcom's patented technology. Specifically, Netflix uses Broadcom's patented technology "to ensure effective and reliable delivery of streaming content with minimal interruptions, to ensure the efficient use of Netflix server resources, and to encode Netflix streaming content in a format compatible with a large percentage of the client devices (e.g., computers, smart TVs) used to access the Netflix service."[8] The success of Netflix's streaming services has damaged Broadcom. Broadcom sells semiconductor chips used in the set-top boxes that enable traditional cable television services.[9] Netflix's

---

[4]   *See* Complaint ¶ 14.

[5]   Mot. at 2.

[6]   Complaint ¶ 9 (quoting Netflix's website, https://jobs.netflix.com/locations/los-angeles-california).

[7]   Complaint ¶ 11.

[8]   Complaint ¶ 19.

[9]   Complaint ¶ 20.

1   on-demand streaming services, made possible by Broadcom's technology, have

2   caused the market for cable services to decline, which has substantially reduced

3   Broadcom's Set-Top Box business.[10] Simply put, the profits Netflix has gained

4   from its infringing acts are based in large part on the "content licensing, content

5   production, and marketing" activities carried out in Los Angeles. Those activities

6   in the Central District of California are therefore relevant to Broadcom's

7   infringement damages.

8           **b.  Broadcom's facility in Irvine conducts business relevant to this**

9               **case.**

10          Broadcom has operated an expansive facility in Irvine for 25 years, which

11  consists of two buildings totaling 660,000 square feet.[11] Approximately 1,500

12  people are currently employed there, including employees working on the research,

13  development, sales, marketing, and support for Broadcom chips. Some of that work

14  relates to video technology.[12] In fact, Broadcom operates a business unit there that

15  is specifically devoted to chips that are used in cable, satellite, IP and OTT set-top

16  boxes and employs approximately 280 people.[13] This is Broadcom's Set-Top Box

17  business, which has borne the brunt of the damages from Netflix's infringement.

18  That Broadcom's corporate headquarters are in San Jose does not negate the size

19  and importance of its presence in this District, nor does it make the impact of

20

21  _____

22  [10]   Complaint ¶ 20.

23  [11]   **Ex. A**: Declaration of Wade K. Wan, Ph.D (Wan Dec.) ¶ 6.

24  [12]   Contrary to Netflix's implication that Broadcom's research and
    development related to video technology is based in Sunnyvale and San Jose (*see*
25  Mot. at 12), such work is done in many Broadcom facilities, including at its Irvine
26  campus. **Ex. A**: Wan Dec. ¶ 8.

27  [13]   **Ex. A**: Wan Dec. ¶ 8.

28

Netflix's infringement any less relevant to Broadcom's Irvine-based Set-Top Box business.

Netflix has failed to rebut the presumption in favor of Broadcom's choice of forum—Broadcom has a significant presence in this District, and operative facts related to its claims against Netflix have occurred here. This convenience factor weighs strongly against transfer.

**4. The fourth convenience factor—the parties' contacts with the forum—does not favor transfer.**

"The convenience of witnesses is often the most important factor in determining whether a transfer pursuant to § 1404 is appropriate." *Amini Innovation Corp. v. JS Imps., Inc.*, 497 F. Supp. 2d 1093, 1111 (C.D. Cal. 2007). Courts, however, discount the inconvenience of party and employee witnesses, who may be compelled to testify regardless of forum. *See Thermolife Int'l, LLC v. Vital Pharm., Inc.*, No. CV 142449 RSWL (AGR), 2014 WL 12235190, at *5 (C.D. Cal. Aug. 15, 2014) ("Because party and employee witnesses may be compelled to testify regardless of forum, courts accord less weight to their inconvenience."); *Covington v. Curtis*, No. SACV 121258 JVS (AN), 2012 WL 13162890, at *10 (C.D. Cal. Oct. 30, 2012) ("The Court affords little weight to the inconvenience of party witnesses, because they can be compelled to testify regardless of the forum in which the lawsuit is ultimately litigated."). Further, "[t]he movant is obligated to clearly specify the key witnesses to be called and make at least a generalized statement of what their testimony would have included." *Amini Innovation Corp.*, 497 F. Supp. 2d at 1111 (internal quotation and citation omitted).

