KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - #84065
rvannest@keker.com
MATTHIAS KAMBER - #232147
mkamber@keker.com
PAVEN MALHOTRA - #258429
pmalhotra@keker.com
SHARIF E. JACOB - #257546
sjacob@keker.com
THOMAS E. GORMAN - #279409
tgorman@keker.com
EDWARD A. BAYLEY - #267532
ebayley@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant
NETFLIX, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BROADCOM CORPORATION and AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LIMITED,<br><br>                    Plaintiffs,<br><br>          v.<br><br>NETFLIX, INC.,<br><br>                    Defendant. | Case No. 3:20-cv-04677-JD<br><br>**DEFENDANT NETFLIX, INC.'S NOTICE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST, THIRD, FOURTH, AND FIFTH CLAIMS OF THE FIRST AMENDED COMPLAINT**<br><br>Date:          October 15, 2020<br>Time:         10:00 A.M.<br>Dept.:        Courtroom 11, 19th Floor<br>Judge:       Honorable James Donato<br><br>Date Filed:  March 13, 2020<br><br>Trial Date:    TBD |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................................1

II.   LEGAL STANDARDS ........................................................................................................3

    A.   Section 101 Precludes Patents Claiming Abstract Ideas..........................................3

    B.   Courts May Determine Patent Eligibility on a Motion to Dismiss ..........................3

    C.   Federal Circuit Precedent Requires Dismissal.........................................................4

III.   ARGUMENT .......................................................................................................................5

    A.   The '079 Patent is ineligible under Section 101. ....................................................5

        1.   *Alice* Step One: '079 claim 1 is directed to the abstract idea of redirecting traffic flow based on congestion............................................6

        2.   *Alice* Step Two: '079 claim 1 is not inventive.............................................7

    B.   The '245 Patent is ineligible under Section 101. ....................................................9

        1.   *Alice* Step One: '245 claim 1 is directed to the abstract idea of routing information based on user information. ..........................................9

        2.   *Alice* Step Two: '245 claim 1 is not inventive..........................................10

        3.   The asserted dependent claims of the '245 Patent are also ineligible........12

    C.   The '992 Patent is ineligible under Section 101. ..................................................13

        1.   *Alice* Step One: The asserted claims of the '992 Patent are directed to an abstract idea.......................................................................................14

        2.   *Alice* Step Two: The asserted claims of the '992 Patent lack any "inventive concept."...................................................................................15

        3.   The asserted dependent claims of the '992 Patent are patent ineligible. .................................................................................................17

    D.   The '375 Patent is ineligible under Section 101. ..................................................17

        1.   *Alice* Step One: '375 claim 15 is directed to an abstract idea...................18

        2.   *Alice* Step Two: '375 claim 15 is not inventive.......................................19

IV.   CONCLUSION...................................................................................................................20

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Federal Cases**

4

5

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018)..............................................................................11

6

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
838 F.3d 1266 (Fed. Cir. 2016) ....................................................................... *passim*

7

8

*Alice Corp. Pty. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ......................................................................................... *passim*

9

10

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*,
915 F.3d 743 (Fed. Cir. 2019)..................................................................................3

11

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018), *cert. denied*, No. 18-415 (U.S. Jan. 13, 2020) ......................3

12

13

*Broadcom Corp. v. Amazon.com Inc.*,
No. 16-cv-01774-JVS-JCGx, 2017 WL 5151356 (C.D. Cal. Sept. 1, 2017)...........................19

14

15

*BSG Tech LLC v. BuySeasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018)..................................................................................3

16

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed Cir. 2019)....................................................................................3

17

18

*Customedia Techs. LLC v. Dish Networks Corp*,
951 F.3d 1359 (Fed. Cir. 2020)................................................................................17

19

20

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011)..............................................................................1, 6

21

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
958 F.3d 1178 (Fed. Cir. 2020)................................................................................15

22

23

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016)........................................................................ *passim*

24

25

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015)..............................................................................4, 9

26

*Internet Patents Corp. v. Active Network, Inc.*,
790 F.3d 1343 (Fed. Cir. 2015)................................................................................10

27

28

*Interval Licensing LLC v. AOL, Inc.*,
896 F.3d 1335 (Fed. Cir. 2018)..........................................................................15, 20

ii

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
    876 F.3d 1372 (Fed. Cir. 2017)...................................................................................19

*Limelight Networks, Inc. v. XO Commc'ns, LLC*,
    241 F. Supp. 3d 599 (E.D. Va. 2017) ...........................................................................6

*MyMail, Ltd. v. OoVoo, LLC*,
    2020 WL 2219036 (N.D. Cal. 2020) .............................................................................2

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
    855 F.3d 1322 (Fed. Cir. 2017)...............................................................................16, 19

*In re TLI Commc'ns*,
    823 F.3d at 611 .............................................................................................................16

*In re TLI Commc'ns*,
    823 F.3d at 611–13 ..................................................................................................11, 19

*Twilio, Inc. v. Telesign Corp.*,
    249 F. Supp. 3d 1123 (N.D. Cal. 2017) .......................................................................10

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329, 1337 (Fed. Cir. 2017).................................................................. *passim*

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)........................................................................................3

*Voip-Pal.Com, Inc. v. Apple Inc.*,
    *375 F. Supp. 3d 1110* (N.D. Cal. 2019) ........................................................................9

**Rules**

Rules of Civil Procedure Rule 12(b)(6) ...................................................................................1, 3

**Other Authorities**

U.S. Patent No. 6,341,375.................................................................................. *passim*

U.S. Patent No. 7,266,079.................................................................................. *passim*

U.S. Patent No. 8,270,992.................................................................................. *passim*

U.S. Patent No. 8,959,245.................................................................................. *passim*

DEFENDANT'S NOTICE AND MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 3:20-cv-04677-JD

1390416

1

**NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3

   PLEASE TAKE NOTICE that on October 15, 2020, at 10:00 a.m. in Courtroom 11, 19th

4

floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable James Donato,

5

6

Defendant Netflix, Inc. ("Netflix") will and hereby does move, pursuant to Rule 12(b)(6) of the

7

Rules of Civil Procedure, for an order dismissing with prejudice claims 1, 3, 4, and 5 of Plaintiffs'

8

First Amended Complaint for their failure to claim eligible subject matter. This motion is based

9

upon this Notice; the following Memorandum of Points and Authorities; the complete files and

10

records in this action; the argument of counsel; and such other matters as the Court may consider.

