1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROADCOM CORPORATION and AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LIMITED, | Case No. 3:20-cv-04677-JD |
| Plaintiffs, | **STIPULATED PROTECTIVE ORDER** |
| v. | Judge:      Honorable James Donato |
| NETFLIX, INC., | Date Filed: March 13, 2020 |
| Defendant. | Trial Date:   None Set |

1.    <u>PREFATORY STATEMENTS</u>

    A.    <u>PURPOSES AND LIMITATIONS</u>

       Discovery in this action is likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge that this Stipulated Protective Order does not entitle them to file confidential information under seal.

    B.    <u>GOOD CAUSE STATEMENT</u>

       This action is likely to involve trade secrets, customer and pricing lists and other valuable research, development, commercial, financial, technical, and/or proprietary information for which special protection from public disclosure and from use for any purpose other than prosecution of this action is warranted. Such confidential and proprietary materials and information consist of, among other things, confidential business or financial information, information regarding confidential business practices, source code and technical documentation, or other confidential research, development, or commercial information (including information implicating privacy rights of third parties), information otherwise generally unavailable to the public, or which may be privileged or otherwise protected from disclosure under state or federal statutes, court rules, case decisions, or common law. Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure that the parties are permitted reasonable necessary uses of such material in preparation for and in the conduct of trial, to address their handling at the end of the litigation, and serve the ends of justice, a protective order for such information is justified in this matter. It is the intent of the parties that information will not be designated as confidential for tactical reasons and that nothing be so designated without a

good faith belief that it has been maintained in a confidential, non-public manner, and there is good cause why it should not be part of the public record of this case.

2.    <u>DEFINITIONS</u>

2.1 <u>Challenging Party</u>: a Party or Non-Party that challenges the designation of information or items under this Order.

2.2 <u>"CONFIDENTIAL" Information or Items</u>: information (regardless of how it is generated, stored, or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c), and as specified above in the Good Cause Statement.

2.3 <u>Counsel (without qualifier)</u>: Outside Counsel of Record and House Counsel (as well as their support staff).

2.4 <u>Designating Party</u>: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery requests as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE."

2.5 <u>Disclosure or Discovery Material</u>: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.6 <u>Expert</u>: a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its Counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee of a Party, (3) is not a current employee of a Party's competitor, and (4) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

2.7 <u>"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items</u>: extremely sensitive "Confidential Information or Items," disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.8 <u>"HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items</u>: extremely

sensitive "Confidential Information or Items" representing or containing proprietary non-open-source or non-public domain computer code, build environment, and associated comments and revision histories, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.9 <u>House Counsel</u>: attorneys who are employees of a Party to this action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.10 <u>Non-Party</u>: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.11 <u>Outside Counsel of Record</u>: attorneys who are not employees of a Party to this action but are retained to represent or advise a Party to this action and have appeared in this action on behalf of that Party or are employed by a law firm which has appeared on behalf of that Party; as well as staff of such counsel to whom it is reasonably necessary to disclose or allow access to Protected Material for this litigation.

2.12 <u>Party</u>: any party to this action, including all of its officers, directors, and employees (and their respective support staffs).

2.13 "<u>Patents-in-Suit</u>" means U.S. Patent Nos. 6,341,375; 6,744,387; 6,982,663; 7,266,079; 7,457,722; 8,259,121; 8,270,992; 8,365,183; 8,548,976; 8,572,138; 8,959,245; and 9,332,283.

2.14 <u>Producing Party</u>: a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.15 <u>Professional Vendors</u>: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.16 <u>Protected Material</u>: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," or as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or as "HIGHLY CONFIDENTIAL – SOURCE CODE."

2.18 <u>Receiving Party</u>: a Party that receives Disclosure or Discovery Material from a Producing Party.

3.    <u>SCOPE</u>

3.1 The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party.

3.2 Nothing in this Protective Order shall prevent or restrict a Producing Party's own disclosure or use of its own Protected Material for any purpose, and nothing in this Order shall preclude any Producing Party from showing its Protected Material to an individual who prepared or was involved in the preparation of the Protected Material.

3.3 Nothing in this Order shall be construed to prejudice any Party's right to use any Protected Material in court or in any court filing with the consent of the Producing Party or by order of the Court. Any use of Protected Material at trial shall be governed by the orders of the trial judge. This order does not govern the use of Protected Material at trial.

3.4 This Order is without prejudice to the right of any Party or Non-Party to seek further or additional protection of any Discovery Material or to modify this Order in any way, including, without limitation, an order that certain matter not be produced at all.

4.    <u>DURATION</u>

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs.

5.      DESIGNATING PROTECTED MATERIAL

5.1 <u>Exercise of Restraint and Care in Designating Material for Protection</u>. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. To the extent it is practical to do so, and except as otherwise provided in this Order (*see, e.g.*, Section 9(g) below), the Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection at all or do not qualify for the level of protection initially asserted, that Designating Party must promptly notify all other parties that it is withdrawing the mistaken designation.