### a. The alleged inconvenience to Netflix employees who "*may* serve as *potential* witnesses" should be discounted.

Netflix lists four of its employees who allegedly reside in the Northern District and who "*may* serve as *potential* witnesses."[14] That those individuals might be witnesses, however, does not justify transfer. Even if the Court were to consider the alleged inconvenience of Netflix party witnesses, Netflix has failed to meet its burden of identifying any employees who are *likely to testify*, which is the relevant standard. *See, e.g., Butner v. Banco Mercantil Del Norte, S.E.*, No. CV 801764 SJO (RZ), 2009 WL 10672324, at *2 (C.D. Cal. Apr. 7, 2009) ("In evaluating the convenience of the witnesses, courts consider . . . the geographic location of all witnesses *likely to testify* in a case." (emphasis added)). Further, Broadcom employees who reside in this District may also serve as potential witnesses, since Broadcom's Set-Top Box business is based in Irvine and the people with knowledge of that business are there.[15] Transferring the case to the Northern District would improperly shift the inconvenience to party employees from Netflix to party employees from Broadcom. *See Rosholm*, 2016 WL 1445592, at *2 ("Transfer is inappropriate if it would merely shift rather than eliminate the inconvenience to the parties and their witnesses." (quotation marks and citation omitted)).

### b. Inconvenience to counsel is irrelevant.

Netflix further contends that the case should be transferred for the convenience of counsel.[16] Inconvenience to counsel, however, "is irrelevant in

---

[14]   Mot. at 6 (emphasis added). Because Broadcom's Set-Top Box business is based in Irvine, the people with the greatest knowledge of that business are there.

[15]   **Ex. A**: Wan Dec. ¶¶ 8–9.

[16]   Mot. at 13–14.

1  determining whether to transfer venues." *Rosholm*, 2016 WL 1445592, at *3 (citing

2  *Pralinsky v. Mut. of Omaha Ins.*, No. C 08-3191 MHP, 2008 WL 4532563, at *2

3  (N.D. Cal. Oct. 9, 2008) ("[C]onvenience of counsel is not considered in ruling on

4  a section 1404(a) transfer motion").

5          **c.  Netflix has not shown that alleged inconvenience to potential third-**

6              **party witnesses favors transfer.**

7              **i.  Netflix has not identified any former employees who are likely to**

8                  **testify at trial.**

9      Netflix lists three of its former employees who it claims live in the Northern

10  District and are "likely to have relevant information." That someone may be likely

11  to have relevant information, however, is not the issue. The issue is whether a

12  witness is likely to testify at trial. *Butner*, 2009 WL 10672324, at *2. And on this

13  point Netflix is equivocal, at best. It says that traveling to Santa Ana would be "less

14  convenient" for them *if* they "*choose* to appear in the Central District."[17] If Netflix

15  cannot say whether its former employees will choose to appear, it has not met its

16  burden of showing that they are likely to testify. The alleged inconvenience to such

17  individuals does not justify transfer.

18              **ii.  There is no basis for assuming that litigating in the Northern**

19                  **District would be more convenient for inventors than litigating in**

20                  **this District.**

21      Netflix states that "it is almost certain that some or all of [the fourteen named

22  inventors of the patents-in-suit] would be required to testify at trial," and that

23  transfer is appropriate because six of them live in the Northern District.[18] Netflix's

24  argument is based on unfounded assumptions that (i) the inventors really are likely

25  _____

26      [17]  Mot. at 7.

27      [18]  Mot. at 6–7.

28

Memorandum ISO Opposition
to Motion to Transfer                    Case No. 8:20-cv-00529-JVS-ADS

to testify at trial and (ii) they would be unwilling to do so if requested. Two of the six inventors, however, are Broadcom employees—Darren Neuman and David Baer[19]—so the alleged inconvenience to them should be discounted, *see Covington*, 2012 WL 13162890, at *10. Four others—Wade Wan ('283 Patent), Jeyhan Karaoguz ('992 Patent), Kan Frankie Fan ('079 Patent), and Brian Heng ('283 Patent)—are also Broadcom employees, but they live in this District and are just as likely to be inconvenienced if the case is transferred.[20] That leaves four inventors in the Northern District who *might* be inconvenienced if the case is not transferred, but there is no reason to assume that they would not willingly testify if asked.[21]

The purported convenience to be gained by transferring venue for the benefit of four inventors in the Northern District—who may be willing to travel to the Central District, and who may not even testify—"is minimal, and it does not justify transferring venue here." *See Broadcom v. Sony*, No. SACV 16-1052, ECF No. 60-1 at 5 (holding purported inconvenience to inventor did not justify transfer).