11

12

**MEMORANDUM OF POINTS AND AUTHORITIES**

13

**I.      INTRODUCTION**

14

   Defendant Netflix, Inc. is the world's leading streaming media company.  Netflix

15

achieved its success by innovating and creating award-winning original content, such that its

16

members can watch as much as they want, anytime, anywhere.  Plaintiffs Broadcom Corp. and

17

Avago Technologies International Sales PTE, Ltd. (collectively, "Broadcom") are not in the

18

business of streaming content.  Rather, Broadcom sells chips used in set-top boxes.  *See* First

19

Amended Complaint ("FAC") ¶ 20.  Broadcom pleads a reduction in its set-top box business.  *Id.*

20

But none of the twelve asserted patents are directed to set-top boxes.

21

   Instead, the asserted patents are directed to abstract ideas.  At least four of those patents

22

can be dispensed with on a motion to dismiss: U.S. Patent Nos. 7,266,079 ("the '079 Patent"),

23

8,959,245 ("the '245 Patent"), 8,270,992 (the "'992 Patent"), and 6,341,375 (the "'375 Patent").

24

*First*, the '079 Patent is directed to the abstract idea of redirecting traffic based on congestion.

25

Claim 1, the only asserted claim, is performed by traffic cops every day across this country and

26

does not even recite software or hardware limitations.  It is ineligible under settled precedent.  *See*

27

*CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371-72 (Fed. Cir. 2011).

28

   *Second*, the '245 Patent claims the idea of routing information based on user information.

1390416

In *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, the Federal Circuit held that a "method for routing information [that] requires [] functional results" was patent ineligible. 874 F.3d 1329, 1337 (Fed. Cir. 2017). *Two-Way Media* controls the fate of the '245 Patent.

**Third**, the '992 Patent is directed to the abstract idea of switching from lower- to higher-quality media when available. The specification describes the claimed method as little more than a series of questions any human could answer: "Is a second system accessible?" '992 Patent Fig. 1. If so, ask "whether utilizing [the second] system resource(s) will produce [a] higher quality service." *Id.* If so, "[u]tilize [the second system] resource(s) for providing [the] service." *Id.* Broadly claiming such routine, conventional questions does not yield patentable subject matter. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016) (striking down claims that were "so result-focused, so functional, as to effectively cover any solution to an identified problem").

**Fourth**, the '375 Patent is directed to the abstract idea of distributing data through a network. The claimed method instructs generic computer components to deliver compressed video to be presented in a separate room. But neither the claims, nor the sparse specification, nor the FAC explain how to do so in anything other than conclusory language. "Stating an abstract idea while adding the words apply it is not enough for patent eligibility." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 223 (2014) (internal quotation and citations omitted).

In short, the asserted claims of the '079, '245, '992, and '375 Patents use results-oriented language to claim abstract ideas implemented with conventional computer components. Furthermore, Broadcom's conclusory allegations—*see* FAC ¶ 110 ('245); *id.* ¶ 134 ('992); *id.* ¶¶ 166, 169 ('375)—cannot inject inventiveness into their abstract claims. *See MyMail, Ltd. v. OoVoo, LLC*, 2020 WL 2219036 at *16-17 (N.D. Cal. 2020) (rejecting "vague and conclusory" allegations of inventiveness and relying on the claim recitations to hold that patent was directed towards abstract idea). Accordingly, the asserted claims are patent ineligible and Netflix respectfully requests that the Court dismiss them for failure to state a viable claim.

2
DEFENDANT'S NOTICE AND MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 3:20-cv-04677-JD

1390416

## II.     LEGAL STANDARDS

### A.     Section 101 Precludes Patents Claiming Abstract Ideas

Courts determine Section 101 eligibility through a two-step test.  *Alice*, 573 U.S. at 217–18.  The first step examines whether the disputed claims are directed to an abstract concept, which depends "on the language of the Asserted Claims themselves[.]"  *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed Cir. 2019) (internal quotation marks and citation omitted).  To satisfy step one, "the claim's focus must be something other than the abstract idea itself."  *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1287 (Fed. Cir. 2018).

If the Court determines that a claim is abstract, it turns to step two to consider whether the elements of the claim, both individually and as an ordered combination, transform the nature of the claim into a patent-eligible application.  *Alice*, 573 U.S. at 217–18.  The abstract idea cannot itself be the source of the inventive concept rendering eligibility.  *See ChargePoint, Inc.*, 920 F.3d at 773.  "Claim limitations that recite 'conventional, routine and well understood applications in the art' are insufficient to 'supply an inventive concept.'"  *BSG Tech LLC*, 899 F.3d 1290 (citation omitted).  Only those claims that "improve the functioning of the computer itself" or provide technological solutions to technical problems fall within the scope of Section 101.  *Alice*, 573 U.S. at 225; *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 721 (Fed. Cir. 2014).

The "essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101[.]"  *Elec. Power Grp.*, 830 F.3d at 1356.  Consequently, asking whether "claims [are] so result-focused, so functional, as to effectively cover any solution to an identified problem . . . is one helpful way of double-checking . . . whether the claims meet the requirement of an inventive concept in application."  *Id.*

### B.     Courts May Determine Patent Eligibility on a Motion to Dismiss

Whether an asserted patent is invalid for failure to satisfy § 101 "is a question of law based on underlying facts that may be resolved on a Rule 12(b)(6) motion when the undisputed facts require a holding of ineligibility."  *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 749 (Fed. Cir. 2019) (internal citation omitted).  While the step two inventiveness inquiry may occasionally involve "underlying issues of fact," *Berkheimer v. HP*

3

*Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018), *cert. denied*, No. 18-415 (U.S. Jan. 13, 2020), a factual *dispute* arises only if the claims themselves capture the alleged inventiveness or are directed to an allegedly inventive concept contained in the specification, *id.* at 1369–70.