5.2 <u>Manner and Timing of Designations</u>. Except as otherwise provided in this Order (*see, e.g.*, section 5.2(b) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) <u>for information in documentary form</u> (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" to each page that contains Protected Material.

(b) <u>for testimony given in deposition</u>, that the Designating Party either (1) identify on the record or (2) identify, in writing, within 21 days of receipt of the final transcript, that the transcript shall be treated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

The use of a document as an exhibit at a deposition or other pretrial or trial proceedings

shall not in any way affect its designation as "CONFIDENTIAL" or "HIGHLY

CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE

CODE."

Transcripts containing Protected Material shall have an obvious legend on the title page

that the transcript contains Protected Material. Any transcript that was not designated on the

record pursuant to the first paragraph of section 5.2(b) above shall be treated during the 21-day

period for designation as if it had been designated "HIGHLY CONFIDENTIAL –

ATTORNEYS' EYES ONLY" in its entirety. After the expiration of that period or as of such

earlier time that such transcript is designated, the transcript shall be treated only as actually

designated.

(c) <u>for information produced in some form other than documentary and for any other

tangible items,</u> that the Producing Party affix in a prominent place on the exterior of the container

or containers in which the information or item is stored the legend "CONFIDENTIAL" or

"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL –

SOURCE CODE." If only a portion or portions of the information or item warrant protection, the

Producing Party, to the extent practicable, shall identify the protected portion(s) and specify the

level of protection being asserted.

5.3 <u>Inadvertent Failures to Designate</u>. An inadvertent failure to designate qualified

information or items does not waive the Designating Party's right to secure protection under this

Order for such material. Upon correction of a designation, the Receiving Party must make all

reasonable efforts to assure that the material is treated in accordance with the provisions of this

Order.

6.    CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1 <u>Timing of Challenges</u>. Any Party or Non-Party may challenge a designation of

confidentiality at any time that is consistent with the Court's Scheduling Order.

6.2 <u>Meet and Confer</u>. The Challenging Party shall initiate the dispute resolution process

by providing written notice of each designation it is challenging and describing the basis for each

challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must

recite that the challenge to confidentiality is being made in accordance with this specific section of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within 14 days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3    <u>Judicial Intervention</u>. If the parties cannot resolve a challenge without court intervention, the Designating Party shall file and serve a motion to retain confidentiality within 21 days of the initial notice of challenge or within 14 days of the parties agreeing that the meet and confer process will not resolve their dispute, whichever is earlier. In addition, the Challenging Party may file a motion challenging a confidentiality designation at any time if there is good cause for doing so, including a challenge to the designation of a deposition transcript or any portions thereof. Each such motion shall comply with the procedures set forth in any standing order and/or local rule applicable to discovery-related motions and must be accompanied by a competent declaration affirming that the movant has complied with the meet-and-confer requirements imposed in the preceding paragraph (6.2).

The burden of persuasion in any motion filed pursuant to this paragraph to resolve a challenge shall be on the Challenging Party. Frivolous challenges and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. All Receiving Parties shall continue to afford the material in question the level of protection to which it is entitled under the Designating Party's designation until the Court rules on the challenge.

7.    <u>ACCESS TO AND USE OF PROTECTED MATERIAL</u>

7.1 <u>Basic Principles</u>. A Receiving Party may use Protected Material that is disclosed or

produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order; provided, however, that nothing in this Order shall be deemed to preclude Outside Counsel of Record of a Receiving Party from using their knowledge of the existence of any Protected Material of a Producing Party in order to advise House Counsel of the Receiving Party in general terms about the potential impact of that Protected Material on the litigation—without disclosing the actual content of the Protected Material—for the purpose of assisting House Counsel in making decisions regarding prosecution, defense, or settlement of the litigation. When the Action has been terminated, a Receiving Party must comply with the provisions of section 15 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2 <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this Action;

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c) Experts (as defined in this Order) of the Receiving Party, as well as employees of each said Expert or said Expert's firms, to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d) the Court and its personnel;

(e) court reporters and their staff,

(f) professional jury or trial consultants including mock jurors who have signed a confidentiality agreement, and Professional Vendors to whom disclosure is reasonably necessary

for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g) during their depositions, Experts of the Designating Party, and with the consent of the Designating Party or as ordered by the Court, fact witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); provided, however, that Rule 30(b)(6) witnesses of the Designating Party may be shown information and items designated "CONFIDENTIAL" by the Designating Party that are related to the topic(s) of the Rule 30(b)(6) deposition;

(h) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; provided, however, that during their depositions, witnesses of the Designating Party that have access to at least portions of the Designating Party's confidential or proprietary information in the regular course of their business or employment may be shown information and items designated "CONFIDENTIAL" by the Designating Party to determine the extent of such witnesses' knowledge of the information and items;

(i) any mediator or settlement officer, and their supporting personnel, mutually agreed upon by any of the parties engaged in settlement discussions.