### iii. Netflix has not identified any employees of third-party companies who are likely to testify at trial.

Netflix next contends that litigation in the Northern District would be more convenient for unidentified employees of two third-party companies—VMware, Inc. and Docker Inc.—who "likely possess information relevant to this suit."[22] Netflix's arguments here are based on speculation and incomplete facts. Specifically, Netflix assumes that since VMware and Docker have offices in the

[19]  **Ex. A**: Wan Dec. ¶ 5.

[20]  The remaining inventors live outside of either District, making any inconvenience to them irrelevant.

[21]  Counsel for Broadcom has not yet been able to contact the other three inventors who purportedly live in the Northern District.

[22]  Mot. at 9.

– 10 –

Memorandum ISO Opposition
to Motion to Transfer

Case No. 8:20-cv-00529-JVS-ADS

Northern District, litigation in the Northern District would be more convenient for unnamed witnesses who might have relevant information. Such assumptions do not justify transfer: "Speculation regarding possible inconvenience to unidentified third parties is not enough to establish inconvenience to non-party witnesses." *Broadcom v. Sony*, No. SACV 16-1052, ECF No. 60-1 at 6 (citing *Amini*, 497 F. Supp. 2d at 1112; *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1119 (C.D. Cal. 1998)).

### iv. Netflix has not shown that evidence from "prior-art" witnesses is relevant.

Netflix's argument that the Northern District would be more convenient for certain "prior-art witnesses" also fails. Here, Netflix simply claims that certain patents are "prior art to the [patents-in-suit]" and that some of their inventors reside in the Northern District. Netflix does not contend that those inventors have any relevant knowledge, nor has it shown how or why any of the alleged prior art is relevant. Indeed, Netflix never contends that the prior patents read on any claims of the patents-in-suit. It is not enough that prior art is simply prior. Prior art is relevant only if it supports Netflix's invalidity contentions, and Netflix has not shown or even stated that it will rely on any of the patents cited in the motion against the patents-in-suit. Any purported inconvenience to the prior-art witnesses is irrelevant.

### d. The alleged inconvenience to unidentified and irrelevant potential witnesses does not justify transfer based on current pandemic-related travel restrictions.

Netflix contends that travel risks associated with the COVID-19 pandemic support transfer. Netflix's argument fails for two reasons. First, as explained, Netflix has not shown that witness convenience favors transfer, even without considering the pandemic. Alleged travel-based inconvenience to unidentified and

– 11 –

irrelevant potential witnesses does not favor transfer simply because the pandemic would make their travel more difficult. Second, Netflix acknowledges that "these risks may abate by the time . . . witnesses appear."[23] Whether it will be any more or less convenient to travel because of COVID-19 when this case goes to trial is therefore entirely speculative. As one court found, "given the present disruption of all courts occasioned by the COVID-19 public health emergency and the uncertain timetable at which normal operations, including supervision of jury trials, will resume, it is all the more conjectural which forum would prove the more efficient." *Sec. & Exch. Comm'n v. Hill Int'l, Inc.*, No. 20 CIV. 447 (PAE), 2020 WL 2029591, at *8 (S.D.N.Y. Apr. 28, 2020). Netflix's COVID-19 argument should be rejected because it is based on speculation and conjecture.

**5.   The fifth convenience factor—contacts relating to plaintiff's cause of action in the chosen forum—does not favor transfer.**

Here again, Netflix contends that transfer is appropriate because the accused products are designed, developed, and managed in the Northern District.[24] But as explained above, even if this were true, Netflix conducts significant, ongoing activities in this District that are relevant to Broadcom's infringement claims. Netflix, for example, continues to infringe in this District. And its self-proclaimed "entertainment hub" in Los Angeles is responsible for creating, marketing, and managing the video-streaming services that Netflix uses to profit from its infringing activities. Those services are therefore highly relevant to damages.

Further, Netflix is wrong that Broadcom conducts no relevant activities here. Broadcom's Set-Top Box business, which conducts research, development, sales,

---

[23]   Mot. at 9.

[24]   Mot. at 11–12.