### C.    Federal Circuit Precedent Requires Dismissal

In conducting the eligibility analysis, courts often compare a claim to "the ideas found to be abstract in other cases before the Supreme Court and [the Federal Circuit]." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367–78 (Fed. Cir. 2015).  Two Federal Circuit decisions are instructive here: *Two-Way Media* and *Electric Power Group*.  In *Two-Way Media*, the Federal Circuit affirmed the district court's determination of ineligibility of patents that "relate to a system for streaming audio/visual data over a communications system like the internet." 874 F.3d at 1333.  Specifically, the court at step one found abstract the ideas of "converting," "routing," "controlling," and "monitoring" information. *Id.* at 1337.  Nor did these claims satisfy step two.  Instead, nothing in the functional claims contained an inventive concept—such as some inventive software or hardware.  Crucially, the Federal Circuit cautioned that any inventive concept "must be evident in the *claims* . . . as opposed to something purportedly described in the specification[.]" *Id.* at 1338 (emphasis added).  Finally, as an ordered combination, the court found entirely conventional the sequence of "first processing the data, then routing it, controlling it, and monitoring its reception[.]" *Id.* at 1339.

The claims in *Electric Power Group* were similarly result-oriented, reciting "systems and methods for performing real-time performance monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results." 830 F.3d at 1351.  The Federal Circuit found at step one that the claims were directed to the abstract idea of "gathering and analyzing information of a specified content, then displaying the results." *Id.* at 1354.  Although the claims masqueraded as highly technical operations, analyzing or manipulating data reflect merely functional commands that fail to describe "*how* the desired result is achieved." *Id.* at 1355.  At step two, the Federal Circuit found that the limitations were not inventive.  That the data to be manipulated was "limited to particular content" did not render the claims any less abstract. *Id.* at 1353.  Moreover, as with *Two-Way*, nothing in the claims required

anything other than "off-the-shelf, conventional computer, network, and display technology," *id.* at 1355, without any limiting "technical means for performing the functions that are arguably an advance over conventional computer and network technology," *id.* at 1351. All of the claims here fall within the ambit of ineligibility defined in *Two-Way Media* and *Electric Power Group*.

## III.    ARGUMENT

### A.    The '079 Patent is ineligible under Section 101.

The '079 Patent, entitled "Dynamic Network Load Balancing Over Heterogeneous Link Speed," claims the idea of redirecting traffic flow on a network based on congestion. The only asserted claim—claim 1—provides:

> 1.    A method for balancing transmission unit traffic over network links, comprising:
>
> (a)    disposing transmission units into flows;
>
> (b)    grouping flows into first flow lists, each of the first flow lists corresponding to a selected network link;
>
> (c)    determining a traffic metric representative of a traffic load on the selected network link;
>
> (d)    responsive to the traffic metric, regrouping flows into second flow lists corresponding to the selected network link, the regrouping balancing the transmission unit traffic among the network links; and
>
> (e)    transmitting the respective second flow list over the respective selected network link.

'079 Patent 12:50-62. The specification contends that a common problem in the prior art is traffic congestion on a network when network links had varying speeds. *Id.* at 1:23-43. The applicants do not claim to have solved this problem via a new computer or an improvement thereon. Instead, the applicants claimed a method of using conventional computers "for balancing transmission unit traffic over heterogeneous speed network links." *Id.* at 1:47-49.

The specification illustrates an embodiment of claim 1. First, transmission units are classified into flows. *Id.* at 7:23-24 & Fig. 3. The specification makes clear that transmission

units and flows are both types of information.[1]  The method "order[s] flows into traffic lists for each link."  *Id.* at Fig. 3.  Then traffic is measured on each link.  *Id.*  For example, traffic may be "HIGH, NORMAL, or LOW."  *Id.* at 7:38-39.  The method next calls for rebalancing traffic.  "For example, a particular flow may be re-assigned from a first link having HIGH utilization, or traffic, to a second link having LOW utilization, or traffic . . . ."  *Id.* at 7:43-45.  The applicants don't claim to have invented transmission units, traffic flow, or a new type of network; rather, they claim to have invented redirecting traffic based on congestion.

### 1.  *Alice* Step One: '079 claim 1 is directed to the abstract idea of redirecting traffic based on congestion.

The Federal Circuit has made clear that where all steps of a claim "can be performed in the human mind, or by a human using a pen and paper," the claim is an unpatentable mental process.  *CyberSource,* 654 F.3d at 1372; *accord Symantec,* 838 F.3d at 1318.  For example, in *Two-Way Media*, the Federal Circuit affirmed the invalidity of a patent purporting to address "excessive loads on a source server, network congestion, [and] unwelcome variations in delivery times[.]"  874 F.3d at 1339.  The claimed "method for routing information" recited no more than abstract "result-based functional language."  *Id.* at 1337.  Although the claim required the functional result of "manipulat[ing] data," it failed to do so "in a non-abstract way."  *Id.* at 1338; *see also Limelight Networks, Inc. v. XO Commc'ns, LLC*, 241 F. Supp. 3d 599, 607-08 (E.D. Va. 2017) (finding abstract a process of "speeding up a CDN network through the use of policies and a system for selecting those policies").  Claim 1 of the '079 Patent, directed to redirecting traffic flow based on congestion,[2] is even more generic than the claims at issue in *Two-Way Media*.  "[T]he plain language" of claim 1 "does not [even] require the method to be performed by a particular machine, or even a machine at all."  *CyberSource,* 654 F.3d at 1370.  Instead, all of the

---

[1] *See* '079 Patent 4:48-49 ("[A] transmission unit is an ordered sequence of data bits . . . ."); 4:65-66 ("The term 'data' includes all forms of digital information . . . ."); and 4:45-48 ("A flow is a sequence of transmission units transmitted from a particular source to a particular destination, using unicast, multicast, or broadcast techniques.").