7.3 Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;

(b) Experts (as defined in this Order) of the Receiving Party, as well as employees of said Experts or said Expert's' firms, (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) for Experts only, as to whom the procedures set forth in Section 7.5(a), below, have been followed;

(c) the Court and its personnel;

(d) court reporters and their staff,

(e) professional jury or trial consultants including mock jurors who have signed a confidentiality agreement, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; provided, however, that during their depositions, witnesses of the Designating Party that have access to at least portions of the Designating Party's confidential or proprietary information in the regular course of their business or employment may be shown information and items designated "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY" by the Designating Party to determine the extent of such witnesses' knowledge of the information and items;

(g) during their depositions, Experts of the Designating Party, and with the consent of the Designating Party or as ordered by the Court, fact witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); provided, however, that Rule 30(b)(6) witnesses of the Designating Party may be shown information and items designated "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY" by the Designating Party that are related to the topic(s) of the Rule 30(b)(6) deposition; and

(h) any mediator or settlement officer, and their supporting personnel, mutually agreed upon by any of the parties engaged in settlement discussions.

7.4 <u>Disclosure of "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items</u>. Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – SOURCE CODE" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information

for this litigation;

(b) Experts of the Receiving Party as well as employees of each such Expert or each such Expert's firms, (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in Section 7.5(a), below, have been followed;

(c) the Court and its personnel;

(d) court reporters and their staff,

(e) professional jury or trial consultants (but not mock jurors), and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A),

(f) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; provided, however, that during their depositions, witnesses of the Designating Party that have access to at least portions of the Designating Party's source code in the regular course of their business or employment may be shown information and items designated "HIGHLY CONFIDENTIAL — SOURCE CODE" by the Designating Party to determine the extent of such witnesses' knowledge of the information and items;

(g) during their depositions, Experts of the Designating Party, and with the consent of the Designating Party or as ordered by the Court, fact witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); provided, however, that Rule 30(b)(6) witnesses of the Designating Party may be shown  information and items designated "HIGHLY CONFIDENTIAL — SOURCE CODE" by the Designating Party that are related to the topic(s) of the Rule 30(b)(6) deposition; and

(h) any mediator or settlement officer, and their supporting personnel, mutually agreed upon by any of the parties engaged in settlement discussions.

7.5 Procedures for Approving or Objecting to Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items to Experts.

(a) Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to Sections 7.3 and 7.4 first must make a written request to the Designating Party that (1) sets forth the full name of the Expert and the city and state of his or her primary residence, (2) attaches a copy of the Expert's current resume, (3) identifies the Expert's current employer(s), (4) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom the Expert has provided professional services, including in connection with a litigation, at any time during the preceding five years and the party to the litigation for whom such work was done, (5) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years, and (6) identifies any patents or patent applications in which the Expert is identified as an inventor or applicant, is involved in prosecuting or maintaining, or has any pecuniary interest. If the Expert believes any of this information is subject to a confidentiality obligation to a third-party, then the Expert should provide whatever information the Expert believes can be disclosed without violating any confidentiality agreements, and the Party seeking to disclose to the Expert shall be available to meet and confer with the Designating Party regarding any such engagement. Notwithstanding anything to the contrary in this paragraph, the employees of any Expert or the Expert's firm do not need to be disclosed.

(b) A Party that makes a request and provides the information specified in the preceding respective paragraphs may disclose the subject Protected Material to the identified Expert unless, within ten days of delivering the request (the "Objection Period"), the Party receives a written objection from the Designating Party. Any such objection must set forth in detail the grounds on which it is based. The Parties shall work in good faith to agree to longer or shorter Objection Periods if deadlines in the case so require. For the avoidance of doubt, absent written consent of the Designating Party, the Party may not share Protected Material with the identified Expert until

1  either the expiration of the Objection Period without written objection or until the Court resolves

2  the objection.

3      (c) A Party that receives a timely written objection must meet and confer with the

4  Designating Party (through direct voice to voice dialogue) to try to resolve the matter by

5  agreement within ten (10) days of the written objection. If the dispute is not resolved, the Party

6  making the disclosure will have ten (10) days from the date of the meet and confer to seek relief

7  from the Court, unless superseded by the applicable discovery dispute resolution procedures of

8  any Judge or Magistrate Judge presiding over such dispute. If relief is not sought from the Court

9  within that time, the request for disclosure shall be deemed withdrawn.

10      In any such proceeding, the Party opposing disclosure to the Expert shall bear the burden

11  of proving that the risk of harm that the disclosure would entail (under the safeguards proposed)

12  outweighs the Receiving Party's need to disclose the Protected Material to its Expert.