Memorandum ISO Opposition
to Motion to Transfer                    Case No. 8:20-cv-00529-JVS-ADS

1    and marketing of chips that are used in cable set-top boxes, is located in Irvine.[25]

2    And that is the business that has been damaged by Netflix's infringement. Both

3    Netflix and Broadcom, therefore, conduct activities in this District that are relevant

4    to facts at issue in this case. This factor does not favor transfer.[26]

5        **6.  The sixth convenience factor—difference in cost of litigation in the two**

6            **forums—does not favor transfer.**

7            In arguing that the cost of litigation will be greater in this District than it would

8    be in the Northern District, Netflix reiterates its contention that "most anticipated

9    witnesses reside in the Northern District."[27] But as explained above, Netflix has

10   failed to show that more witnesses from the Northern District are likely to testify

11   than are witnesses from this District. Because Netflix has not shown that the

12   alleged inconvenience to unidentified and irrelevant potential witnesses favors

13   transfer, it has also failed to show that the cost of such travel favors transfer.

14           The only other reason Netflix contends that litigation costs will be greater in

15   this District than in the Northern District is that some of the parties' outside

16   counsel are located in the Northern District.[28] But where the only increase in

---

17       [25]  **Ex. A**: Wan Dec. ¶ 8.

18       [26]  Netflix further attempts to support its position with cites to cases where
19   Broadcom was a party and moved to transfer to the Northern District. *See* Mot. at
20   12–13. The question whether a case may be transferred for convenience, however,
     is based on an "*individualized, case-by-case determination* of convenience and
21   fairness." *Stewart*, 486 U.S. at 29 (emphasis added). That the distinct facts in other
22   cases rendered it more convenient for Broadcom to try them in the Northern
23   District has no bearing on whether the facts at issue here do, as well. Under the
     facts here, a convenience-based transfer to the Northern District is not warranted.
24   And again, as the plaintiff in this case, Broadcom's choice of forum is entitled to
25   great deference.

26       [27]  Mot. at 15.

27       [28]  Mot. at 15.

28

litigation expense will relate to counsel's travel costs, this factor is generally
neutral. *See Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1085 (N.D. Cal. 2008).

7. **The seventh convenience factor—availability of compulsory process to
compel attendance of unwilling non-party witnesses—does not favor
transfer.**

"[T]he court's subpoena power is relevant only if there are non-party
witnesses who have refused or will refuse to testify in the action." *See Broadcom v.
Sony*, No. SACV 16-1052, ECF No. 60-1 at 9 (citing *Stanbury Elec. Eng'g, LLC v.
Energy Prod., Inc.*, No. C16-362 JLR, 2016 WL 3255003, at *7 (W.D. Wash. June 13,
2016)). Netflix has not identified a single witness who has refused or will refuse to
testify in this case.[29] This factor is neutral. *See id.*

8. **The eighth convenience factor—ease of access to sources of proof—does
not favor transfer.**

According to Netflix, this factor favors transfer because records related to the
research, design, and development of the accused technology are "located in or
accessible from" the Northern District.[30] Beyond this generic statement, Netflix
has not identified any specific evidence stored in the Northern District. And that
documents may be "accessible" from the Northern District is irrelevant—if
documents that are stored elsewhere electronically can be accessed in the Northern
District, they can be accessed just as easily in the Central District. In addition, it is
not true, as Netflix claims,[31] that there are no relevant documents in this District.
Because Broadcom's Set-Top Box business is based in Irvine, documents related to

---

[29]   Netflix asserts only that unidentified employees of third-party companies
who may live outside of this District would not be subject to this Court's subpoena
power. *See* Mot. at 9.

[30]   Mot. at 16.

[31]   *See* Mot. at 16.

Memorandum ISO Opposition
to Motion to Transfer                          Case No. 8:20-cv-00529-JVS-ADS

it are maintained there, including financial, research, technical, and marketing documents.[32]

In any event, even if the Court were to credit Netflix's argument, it carries little weight. In cases like this, where records are maintained electronically, this factor is neutral. *See, e.g.*, *Metz v. U.S. Life Ins. Co. in City of N.Y.*, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009) ("[T]he ease of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations." (internal quotation and citation omitted)); *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 781 (N.D. Cal. 2014) ("[W]here electronic discovery is the norm (both for electronic information and digitized paper documents), ease of access is neutral given the portability of the information.").