[2] Plaintiffs' own allegations abstractly describe the patent as "directed to an improvement in the functionality of networked computer systems by…balancing the data traffic among network links having different speeds, capabilities, and congestion levels[.]"  FAC ¶¶ 30, 35; *see also* '079 Patent at 1:23-27.

steps can be performed in the mind's eye.  *See* '079 Patent at 12:50-62.

A traffic cop is an apt analogy.  Cars (*i.e.*, "transmission units," *id.* at 12:52) travel along street blocks (*i.e.*, "network links," *id.* at 12:51).  Stationed at an intersection, the traffic cop observes all cars traveling along a particular block (*i.e.*, "flows," *id.* at 12:52) at a particular point in time (*i.e.*, "flow list," *id.* at 12:53), determining the level of congestion on that block is HIGH, NORMAL, or LOW (*i.e.*, "traffic metric," *id.* at 12:55-56).  As the intersection backs up with cars, he directs some traffic to a side street so that traffic on the block remains LOW (*i.e.*, "responsive to the traffic metric, regrouping flows into second flow lists corresponding to the selected network link, the regrouping balancing the transmission unit traffic among the network links," *id.* at 12:57-60).  Finally, a trickle of traffic proceeds down the block while the redirected traffic proceeds down the side street (*i.e.*, "transmitting the respective second flow list over the respective selected network link[,]" *id.* at 12:61-62).  Claim 1 of the '079 Patent claims nothing more than this abstract idea, which, even if it recited computer components—though it does not—is no less abstract.

### 2.    *Alice* Step Two: '079 claim 1 is not inventive.

The elements of claim 1, when considered individually or as an ordered combination, exhibit no inventive concept.  Claim 1 does not recite any particular hardware or software.  And to the extent the method is run on a computer, the specification simply prescribes "a ***conventional general purpose*** microprocessor programmed according to the teachings in the present specification," using unspecified "[a]ppropriate software coding."  '079 Patent at 12:26-33 (emphasis added).  In other words, the patent simply directs someone to take the abstract idea, implement it in software, and run it on generic computer.  *See Alice*, 573 U.S. at 225.

Outside of "generic functional language"—and, indeed, because of it—"[n]othing in the claims or their constructions . . . requires anything other than conventional computer and network components operating according to their ordinary functions."  *Two-Way Media*, 874 F.3d at 1339.  In fact, every limitation of claim 1 recites generic, functional limitations, thereby reducing the claim to nothing more than the abstract idea to which it is directed.  The patent claims

1390416

"disposing" of traffic into "flows," '079 Patent at 12:52, but nowhere does the claim recite "*how*

the desired result is achieved." *Elec. Power Grp.*, 830 F.3d at 1355.  Nor does "grouping flows"

into initial lanes explain how the flows are grouped or how the lanes are selected.  '079 Patent at

12:53-54.  Likewise, the steps of "determining a traffic metric representative of a traffic load" on

the selected lane, "regrouping flows" based on the traffic metric, and "transmitting" the

rebalanced flows (12:55-62) each lack an inventive requirement (such as some specific hardware

or software) that would overcome such abstraction.  *Two-Way Media*, 874 F.3d at 1339.  Generic

functional language alone renders the individual claim elements insufficiently inventive.

Equally unavailing is the sequence of these generic functional steps.  Observing traffic

flows, measuring traffic level, redistributing traffic flows, and transmitting them—much like

"processing [] data, then routing it, controlling it, and monitoring its reception"—reflects nothing

more than a "conventional ordering of steps" in any dynamic system.  *Id.*  Indeed, it would make

little sense to re-order the steps of claim 1, such as to redistribute the traffic *before* measuring the

traffic level or to transmit the traffic *before* redistributing it.  The order of operations is inherent

in the abstract idea and fails to confer any inventive concept.

Although the complaint suggests that the patent as a whole "addresses a specific technical

problem that arose in the computer networking environment[,]" FAC ¶ 31, traffic congestion is

not a problem unique to computers, nor is redirecting traffic flow based on congestion a solution

unique to computer networking.  Even assuming it was, claim 1 itself is silent on any

technological innovation.  Much like the complaint, the specification suggests that "[t]he present

invention relates to communications apparatus and methods, particularly to computer networking

apparatus and methods, and more particularly to computer networking apparatus and methods for

balancing data flow therethrough."  '079 Patent at 1:17-21.  Crucially, however, "at step two, an

inventive concept must be evident in the claims."  *Two-Way Media*, 874 F.3d at 1338.  Here,

nothing in claim 1 contains an inventive concept.  The Federal Circuit in *Two-Way Media*

rejected the patentee's effort to locate the inventive concept in a scalable system architecture that

was described in the specification but not recited in the claims.  *Id.*  By contrast, the '079 Patent

does not even specifically *describe* its network-link architecture; instead, at most it references

8

1  generic "apparatus" and "computer networking," neither of which claim 1 recites in any event.

2  **B.     The '245 Patent is ineligible under Section 101.**

3  The '245 Patent claims the idea of routing information based on user information.

4  Asserted independent claim 1 provides:

5    A method for communication, the method comprising receiving
   from a user device, by a network management server via a
6    communication network, a request for a service;

7    determining multiple routes for delivering content associated with
   said requested service based on a provisioning profile for said user
   device; and

8    delivering said content associated with said requested service via
   said determined multiple routes.

9

10  '245 Patent at 11:64-12:5.

11  The specification describes an embodiment of claim 1. "[A] user device transmits a

12  request to a network management (NM) server for a service such as a VoIP call with an intended

13  user device." *Id.* at 2:16-18. "Upon receiving the request, the NM server determines multiple

14  routes for providing the requested service based on a provisioning profile associated with the user

15  device." *Id.* at 2:19-22. The content of the call is then delivered to the user device via those

16  routes. *Id.* at 2:19-22. The provisioning profile is little more than information about the user

17  such as her credit card information, account information, and whether she wants a telephone call

18  or a movie. *Id.* at 2:29-32.