13  8.    PROSECUTION BAR

14      Absent the written consent of the Designating Party, any person who receives materials—

15  other than materials pertaining solely to a Designating Party financial information, sales and

16  marketing activity, licensing activity, and similar damages-related information—designated by

17  another Party as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY

18  CONFIDENTIAL – SOURCE CODE" ("Barred Person") shall not be involved in any of the

19  following activities: (i) preparing, prosecuting, supervising, or otherwise assisting in the

20  preparation or prosecution of any patent application related by claim of priority to any of the

21  Patents-in-Suit or patents relating to the field of the invention of the Patents-in-Suit, including but

22  not limited to such patents assigned to Broadcom[1] or Netflix[2]; (ii) amending any claim of any of

23  the Patents-in-Suit or patents relating to the field of the invention of the Patents-in-Suit, including

24  but not limited to such patents assigned to Broadcom or Netflix; and (iii) advising on, consulting

25  on, preparing, prosecuting, drafting, editing, and/or amending of patent applications,

26

27  [1] As used herein, "Broadcom" shall collectively refer to Plaintiffs Broadcom Corporation and
    Avago Technologies International Sales PTE Limited.

28  [2] As used herein, "Netflix" shall refer to Defendant Netflix, Inc.

specifications, claims, and/or responses to office actions, or otherwise affecting the scope of claims in patent applications relating to the field of the invention of the Patents-in-Suit, including but not limited to such patents assigned to Broadcom or Netflix. This Prosecution Bar shall begin when access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information (as described above) is first received by the affected person and shall end one (1) year after final disposition of this action, as defined in Section 15.

These prohibitions are not intended to and shall not preclude counsel from participating in proceedings on behalf of a Party challenging or defending the validity of any patent, including, but not limited to, as part of any reexamination, *inter partes* review, reissue proceedings, or any other post-grant review proceeding. Barred Persons (including counsel of record for the Receiving Party and any person that reviews materials designated by another Party as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE") may not participate, directly or indirectly, in drafting, amending, or altering the language of any patent claim(s) in any such proceeding. Nothing in this Protective Order shall prevent any attorney from sending Prior Art to persons involved in prosecuting patent applications for purposes of ensuring that such Prior Art is submitted to the U.S. Patent and Trademark Office (or any similar agency of a foreign government) in compliance with any duty of candor. Nothing in this paragraph shall prohibit any attorney of record in this litigation from discussing any aspect of this case that is reasonably necessary for the prosecution or defense of any claim or counterclaim in this litigation. This Prosecution Bar applies to each individual reviewing the "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or HIGHLY CONFIDENTIAL – SOURCE CODE" material and does not impute to the law firm, institution, or company who employs the individual.

9.      SOURCE CODE

(a)      To the extent production of source code becomes necessary in this case, a Producing Party may designate source code as "HIGHLY CONFIDENTIAL - SOURCE CODE" if it comprises or includes confidential, proprietary or trade secret source code.

(b)    Protected Material designated as "HIGHLY CONFIDENTIAL – SOURCE CODE" shall be subject to all of the protections afforded to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information, including the Prosecution Bar set forth in Paragraph 8, and may be disclosed only to the individuals authorized under Section 7.4.

(c)    Any source code produced in discovery shall be made available for inspection in a format allowing it be reasonably reviewed and searched during normal business hours (9:00 am to 5:00 pm local time) or other mutually agreeable times at an office of the Producing Party's counsel or another mutually agreed upon location (the "Source Code Review Room").[3] The computer containing source code will be made available upon reasonable notice to the Producing Party, which shall not be less than fourteen (14) days' notice prior to the first requested inspection and shall not be less than seven (7) business days' notice in advance of any additional inspections, identifying the specific individuals who will be inspecting the source code on behalf of the Receiving Party. The Producing Party will attempt in good faith to make source code available for review on a shorter notice timeline where reasonably practicable, and in view of case deadlines.  The source code shall be made available for inspection on a secured computer in a secured room without Internet access or network access to other computers (the "Source Code Computer").  No electronic recordable media or recordable devices, including, without limitation, sound recorders, computers, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind, shall be permitted into the Source Code Review Room, and the Receiving Party (and their identified representatives, including Experts and the employees of Experts) shall not copy, remove, or otherwise transfer any portion of the source code onto any recordable media or recordable device. The Producing Party may visually monitor the activities of the Receiving Party's representatives during any source code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code. The Receiving Party's Outside Counsel and/or Experts (or their staff) shall be entitled to take notes relating to the source code but may not copy the source code into the notes. To the extent the Receiving Party's Outside

---

[3] The Parties agree that, to the extent the ongoing COVID-19 pandemic, or the restrictions associated therewith, make an in-person source code review impossible, impractical, or unsafe, the Parties will meet and confer on options for alternative methods of source code review.