## 9. The ninth convenience factor—relevant public policy of the forum state—does not favor transfer.

Netflix fails to address this factor, which is also neutral because "both districts are located in California, and neither district has local policy interests in deciding federal patent infringement claims." *Broadcom v. Sony*, No. SACV 16-1052, ECF No. 60-1 at 9 (citing *Lax*, 65 F. Supp. 3d at 781 ("There is no significant local interest in the controversy as between the Central and Northern Districts.")).

## 10. Judicial efficiency favors keeping the case in this Court.

Netflix does not contend that this case should be transferred for judicial efficiency. Rather, it argues Broadcom has not shown that judicial efficiency favors keeping the case in this Court.[33] Netflix not only confuses the burden on this

---

[32] **Ex. A**: Wan Dec. ¶ 9.

[33] Mot. at 14–15.

issue,[34] it is also wrong. As Netflix acknowledges, three of the patents-in-suit were previously litigated in this Court. In fact, this case was transferred here from another court in this District because it "call[s] for determination of the same or substantially related or similar questions of law and fact" that were at issue in a prior case. *See* Order Re Transfer Pursuant to General Order 19-03, ECF No. 21. That prior case was *Broadcom v. Sony*, No. SACV 16-1052, in which Broadcom asserted the '387 and '663 Patents. Broadcom also asserted those patents, as well as the '375 Patent at issue here, in *Broadcom Corp. v. Amazon.com Inc.*, No. SACV 16-1774 JVS (JCG) (filed Sept. 1, 2017). Netflix's argument that the Court's familiarity with patents will not enhance judicial efficiency is incorrect.

On the contrary, "in a case such as this in which several highly technical factual issues are presented and the other relevant factors are in equipoise, the interest of judicial economy may favor transfer to a court that has become familiar with the issues." *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997). Broadcom does not contend that "the other relevant factors are in equipoise"; the convenience factors discussed above weigh against transfer. But if the Court finds that they are in equipoise, its familiarity with three of the patents-in-suit weighs in favor of keeping the case here.

## CONCLUSION

To overcome Broadcom's choice of forum, Netflix "must make a strong showing" that the relevant convenience factors justify transferring this case to the Northern District. *See Rosholm*, 2016 WL 1445592, at *2. Netflix has not met that burden.

---

[34] Of course, it is Netflix's burden to show transfer is proper, not Broadcom's to show the case should remain here.

The following four factors are all neutral, either because they are irrelevant under the facts of this case or because Netflix has not argued they are relevant: agreements between the parties; familiarity with patent law; availability of compulsory process; and public policy. A fifth factor, ease of access to sources of proof, would be given little, if any, weight even if Netflix had identified specific records that it stores in the Northern District, and it did not. As to witness convenience and cost of litigation, Netflix failed to identify witnesses with relevant information who are likely to testify at trial, or any increased cost of litigation, apart from counsel's travel costs, which do not affect the analysis.

That leaves just three factors: Broadcom's choice of forum, judicial efficiency, and the parties' contacts with this District related to Broadcom's cause of action. The first weighs strongly against transfer. The second also favors keeping the case here because this Court is familiar with three of the patents-in-suit. As to the third, Netflix contends that the Court should disregard Broadcom's choice of forum because (i) no conduct relevant to Broadcom's infringement claims occurs in this District, and (ii) Broadcom's headquarters are in the Northern District. But Netflix has allegedly infringed in this District, and its Los Angeles entertainment hub is responsible for the infringement-related damages suffered by Broadcom's Set-Top Box business, which is based in Irvine. Since Netflix and Broadcom both have abundant contacts with this District related to Broadcom's infringement claims, the ultimate question is whether transfer is justified simply because Broadcom's headquarters are in the Northern District. The answer is no, it is not.

Netflix has therefore failed to meet its strong burden of showing that the convenience factors weigh so strongly in favor of transfer that they overcome Broadcom's choice of forum. Broadcom respectfully requests that the Court deny Netflix's motion.

1    Dated:  June 22, 2020              THOMPSON & KNIGHT LLP

2

3                                       By: *Bruce S. Sostek*
                                           Bruce S. Sostek
4                                          Attorney for Plaintiffs
                                           BROADCOM
5                                          CORPORATION, AVAGO
                                           TECHNOLOGIES
6                                          INTERNATIONAL SALES
                                           PTE. LIMITED
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28