19     **1.     *Alice* Step One: '245 claim 1 is directed to the abstract idea of routing
       information based on user information.**

20

21  Claim 1 is directed to the abstract idea of routing information based on user information.

22  In *Two-Way Media*, described above, the Federal Circuit held that a "method for routing

23  information" [that] requires the functional results of 'converting,' 'routing,' 'controlling,'

24  'monitoring,' and 'accumulating records'" was abstract. 874 F.3d at 1337. The Federal Circuit

25  has also held that "customizing information based on (1) information known about the user and

26  (2) [specific] data" is directed to an abstract idea. *Intellectual Ventures I LLC*, 792 F.3d at 1369–

27  70; *Voip-Pal.Com, Inc. v. Apple Inc.*, 375 F. Supp. 3d 1110, 1130 (N.D. Cal. 2019) (finding

28  abstract the "idea of routing a call based on characteristics of the caller and callee").

9

Claim 1 of the '245 Patent is more abstract than even the claim in *Two-Way Media*, as it merely recites "directing" and "sending" content based on characteristics of the recipient. Furthermore, the consideration of user information in routing is abstract under settled precedent. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015).  Indeed, "selecting the best [content] routing option" based on independent information "is a fundamental activity that has long been performed by humans."  *Twilio, Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123, 1144 (N.D. Cal. 2017) (finding that optimizing routing "based on separately-transmitted feedback" is abstract).  And choosing two routes instead of one does not make claim 1 of the '245 Patent any less abstract.

One can easily imagine an analogous scenario in which the host of a party provides custom directions to her house to each of her guests.  In this scenario, the invitees (*i.e.*, the user device, *id.* at 11:65) contact the host (*i.e.*, the network management server, *id.* at 11:65-66) for directions (*i.e.*, request for a service, *id.* at 11:66-67) to the party (*i.e.*, content associated with the request for a service, *id.* at 12:1-2).  The host subsequently determines and provides one or more optimal routes (*i.e.*, multiple routes, *id.* at 12:1) for each invitee based on the varying circumstances of each (*i.e.*, provisioning profile, *id.* at 12:2-3).  Such circumstances include the origin points, mode of transportation, and projected commute time, among others.  For example, for guests walking to the party, the host provides a convenient route; for those who wish to take the subway, she recommends the best trains and stops to use.  The guests ultimately arrive (*i.e.*, content is delivered, *id.* at 12:4-5) by following the host's directions.  Thus, a party host performs the activity recited by the '245 claims.  Even if the claims recited non-generic computer components—which they do not—such components do not render the functional claims any less abstract.

### 2.    *Alice* Step Two: '245 claim 1 is not inventive.

Claim 1 does not contain an inventive concept, either individually or as an ordered combination.  The claim calls for the abstract idea from step one to be implemented on generic

computer components.[3]  As the Federal Circuit has already held, a "network management server," *In re TLI Commc'ns*, 823 F.3d at 611–13, and "user device," *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1262–63 (Fed. Cir. 2016), are conventional.  And merely performing the abstract idea on a "communication network" is "not even arguably inventive." *See buySAFE,* 765 F.3d at 1355.  Nothing in the claim "requires anything other than conventional computer and network components operating according to their ordinary functions." *Two-Way Media*, 874 F.3d at 1339.  Rather, the specification concedes that "[a]ny kind of computer system or other apparatus" may be used to implement the claimed method, including "a general-purpose computer system." '245 Patent at 11:33-37.

Whether taken individually or as an ordered combination, the claim elements of "receiving" "routing," and "delivering" content are functional and generic.  Just as the Federal Circuit in *Two-Way Media* agreed with the district court that "first processing the data, then routing it, controlling it, and monitoring its reception" amounts to a "conventional ordering of steps," so too does claim 1 of the '245 Patent recite a conventional sequence of steps for a generic computer to implement.  874 F.3d at 1339.  There is nothing inventive about the simple ordering of (1) receiving a request; (2) routing the content based on the requester; and (3) delivering the content accordingly.  Neither the patent nor the complaint alleges in non-conclusory terms that such a sequence is unconventional. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).  While the complaint alleges a "new, advantageous approach for delivering content," FAC ¶ 105, the claimed invention is the abstract idea itself— "determin[ing] multiple routes for delivering the content based on a provisioning profile for the user device," *id.* ¶ 99.  Claim 1 does not "transform the abstract idea into something more." *Two-Way Media*, 874 F.3d at 1339.

Claim 1 also does not solve any technical problem in a non-functional way.  Even assuming the claim addresses a technological issue, solutions to "various technical problems"

---

[3] The allegation that the patent is directed to a method requiring a "server" programmed to "determine multiple routes for delivering the content based on a provisioning profile for the user device" merely adds generic hardware to the same abstract idea.  FAC ¶ 99.

DEFENDANT'S NOTICE AND MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 3:20-cv-04677-JD

require more than "generic functional language" to become patentable. *Id.* The complaint similarly recites nothing more than the generic functional language found insufficient in *Two-Way Media*. The complaint alleges that the patent resolves technical problems "by utilizing multiple routes" and a user "profile" which thereby "increas[es] the reliability of the data transmission" and "ensur[es] delivery of content[,]" FAC ¶¶ 102–03. Beyond this result-oriented language, however, neither the complaint nor claim 1 explain "*how* the desired result [of ensuring content delivery] is achieved" through non-generic, non-functional steps. *Two-Way Media*, 874 F.3d at 1339 (internal quotation marks and citation omitted). The Federal Circuit has already found that routing and controlling data in response to information received from end users constitute "ordinary functions." *Id.* The '245 Patent is ineligible under binding precedent.

### 3. The asserted dependent claims of the '245 Patent are also ineligible.

Asserted dependent claims 3 and 6 provide:

> 3. The method according to claim 1, wherein said provisioning profile comprises preferred service types, desired QoS for one or more services, client account information, and/or client credit verification information.