Counsel and/or Experts (or their staff) wish to take electronic notes, they may do so using an application on the Source Code Computer. Any such notes shall not include copies or reproductions of portions of the source code; however, the notes may contain module names, class names, parameter names, variable names, function names, method names, procedure names, or line numbers typed by the note-taker. The note-taker may copy-and-paste or use short cuts to record filenames and directory names into his or her notes. The Producing Party shall print such notes from the Source Code Computer upon request by the Receiving Party. The Receiving Party shall have the ability to delete its electronic notes from the Source Code Computer. The Producing Party shall not delete the Receiving Party's electronic notes from the Source Code Computer. The limits on source code printing set forth in this Order shall not apply to printing such notes.

Each Producing Party may designate one individual to examine a source code reviewer's notes ("Source Code Notes") at the end of each review day ("Notes Examiner"). The Notes Examiner may not have any other involvement with this matter or any parallel proceedings such as *inter partes* review or post-grant proceedings, and may examine Source Code Notes solely for the purpose of determining compliance with this protective order. The Notes Examiner may not discuss any aspect of the Source Code Notes with the Producing Party, or any affiliate or representative of the Producing Party, save to disclose the Notes Examiner's belief that a violation of the protective order has occurred and the basis for that belief. To the extent the Producing Party claims a violation of the protective order arising from the Notes Examiner's review of Source Code Notes and the claim cannot be resolved by the Parties, the Receiving Party shall not have an automatic right to production or receipt of Source Code Notes, but may request in camera inspection of the Source Code Notes by the Court for a determination of whether a protective order violation has occurred and for appropriate relief, in the Court's discretion. The Producing Party shall keep a paper log indicating the names of any individuals inspecting the source code and dates and times of inspection, and the names of any individuals to whom paper copies of portions of source code are provided.

(d) If the Producing Party contends that any of the source code it makes available for

review is derived from or is similar to publicly available open source code, a copy of the relevant open source code will also be made available for inspection on the Source Code Computer in a format allowing it to be electronically compared using source-code comparison tools. In addition, the Receiving Party may request that certain publicly available open source code (e.g., source code that Netflix made open source) be installed on the Source Code Computer in order to expedite review.

(e)     The Producing Party shall install approved tools provided by Receiving Party that are sufficient for reviewing and searching the code produced. The Receiving Party's Outside Counsel and/or experts/consultants may request that commercially available software tools for viewing and searching source code be installed on the Source Code Computer, provided, however, that (1) the Receiving Party possesses an appropriate license to such software tools and (2) the Producing Party approves such software tools, which approval shall not be unreasonably withheld; the Producing Party will approve the use of software tools that are reasonably necessary for the Receiving Party to perform its review of the source code consistent with all of the protections herein, including but not limited to each of the following tools: a text editor capable of printing out source code with filename, page and line number, a source-code comparison tool such as a "diff" tool (e.g., Winmerge), and a multi-text file search tool (e.g., Notepad++, Visual Studio, grep, PowerGrep). The Producing Party shall approve reasonable requests for additional commercially available software tools. The Receiving Party must provide the Producing Party with the CD, DVD, file path, or Advanced Package Tool package containing such licensed software tool(s) at least four (4) business days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the Source Code Computer. The Producing Party shall make reasonable attempts to install the requested software but will not be held responsible for the proper setup, functioning, or support of any software requested by the Receiving Party. By way of example, the Producing Party will not compile to machine language or debug software for installation.

(f)     The Receiving Party may request paper copies of limited portions of source code (with each portion no greater than 30 consecutive pages and with no more than 500 pages total)

that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth in paragraph (c) in the first instance. Using the software available on the Source Code Computer, the Receiving Party shall create PDFs of the printed copies the Receiving Party is requesting and save them in a folder on the desktop of the Source Code Computer named "Print Requests" with a subfolder identifying the date of the request. The PDF printouts must include identifying information including the full file path and file name, page number, line numbers, and date of printing. The request for printed source code shall be served via an email request identifying the subfolders of the "Print Requests" folder that the Receiving Party is requesting. Within five (5) business days of such request, the Producing Party shall provide one copy of all such source code on watermarked or colored paper including bates numbers and the label "HIGHLY CONFIDENTIAL — SOURCE CODE."  If the request is served after 5:00 pm Pacific Time, it shall be deemed served the following business day. Such source code printouts shall be shipped by each Party in a manner consistent with how each Party ships its own "HIGHLY CONFIDENTIAL – SOURCE CODE" material. The Producing Party may challenge the amount of source code requested in hard copy form pursuant to the dispute resolution procedure and timeframes set forth in Paragraph 6 whereby the Producing Party is the "Challenging Party" and the Receiving Party is the "Designating Party" for purposes of dispute resolution.  Notwithstanding anything to the contrary in this Paragraph, upon request of the Receiving Party, the Parties agree to meet and confer in good faith regarding any exceptions in a specific instance to the numerical limits on the pages of source code that may be printed.