> 6. The method according to claim 1, comprising allocating via said network management server, one or more of said determined multiple routes based on priority.

'245 Patent at 12:8-11, 12:21-23. These claims do not add anything that would "transform the nature of the claim[s] into a patent-eligible application." *See Alice*, 573 U.S. at 217 (internal quotation and citations omitted). Claim 3 simply enumerates various user characteristics that could be considered in determining routes, without specifying how the claimed method should weigh the characteristics. This restates the abstract "provisioning profile" limitation in claim 1, and is no different from the host of a party considering the points of origin of her invitees or their preferred modes of transit.

Likewise, claim 6 does not substantially alter the abstract nature of claim 1. It merely adds that the custom routes are ranked. But, as with claim 3, it does not explain how this is achieved, much less "in a non-abstract way." *Two-Way Media Ltd.*, 874 F.3d at 1338. The notion of prioritizing routes is no different from the host recommending a route with fewer turns

but offering another option in the event of traffic.  Such a limitation does not confer eligibility.

Although the complaint alleges in conclusory fashion that "[t]he ordered combination of elements in each of claims 3 and 6, in conjunction with the elements of the claims from which they depend, therefore recite unconventional, new, and improved digital media content delivery methods that were not well-understood at the time of the '245 Patent[,]" FAC ¶ 110, it does not identify how this combination is any less conventional than the elements of claim 1 standing alone.  Therefore, the asserted dependent claims of the '245 Patent are patent ineligible.

**C.     The '992 Patent is ineligible under Section 101.**

Asserted claims 1, 2, 3, and 5 of the '992 Patent all claim the abstract idea of switching from lower- to higher-quality media when available.  Independent claim 1 is illustrative:

> 1.  In a portable system, a method for providing a digital media service to a user, the method comprising:
>
> (a) delivering digital media content having a current quality level to a user;
>
> (b) determining that a network connection with a second system is available and is characterized by a communication bandwidth that is high enough to provide the digital media content to the user at a quality level higher than the current quality level;
>
> (c) using the network connection to obtain the digital media content at the higher quality level from the second system; and
>
> (d) delivering the digital media content at the higher quality level to the user instead of the digital media content at the current quality level.

The specification illustrates the method of claim 1.  To start, the method asks: "Is a second system accessible?"  '992 Patent Fig. 1.  The method does not specify how to ask.  *Id.* at 3:49-54.  The method next "determine[s] whether utilizing [the second] system resource(s) will produce [a] higher quality service."  *Id.* at Fig. 1.  Here, too, the determination is not limited to any particular characteristics of information.  *Id.* at 7:26-29.  Finally, the method "[u]tilize[s] [the second system] resource(s) for providing [the] service."  *Id.* at Fig. 1.  Again, the claim does not limit *how* to utilize the second system.  *Id.* at 8:17-22.

The asserted dependent claims further provide that the service delivers video media (claim 2); delivers audio media (claim 3); and is automatically performed (claim 5).  These conventional limitations do not render claim 1 patent eligible.

13

1

### 1. *Alice* Step One: The asserted claims of the '992 Patent are directed to an abstract idea.

The asserted claims of the '992 Patent are directed to the abstract idea of switching from lower- to higher-quality media when available.  At step one of the *Alice* analysis, courts look to the "focus" of a claim to determine whether its "character as a whole" is directed to an abstract idea.  *See Elec. Power*, 830 F.3d at 1353.  For example, in *Affinity Labs*, the Federal Circuit evaluated a claim that concerned a "broadcast system" comprising "a network based resource maintaining information associated with a network available representation of a regional broadcasting channel that can be selected by a [cell phone] user" and "a non-transitory storage medium including an application configured for execution" by the cell phone to: (1) "present a graphical user interface comprising at least a partial listing of available media sources"; (2) "transmit a request for the regional broadcasting channel" from the cell phone; and (3) "receive a streaming media signal . . . corresponding to the regional broadcasting channel." *Affinity Labs,* 838 F.3d at 1255–56.  The Court reasoned that, "[s]tripped of excess verbiage," the claim was directed to the abstract idea of "providing out-of-region access to regional broadcast content."  *Id.* at 1255–58; *see also Two-Way Media,* 874 F.3d at 1338 (finding that converting, routing, and controlling audio/visual information embodied the abstract idea of "manipulat[ing] data"); *Elec. Power*, 830 F.3d at 1354 (finding that real-time monitoring of an electric power grid embodied the idea of "gathering and analyzing information of a specified content, then displaying the results").

The asserted claims of the '992 Patent likewise boil down to an abstract idea.  Claim 1 describes four simple steps.  *See* '992 Patent at 26:29-43.  *First*, a system delivers audio or video content to a user at a certain quality level.  *Second*, the system determines that a network connection with a second system is available and capable of delivering higher-quality content.  *Third*, the first system connects to the second system to obtain the higher-quality content.  *Fourth*, the system delivers the higher-quality content to the user.  Together, these basic steps claim the abstract idea of switching from lower- to higher-quality content—an idea that is no less abstract than those invalidated in *Affinity Labs*, *Electric Power*, and *Two-Way Media*.  Indeed, the idea is

14

as simple as switching over from a standard to a high-definition television channel, if available.

### 2. *Alice* Step Two: The asserted claims of the '992 Patent lack any "inventive concept."

Whether considered individually or as an ordered combination, the asserted claim elements do not contain an inventive concept. Claims that are "so result-focused, so functional, as to effectively cover any solution to an identified problem" are often invalidated at *Alice* step two. *Affinity Labs*, 838 F.3d at 1265 (invalidating claims that were "drafted in a way that would effectively cover any wireless delivery of out-of-region broadcasting content"); *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1346 (Fed. Cir. 2018) (invalidating claims when "the patent is wholly devoid of details which describe *how* [its goal] is accomplished").