(g) In addition to the log maintained by the Producing Party in paragraph (c), the Receiving Party shall maintain a record of any individual who has inspected any paper copies of the source code provided by the Producing Party. The log shall include the names of the reviewers and/or recipients of paper copies and locations where the paper copies are stored. Upon five (5) business days' advance notice to the Receiving Party by the Producing Party, the Receiving Party shall provide a copy of this log to the Producing Party.  The Receiving Party

(along with its Experts, and the employees of each said Expert or said Expert's firm) shall maintain all paper copies of any printed portions of the source code in a secured, locked area and in a manner that prevents duplication of or unauthorized access to the source code, including, without limitation, storing the source code in a locked room or cabinet at all times when it is not in use.  To the extent a deposition is likely to involve source code, the Party taking the deposition shall provide at least two days written notice of that fact, and the Producing Party may make a source code computer available at the deposition, minimizing the need for additional paper copies of source code, including upon request of the Receiving Party.  Any paper copies used during a deposition shall be retrieved by the Producing Party at the end of each day and must not be given to or left with a court reporter or any other unauthorized individual. Notwithstanding anything to the contrary in this paragraph, the Receiving Party may request additional paper copies of the printed source code which shall not be unreasonably withheld. Any disputes relating to such additional copies shall be handled in accordance with Section 9(f).

(h)     Except as provided in this sub-paragraph, absent express written permission from the Producing Party, the Receiving Party shall not create any electronic or other images of the paper copies and shall not convert any of the information contained in the paper copies into any electronic format. The Receiving Party shall only make additional paper copies if such additional copies are (1) necessary to prepare court filings, pleadings, or other papers (including a testifying expert's expert report), (2) necessary for deposition, or (3) otherwise necessary for the preparation of its case.[4]  Images or copies of source code shall not be included in correspondence between the Parties (references to production numbers shall be used instead), and shall be omitted from pleadings and other papers except to the extent permitted herein. The Receiving Party (along with its Experts, and the employees of each said Expert or said Expert's firm) may create an electronic copy or image of limited excerpts of source code in a pleading, court filing, expert report, trial exhibit, demonstrative, deposition exhibit/transcript, and drafts of these documents. Each such excerpt shall in no instance comprise more than 150 consecutive lines of source code.  The

---

[4] It is anticipated that the Receiving Party's outside counsel may need to create and retain a paper copy of the printed source code in order to facilitate communication with the Receiving Party's Experts in the preparation of its case.

Receiving Party may create an electronic image of a selected portion of the source code only when the electronic file containing such image ("Source Code File") has been encrypted using commercially reasonable software (specifically Microsoft Word Document Protect, 7Zip, or other software agreed upon by the Parties in writing) provided, however, that (i) transitory images, such as images temporarily saved to the clipboard during copy/paste operations, do not need to be so encrypted, and (ii) filings with the Court shall not be encrypted. The Receiving Party shall not transmit any Source Code Files using email, nor shall the Receiving Party store any Source Code Files on any handheld devices, such as smartphones. Any transmission of electronically-stored Source Code Files, apart from filing with the Court, shall be via secure FTP or password-protected media. Copies of Source Code Files shall be deleted immediately from any media used for purposes of transfer after transfer is complete.

The communication and/or disclosure of electronic files containing any portion of source code shall at all times be limited to individuals who are expressly authorized to view source code under the provisions of this Protective Order. Any electronic copies of any portions of source code (or documents containing said portions of source code) must be labeled "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" as provided for in this Order. To the extent it becomes necessary for a Receiving Party to file limited excerpts of source code in a court filing, such material shall be submitted to the Court in paper form, to the extent permitted by the Court, consistent with the operable procedures governing the treatment of Highly Sensitive Documents ("HSDs") by the United States District Court for the Northern District of California.  In the event such limited excerpts of source code are not permitted to be treated as HSDs, a party seeking to file with the court documents containing excerpts of source code as permitted by this subparagraph must seek leave to file the material under seal in accordance with the procedures set forth in any applicable standing order and/or local rule for sealing motions.

10.    <u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER
          LITIGATION</u>

          10.1 If a Party is served with a subpoena or a court order issued in other litigation that

compels disclosure of any information or items designated in this Action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" that Party must:

(a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" before a determination by the Court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

10.2 The provisions set forth herein are not intended to, and do not, restrict in any way the procedures set forth in Federal Rule of Civil Procedure 45(d)(3) or (f).

11.    A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a) The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from

seeking additional protections.

(b) In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

1. promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party; and

2. promptly provide the Non-Party with a copy of the Stipulated Protective Order in this Action, the relevant discovery request(s), and a reasonably specific description of the information requested.

(c) If the Non-Party fails to object or seek a protective order from this Court within ten days after receiving the notice and accompanying information (unless a different period of time is specified by a contract or agreement involving the Producing Party and the Non-Party covering the confidentiality and/or disclosure of the information requested), the Producing Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Producing Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the Court. Absent a Court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this Court of its Protected Material.