Similar to other claims that the Federal Circuit has found unpatentably abstract, the asserted claims use results-based, functional limitations. *Two-Way Media*, 874 F.3d at 1337. The claims recite: (1) "delivering" content to a user; (2) "determining" that a network connection with a second system is available and has certain characteristics; and (3) "using" the connection with a second system to deliver higher-quality content. There is nothing transformative about the order of accessing, analyzing, and routing information. *Cf. id.* at 1339 (finding nothing inventive in the ordered combination of "processing . . . data, then routing it, [then] controlling it").

Moreover, every aspect of the claimed method is generic, as the specification repeatedly highlights. The invention is not limited by: the type of service the systems provide, *id.* 1:63-67; events that initiate the method, *id.* 3:7-14; the "method, standard or protocol" for detecting the second system, *id.* 3:50-54; the "service quality metrics" used to determine if the second system will improve service quality, *id.* 4:31-41; information about the systems that may be considered in switching to the second system, *id.* 7:23-29; the "information, information sources, or particular links to such information sources," that the second system may have, *id.* 6:31-39; "access control requirements, strategies or implementations" between the systems, *id.* 7:5-8; "hardware or software implementations" of the systems, *id.* 26:5-13; or whether the first, or second, or even a third system, performs any of the steps, *id.* 9:6-30. *Cf. Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1183 (Fed. Cir. 2020) (finding a claim to be abstract

15
DEFENDANT'S NOTICE AND MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 3:20-cv-04677-JD

1390416

when the specification declined to limit a key term of the claim).  A "portable system" and a "second system" are themselves generic.  *Cf. In re TLI Commc'ns,* 823 F.3d at 611 (finding that a claim's reference to tangible components like "a telephone unit" and "server" recite "a generic environment in which to carry out the abstract idea").  And although independent claim 1 recites the use of bandwidth, the invention is explicitly not limited by the communication or communication link characteristics between the first and second systems.  *Id.* 6:3-7.

Broadcom's complaint alleges two specific improvements offered by the '992 Patent.  First, it alleges the systems contain "novel quality control modules, resource allocation modules, and distributing processing modules."  FAC ¶ 140.[4]  Second, it alleges that, unlike prior art that improved the delivery of media from the same source, the claimed invention allows the user to improve the delivery of media by using content from a different source.  FAC ¶ 143.  These alleged innovations do not save the asserted claims for two reasons.

*First*, the alleged innovations are not recited in the asserted claims.  "To save a patent at step two, an inventive concept must be evident in the claims."  *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017); *Two-Way Media*, 874 F.3d at 1339.  Here, the claims do not recite any "modules."  And there is no claim limitation on the source of the digital media content that the first or second system may access.  Thus, Broadcom's allegations are not relevant to the inventive-concept determination.

*Second*, even if relevant, the specification does not limit the asserted claims to these particulars.  With respect to the modules, the specification provides: "The first system *may* comprise" various modules, '992 Patent at 21:12-17 (emphasis added); however, "the scope of various aspects of the present invention *should by no means be limited* to particular hardware or software implementations of the various modules and components . . . ."  *Id.* at 26:5-13 (emphasis added).  That is, any generic hardware or software would suffice.  Likewise, the specification does not limit the alleged invention to particular information sources.  To the contrary, while higher-quality information "*may* include information to which the second system has access and

---

[4] The asserted claims are directed to a *method*.

1390416

to which the first system has no access," *id.* at 6:16-18 (emphasis added), the invention is explicitly *not* limited by "characteristics of particular information, information sources, or particular links to such information sources" the second system may have, *id.* at 6:19-39.  In sum, the asserted claims do not survive *Alice* step two because the results-based claim language, deliberately unconstrained to any type of hardware, software, or data, fails to transform the abstract nature of the claimed ideas into eligible subject matter.

### 3. The asserted dependent claims of the '992 Patent are patent ineligible.

The dependent claims do not transform independent claim 1 into a patent-eligible invention.  Dependent claims 2 and 3 do nothing more than define the "digital media content" recited in claim 1 as video media and audio media, respectively.  '992 Patent at 26:44-47.  The patent does not claim that the delivery of audio or media services was novel at the time of the invention (nor could it).  *See* '992 Patent at 1:39-45.  As the Federal Circuit explained in *Two-Way Media*, "streaming audio/visual data over a communications system" is merely "manipulat[ing] data."  874 F.3d at 1333, 1338.

Furthermore, that dependent claim 5 recites a method whereby the first system processes the digital media content without user interaction does not save that claim.  The Federal Circuit has repeatedly found that performing an abstract process "automatically" adds nothing to its patentability.  *See, e.g.*, *Customedia Techs. LLC v. Dish Networks Corp,* 951 F.3d 1359, 1363–65 (Fed. Cir. 2020) (holding that "automatic delivery" is abstract because "the claimed invention [was] at most an improvement to [an] abstract concept").  Accordingly, the asserted dependent claims of the '992 patent are directed to a patent-ineligible abstract idea.

### D. The '375 Patent is ineligible under Section 101.

The '375 Patent, entitled "Video on Demand DVD System," is directed to a method for distributing video content to users through a network.  The sole asserted claim, Claim 15, recites:

A method for distributing video comprising the steps of:

(A) presenting a plurality of compressed data streams with a drive server to a control server in response to one or more first control signals;

(B) distributing said one or more compressed data streams received from said drive server with said control server to one or more decoder devices in response to one or more request signals;

(C) decoding at least one of said one or more compressed data streams with said one or more decoders in response to receiving said one or more compressed data streams from said control server; and

(D) presenting at least one signal selected from a decoded video signal and a decoded audio signal in response to decoding said at least one of said one or more compressed data streams, wherein at least one of said one or more decoders is disposed in a separate room from said control server and said driver [sic] server, wherein a first portion of a selected one of said compressed data streams is presented to one of said decoder devices and a second portion of said selected compressed data stream is presented to another of said decoder devices.