12.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

13.    INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED
         MATERIAL

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). A Producing Party may assert privilege or protection over produced documents at any time by notifying the Receiving Party in writing of the assertion of privilege or protection and providing with such notice a privilege log with respect to the documents subject to the notice. After being notified, a Receiving Party must promptly return or destroy the specified information until the claim is resolved. In addition, a Receiving Party shall promptly notify the Producing Party if it receives documents or information that appear on their face to contain privileged or attorney-work-product material so that the Producing Party may invoke the procedures of this paragraph if appropriate.

Pursuant to Federal Rule of Evidence 502(d) and (e), the production of a privileged or work-product-protected document is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or any other federal or state proceeding.

14.    MISCELLANEOUS

14.1 Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

14.2 Right to Assert Other Objections. By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

14.3 Export Control. The Protected Material disclosed by the Producing Party may contain technical data subject to export control laws and therefore the release of such technical data to foreign persons or nationals in the United States or elsewhere may be restricted. The

Receiving Party shall take measures necessary to ensure compliance with applicable export control laws, including confirming that no unauthorized foreign person has access to such technical data.

Subject to the exceptions included in the attached and incorporated Supplement A, which forms an essential part of this Protective Order, no Protected Material may leave the territorial boundaries of the United States of America or Canada. Without limitation, this prohibition extends to Protected Information (including copies) in physical and electronic form. The viewing of Protected Information through electronic means outside the territorial limits of the United States of America or Canada is similarly prohibited. Further, with respect to Defendants' materials designated as "HIGHLY CONFIDENTIAL – SOURCE CODE," such materials may not leave the territorial boundaries of the United States of America. The restrictions contained within this paragraph may be amended through the express written consent of the Producing Party to the extent that such agreed to procedures conform with applicable export control laws and regulations. Nothing in this paragraph is intended to remove any obligation that may otherwise exist to produce documents currently located in a foreign country.

14.4 Filing Protected Material. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue.

14.5 Privilege Logs. The parties agree that any materials protected from discovery by the attorney-client privilege or the work product doctrine created after September 26, 2019 need not be identified on a privilege log under Federal Rule of Civil Procedure 26(b)(5). Any communications among Broadcom or Netflix, on the one hand, and their litigation counsel, on the other hand, that do not involve third parties and are protected from discovery by the attorney-client privilege need not be identified on a privilege log. This includes communications between litigation counsel and retained litigation experts or consultants. The parties shall exchange initial

privilege logs no later than 60 (sixty) days after completing production in response to email production requests as defined in the Standing Order for E-Discovery and Email Discovery in Patent Cases Before Judge James Donato, and in no event later than three months before the close of fact discovery. Subsequently, parties shall serve supplemental privilege logs promptly upon identification of documents withheld or redacted on the basis of privilege, attorney work product, or similar doctrines.

14.6 Computation of time. The computation of any period of time prescribed or allowed by this Order shall be governed by the provisions for computing time set forth in Federal Rule of Civil Procedure 6.

14.7 Expert Materials and Communications. Expert report served in this action will contain all of the expert's opinions to be used at trial and the bases for each opinion, as well as citation to all facts and/or data relied upon by the expert, the qualifications of the expert, all publications authored by the expert in the past ten years, and a list of all other cases in which the expert has testified as a deponent or at trial in the past five years. Three calendar days after serving an expert report, the party serving the report will produce copies of all materials cited, referenced, or otherwise relied upon by the expert in forming his or her opinion, to the extent such materials have not been produced in discovery.

Except as noted in subpart (f) below, the following categories of information and documents need not be disclosed by any party, and are outside the scope of permissible discovery for any expert, including at deposition, and are inadmissible at trial:

(a)    Drafts of expert reports, draft work papers or other preliminary, intermediate or draft materials prepared by, for, or at the direction of an expert witness and the contents of such drafts.

(b)    Any oral or written communications between the experts and attorneys for the party offering the testimony of such expert witness. The discoverability of such communications is in no way affected by the presence of other persons, in addition to the expert and the attorneys for the party offering the testimony, during such communications.

(c)    Any oral or written communications between an expert witness and the expert's

assistants and/or clerical or support staff.

(d)    Any notes taken or other writings prepared by or for an expert witness in connection with this matter including, but not limited to, correspondence or memos to or from, and notes of conversations with, the expert's assistants and/or clerical or support staff or attorneys for the party offering the testimony of such expert witness.

(e)    Any oral or written communications between an expert witness and any employee or other expert for the party on whose behalf the expert was engaged.

(f)    Notwithstanding the above, communications regarding the expert's compensation, communications identifying facts or data relied upon by the expert in his or her opinions, or communications identifying assumptions provided to the expert that the expert used in developing his or her opinions may be within the scope of permissible discovery for any expert, including at deposition, provided that such information regarding the expert's compensation, facts, data or assumptions have not been made available to the other Party in any other Documents (including, without limitation, an expert report, witness statement, or other memorial submission) or are otherwise publicly available.