'375 Patent at 6:66–8:2.  The specification does not provide any concrete detail about the claimed invention.  *Id.* at 1:56–67.  Rather, it broadly describes the invention as comprising only "[a] drive server . . . configured to present one or more compressed data streams," *id.* at 1:58–60; "[a] control server . . . configured to present one or more of the compressed data streams in response to" a request, *id.* at 1:60–63; "and one or more … decoder devices . . . configured to present a decoded video signal and a decoded audio signal" for the requested "one or more compressed data streams," *id.* at 1:62–67.

### 1.  *Alice* Step One: '375 claim 15 is directed to an abstract idea.

Claim 15 is directed to the abstract idea of distributing data through a network.  FAC ¶ 166.  Claim 15 recites nothing more than a "method for routing information using result-based functional language."  *Two-Way Media*, 874 F.3d at 1337.  Distilling the claim down as the Federal Circuit did in *Two-Way Media*, *see* Section II.C *supra*, claim 15 covers the abstract idea of distributing data through a system by (1) "presenting" data, (2) "distributing" that data, (3) "decoding" that data, and (4) "presenting" the decoded data.  '375 Patent at 6:66–8:2.  That the distributed information is "limited to particular content"—here, a compressed audio/video data stream—does not render the idea any less abstract.  *Elec. Power Grp.*, 830 F.3d at 1353.

Although claim 15 lists the functional results of "presenting," "distributing," and "decoding" data, it fails to "sufficiently describe how to achieve these results in a non-abstract way."  *Two-Way Media*, 874 F.3d at 1337.  Claim 15 provides no guidance on how to distribute

the data, how to decode the data, or how to present the resulting decoded audio/video signal.  To

the contrary, claim 15 is directed to an idea no different than what conventional video-on-demand

systems achieve.  *See* '375 Patent at 1:14-16 (noting that conventional video on-demand systems

"may present independent video and audio programming to a number of rooms").

## 2.  *Alice* Step Two: '375 claim 15 is not inventive.

Claim 15 does not contain an inventive concept that would render it patent-eligible.  The

sole point of novelty alleged is the use of a supposedly "novel solution of a drive server," FAC

¶ 172, but the specification concedes that the claimed drive server is nothing more than a generic

computer.  '375 Patent at 2:36-38 ("The server 102 may be implemented as a personal computer

or other appropriate server."); *see also Broadcom Corp. v. Amazon.com Inc.*, No. 16-cv-01774-

JVS-JCGx, 2017 WL 5151356, at *10 (C.D. Cal. Sept. 1, 2017) (declining to construe "drive

server").  The patent similarly concedes that "decoder devices" can be implemented in either

conventional television equipment, *see, e.g.*, '375 Patent at 2:42-46 ("remote decoders . . . may be

located, in one example, in a set-top box [or] may be built into the tuner section of a television"),

or generic computers, *id.* at 4:29-38 ( "personal computers" are capable of supporting "a number

of remote decoders"); *see also id.* 1:28-33 (describing decoders in conventional video on demand

systems).  Viewed as a whole, then, claim 15 requires only "conventional computer and network

components operating according to their ordinary functions," *Two-Way Media*, 874 F.3d at 1341,

including a drive server, a control server, and decoder devices, *see In re TLI Commc'ns*, 823 F.3d

at 613–15 (holding recitation of a "server" and "control unit" failed to supply an inventive

concept); *RecogniCorp*, 855 F.3d at 1328 (holding that limitation claiming use of a computer did

not transform "the abstract idea of encoding and decoding" into patent-eligible subject matter);

*Affinity*, 838 F.3d at 1270 (holding that "the delivery of media content to electronic devices was

well known").  In other words, here, "[n]othing in the claims, understood in light of the

specification, requires anything other than off-the-shelf, conventional computer, network, and

display technology for gathering, sending, and presenting the desired information."  *Elec. Power

Grp.*, 830 F.3d at 1355; *see also Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d

1372, 1378 (Fed. Cir. 2017) ("[If] the only components disclosed in the specification for

DEFENDANT'S NOTICE AND MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 3:20-cv-04677-JD

implementing the asserted method claims are unambiguously described as 'conventional' [then those] components do not supply an inventive concept.") (citations omitted).

Notably, claim 15 does not prescribe any "technical means for performing the functions that are arguably an advance over conventional computer and network technology." *Elec. Power Grp.,* 830 F.3d at 1351.  Broadcom alleges that the '375 Patent "addresses the technical problem of ensuring delivery of compressed video content to multiple remote end user locations," FAC ¶ 169; however, as noted above, claim 15 recites only "conventional functions stated in general terms"—"presenting," "distributing," "decoding," and ultimately "presenting" data to decoder devices located in separate rooms—without specifying *how* any of these functions are to be performed, *Interval Licensing*, 896 F.3d at 1338.  Similarly, Broadcom alleges that "[e]ach of these servers can process one or more compressed video streams in response to one or more request signals initiated by a user requesting a video," FAC ¶ 170, yet nothing in the claim language specifies, for instance, how the servers must process compressed video streams or respond to request signals, *see Two-Way Media*, 874 F.3d at 1339 (precluding protocol and selection signals from inventive concept determination where neither was claimed).

In short, nothing in the language of claim 15 provides a meaningful limitation for how to route the data to multiple remote end-user locations; it merely dictates that such a result occurs. Likewise, limiting claim 15 "to the particular technological environment" of video on demand systems does not transform what is at its core an abstract idea ineligible for patent protection. *Elec. Power Grp.*, 830 F.3d at 1354.

## IV.    CONCLUSION

The asserted claims of the '079, '245, '992, and '375 Patents are ineligible subject matter. Therefore, Netflix respectfully requests the Court grant its motion.

1390416

Respectfully submitted,

Dated:  September 10, 2020                    KEKER, VAN NEST & PETERS LLP


By:    /s/ Sharif E. Jacob
       ROBERT A. VAN NEST
       MATTHIAS KAMBER
       SHARIF E. JACOB

       Attorneys for Defendant
       NETFLIX, INC.

DEFENDANT'S NOTICE AND MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FIRST
AMENDED COMPLAINT
Case No. 3:20-cv-04677-JD

1390416