15.    FINAL DISPOSITION

Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this Action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law and the time limits for filing a petition for writ of certiorari to the Supreme Court of the United States if applicable.

Within 60 days after the final disposition of this action, as defined herein, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating

Party) by the 60-day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material, with the exception of paper copies of source code. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

SO ORDERED this _____ day of _____, 2020.

_____
HON. JAMES DONATO
United States District Judge

SUPPLEMENT A

This Supplement A forms a part of and is incorporated within the Stipulated Protective Order submitted by the Parties and entered by the Court.

The terms of this Supplement A were negotiated and agreed to by the Parties as a compromise to reach agreement on all provisions in the Stipulated Protective Order. Accordingly, should any Party later seek modification of or relief from this Supplement A, any other Party may seek to modify the other terms of the Stipulated Protective Order notwithstanding the Parties' stipulation to the terms.

Broadcom has informed Netflix of Broadcom's plans to use Dr. Iain Richardson of Vcodex Ltd. ("Vcodex")—who lives in Delft, The Netherlands—as a technical expert with regard to U.S. Pat. Nos. 6,744,387, 6,982,663, and 9,332,283 (collectively, the "Encoding Patents") and has submitted to Netflix Dr. Richardson's disclosures under Section 7.4 of the Interim Patent Protective Order.

Netflix has represented to Broadcom, and Broadcom has relied on such representation, that, based on Netflix's reasonable diligent investigation as of the date of this Supplement, all of Netflix's computer code, build environments, associated comments and revision histories relevant to the Encoding Patents is based on publicly available open source code.

Provided that Dr. Richardson is approved to receive Protected Material under Section 7.4 of the Stipulated Protective Order,[5] Section 14.3 of the Stipulated Protective Order is modified as follows:

1. Other than information designated "HIGHLY CONFIDENTIAL — SOURCE CODE," Netflix shall identify, on a document-by-document basis, any information produced by Netflix under the Stipulated Protective Order that Netflix contends is prohibited from being disclosed to foreign persons or nationals in the United States or elsewhere under the export control laws of the United States. For any documents so designated, Netflix shall identify the particular export-control laws that Netflix

---

[5] As part of the compromise negotiated in this Supplement, Netflix agrees not to object to disclosure of Protected Material to Dr. Richardson on the basis of his geographic location and the geographic location of his consulting company.

contends apply. Should Broadcom desire to disclose any documents so designated to Dr. Richardson, the parties shall meet and confer in good faith in an attempt to resolve any dispute as to the applicability of the identified export-control laws before submission to the Court for determination of the dispute.

2. Notwithstanding the requirements under Section 14.3 that no Protected Material may leave, or be viewed outside of, the territorial boundaries of the United States of America or Canada, Broadcom may disclose to Dr. Richardson (located in Delft, The Netherlands), Protected Material, in physical or electronic form, that has been designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY" under the Stipulated Protective Order. Broadcom may also disclose to Dr. Richardson information that is relevant to the Encoding Patents that Netflix has designated "HIGHLY CONFIDENTIAL — SOURCE CODE," provided that Broadcom notify Netflix of the specific source code materials it intends to disclose five (5) business days in advance of such disclosure (so as to allow Netflix an opportunity to seek a protective order, if necessary).  However, absent agreement of the Parties and any third party whose Protected Material is contained therein, Broadcom may not otherwise disclose to Dr. Richardson any information that Netflix has designated "HIGHLY CONFIDENTIAL — SOURCE CODE" unless the five-business-day-notice period has passed without a motion for protective order having been filed.  Any access by Dr. Richardson to the specific source code materials outside of the territorial boundaries of the United States of America shall be in physical form in accordance with Section 9 of the Stipulated Protective Order.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>EXHIBIT A</u>

<u>ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND</u>

I, _____ [print or type full name], of _____

[*if individual*: print or type full address; *if Expert associated with consulting firm*: name and address of consulting firm] [*if Expert*: (hereinafter "Expert Firm")], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Northern District of California on _____ in the case of *Broadcom Corporation, et al. v. Netflix, Inc.*, 3:20-cv-04677-JD. I [*Expert only*: and those employed by me or my Expert Firm who are provided information covered by the Stipulated Protective Order] agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I [*Expert only*: and those employed by me or my Expert Firm who are provided information covered by the Stipulated Protective Order] will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

[*If Expert*: I agree that both I and Expert Firm may be potentially liable for any violation of this Stipulated Protective Order by those employed by me or my Expert Firm who are provided information covered by the Stipulated Protective Order.]

I [*if Expert associated with consulting firm*: and Expert Firm] further agree to submit to the jurisdiction of the United States District Court for the Northern District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of _____ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.

Date: _____

City and State where sworn and signed: _____

Printed name: _____
                    [printed name]

Signature: _____
                    [signature]

STIPULATED PROTECTIVE ORDER
Case No. 3:20-cv-04677-JD