Bruce S. Sostek, admitted *pro hac vice*
bruce.sostek@tklaw.com
Richard L. Wynne, Jr., admitted *pro hac vice*
richard.wynne@tklaw.com
Adrienne E. Dominguez, admitted *pro hac vice*
adrienne.dominguez@tklaw.com
THOMPSON & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone:    (214) 969-1700
Facsimile:    (214) 969-1751

John V. Picone III, Bar No. 187226
jpicone@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 South First Street
San Jose, CA  95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:    (408) 286-9800
Facsimile:    (408) 998-4790

Attorneys for Plaintiffs
BROADCOM CORPORATION and AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LIMITED.

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **BROADCOM CORPORATION, ET AL.,**<br><br>Plaintiffs,<br><br>v.<br><br>**NETFLIX, INC.,**<br><br>Defendant. | Case No. 3:20-cv-04677-JD<br><br>**MEMORANDUM ISO PLAINTIFFS' OPPOSITION TO NETFLIX'S MOTION TO STAY**<br><br>Dept.:           Courtroom 11, 19th Floor<br>Judge:          Hon. James Donato<br>Hearing Date: June 3, 2021<br>Time:           10:00 a.m. |

**TABLE OF CONTENTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  The case is not at an early stage. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.  Many issues will remain, including claims related to at least five patents that are not subject to *inter partes* review, even if the PTAB grants all of Netflix's petitions. . . . . . . . . . . . . . . . . . 4

    C.  Netflix's infringement has damaged, and continues to damage, Broadcom. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    D.  If a stay is granted, it should be limited to patents that are actually subject to *inter partes* review. . . . . . . . . . . . . . . . . . . . . . 7

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# TABLE OF AUTHORITIES

## Cases

*Adaptix, Inc. v. HTC Corp.*,
   No. 5:14-cv-02359-PSG, 2015 WL 12839246 (N.D. Cal. Aug. 5, 2015) . . . . . . . . . . . . 4

*Affinity Labs of Tex. v. Apple Inc.*,
   No. 09-04436 CW, 2010 WL 1753206 (N.D. Cal. Apr. 29, 2010) . . . . . . . . . . . . . . 7

*Allergan Inc. v. Cayman Chem. Co.*,
   No. SACV07–01316–JVS (RNBx), 2009 WL 8591844 (C.D. Cal. Apr. 9, 2009) . . . . . . . 6

*Asetek Holdings, Inc v. Cooler Master Co.*,
   No. 13-cv-00457-JST, 2014 WL 1350813 (N.D. Cal. Apr. 3, 2014) . . . . . . . . . . . . . 5

*Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*,
   No. 10–cv–02863–EJD, 2011 WL 3267768 (N.D. Cal. July 28, 2011) . . . . . . . . . . . . 6

*Comcast Cable Commc'ns Corp. v. Finisar Corp.*,
   No. C 06-04206 WHA, 2007 WL 1052883 (N.D. Cal. Apr. 5, 2007) . . . . . . . . . . . 3, 5

*Hewlett-Packard Co. v. ServiceNow, Inc.*,
   No. 14-cv-00570-BLF, 2015 WL 5935368 (N.D. Cal. Oct. 13, 2015) . . . . . . . . . . . 7, 8

*Int'l Test Sols., Inc. v. Mipox Int'l Corp.*,
   No. 16-cv-00791-RS, 2017 WL 1316549 (N.D. Cal. Apr. 10, 2017) . . . . . . . . . . . . . 3

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Networks, Inc. v. Apple Inc.*,
   No. C-13-4700 EMC, 2015 WL 12976113 (N.D. Cal. June 2, 2015) . . . . . . . . . . . . 4

*Parity Networks, LLC v. Juniper Networks, Inc.*,
   No. 18-cv-06452-JSW, 2019 WL 8810383 (N.D. Cal. July 3, 2019) . . . . . . . . . . . . . 7

*Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*,
   No. 14-cv-01575-EMC, 2014 WL 3107447 (N.D. Cal. July 3, 2014) . . . . . . . . . . . . 2

*SAGE Electrochromics, Inc. v. View, Inc.*,
   No. 12-cv-06441-JST, 2015 WL 66415, (N.D. Cal. Jan. 5, 2015) . . . . . . . . . . . . . . 2

*Soverain Software LLC v. Amazon.Com, Inc.*,
   356 F. Supp. 2d 6602 (E.D. Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Tokuyama Corp. v. Vision Dynamics, LLC*,
   No. C 08-2781SBA, 2008 WL 4452118 (N.D. Cal. Oct. 3, 2008) . . . . . . . . . . . . . . 2

*Xilinx, Inc. v. Invention Inv. Fund I LP*,
   No. 5:11-cv-00671 EJD, 2012 WL 6003311 (N.D. Cal. Nov. 30, 2012) . . . . . . . . . . . 4

Netflix's motion to stay is based on three false assumptions: (i) the case is at a very early stage; (ii) a stay would greatly simplify the issues; and (iii) a stay would not unduly prejudice Broadcom. Netflix is wrong on all points.

*First*, this suit is over a year old, and it has passed several important milestones. The parties have exchanged initial disclosures, infringement contentions, invalidity contentions, and preliminary damages contentions. The Court has held a hearing on Netflix's motion to dismiss several claims. Discovery is ongoing, as the parties have served and responded to over a hundred requests for production and Netflix has served subpoenas on at least ten third parties. Broadcom has conducted on-site review of Netflix software. And the claim-construction process is ongoing. The case is not at an early stage.

*Second*, Netflix ignores the fact that five of the patents-in-suit are "IPR-proof"—the PTAB has already denied Netflix's petition as to one, and Netflix failed to challenge the others. In fact, 31 of the claims asserted in this suit are not, and cannot be, subject to *inter partes* review. Regardless of the outcome of IPR proceedings related to the other patents, those claims will remain and must be addressed in this suit. A stay would not significantly simplify the case.

*Third*, Netflix's infringement has caused, and continues to cause, Broadcom significant damage. Specifically, Netflix uses the patented technology to improve its streaming services without license or authority from Broadcom, thereby allowing Netflix to compete unfairly with Broadcom's customers, namely cable- and satellite-television providers. As a result, cable viewership has decreased as consumers switch to Netflix. And this directly impacts Broadcom, because Broadcom supplies the chips used to operate the set-top boxes necessary to access cable and satellite programming. With less demand for cable- and satellite-television, there is less demand for set-top boxes, and less demand for the Broadcom chips used to operate them. A stay would prejudice Broadcom.

Viewed in light of these facts, a stay is improper and Netflix's motion should be denied. But in any event, if the Court determines that a stay is appropriate, the stay should be limited to claims related to patents that are actually the subject of *inter partes* review. The case should be

allowed to proceed with respect to any patents that are not subject to such review, including the five patents that are already IPR-proof (the Non-IPR Patents), as well as any other patents as to which the PTAB may deny Netflix's currently pending petitions.

## LEGAL STANDARD

The discretion to stay litigation in favor of another proceeding is within the Court's inherent authority "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). A court, however, "is under no obligation to delay its own proceedings by yielding to ongoing PTAB patent reexaminations." *Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, No. 14-cv-01575-EMC, 2014 WL 3107447, at *3 (N.D. Cal. July 3, 2014). On the contrary, such an obligation "'would invite parties to unilaterally derail' litigation." *Tokuyama Corp. v. Vision Dynamics, LLC*, No. C 08-2781SBA, 2008 WL 4452118, at *2 (N.D. Cal. Oct. 3, 2008) (quoting *Soverain Software LLC v. Amazon.Com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005)).

When evaluating whether to stay litigation in favor of IPRs, courts in this District frequently consider three factors: (i) the stage of the case; (ii) whether a stay will simplify the issues in the case; and (iii) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party. *SAGE Electrochromics, Inc. v. View, Inc.*, No. 12-cv-06441-JST, 2015 WL 66415, at *1 (N.D. Cal. Jan. 5, 2015). None of these factors supports Netflix's motion.

## ARGUMENTS

**A.  The case is not at an early stage.**

Contrary to Netflix's assertion, this case is not "at a very early stage." Mot. at 1. Broadcom brought its suit fourteen months ago, on March 13, 2020, and much has been accomplished since then. The parties have exchanged Initial Disclosures, Broadcom has served its Infringement and Preliminary Damages Contentions, and Netflix has served its Invalidity Contentions.[1] Netflix

---

[1]  **Ex. A**: Declaration of Richard L. Wynne, Jr. (May 13, 2021) ¶ 3 (Wynne Decl.).

filed motions to dismiss, which were fully briefed and have been argued to the Court.[2] Collectively, the parties have served and responded to 129 requests for production and produced over 125,000 pages of documents.[3] Netflix has served subpoenas to testify and produce documents on at least ten third parties.[4] Broadcom has conducted an on-site review of portions of Netflix's source code.[5] And the claim-construction process is underway—the parties have exchanged preliminary claim constructions, the joint claim-construction and prehearing statement is due to be filed on May 18, and claim-construction briefing is set to begin on July 2.[6] In short, for over a year, Broadcom has invested significant effort and expense to bring this case closer to an end.

Faced with similar facts, the court in *Comcast Cable Communications Corp. v. Finisar Corp.*, No. C 06-04206 WHA, 2007 WL 1052883, at *2 (N.D. Cal. Apr. 5, 2007), denied the defendant's motion to stay. In that case, the PTO had granted two reexaminations concerning the patents-in-suit, the case had been pending for 9 months, no claim-construction ruling had been issued, discovery was ongoing, and there was "much work to do." *Id.* at *1–2. Nonetheless, the court found that "[g]iven what has occurred to date, it would be wasteful to simply stay the case and wait years before trying to ramp up again." *Id.* Here, too, "the large investment in the unfinished claim-construction process and the large investment in preparation to produce a mass of documents, most of which work would have to be reduplicated later were a stay now granted," weigh against a stay. *See id.* Instead, "the best course is to reap the benefits of the preparation invested to date, both on claim construction and on discovery." *See id.*

---

[2] *See* ECF Nos. 43, 44, 53, 55–57, 61, 64, 66, 75, 87, 90, 91. Notably, where dispositive motion practice is already underway, a stay of litigation is disfavored. *See Int'l Test Sols., Inc. v. Mipox Int'l Corp.*, No. 16-cv-00791-RS, 2017 WL 1316549, at *2 (N.D. Cal. Apr. 10, 2017).

[3] **Ex. A**: Wynne Dec. ¶ 3.

[4] *Id.*

[5] *Id.*

[6] *Id.*

**B. Many issues will remain, including claims related to at least five patents that are not subject to *inter partes* review, even if the PTAB grants all of Netflix's petitions.**

"To truly simplify the issues the outcome of the reexamination must finally resolve all issues in the litigation." *Xilinx, Inc. v. Invention Inv. Fund I LP*, No. 5:11-cv-00671 EJD, 2012 WL 6003311, at *4 (N.D. Cal. Nov. 30, 2012). Far from resolving all issues in this case, many issues will remain even in the unlikely event that all of the challenged claims are found invalid.

Netflix ignores the fact that the five Non-IPR Patents are not subject to *inter partes* review. The PTAB denied institution of Netflix's petition for review of the '121 Patent, and Netflix chose not to file petitions against the '079, '245, '387, and '283 Patents.[7] Because the deadline for filing petitions has passed, Netflix is statutorily barred from filing additional petitions against them. So even if the PTAB were to institute IPR on all of Netflix's remaining petitions and all challenged claims were found invalid—which is highly unlikely—the Non-IPR Patents will remain in the case, and the Court would find itself in the same spot months, if not years, from now: engaging in claim construction, expert discovery, dispositive-motion practice, and trial.

Further, the Non-IPR Patents account for 30 of the 81 asserted claims.[8] Other courts in this District have refused to stay a case where far fewer asserted claims were not involved in a post-grant review. *See Adaptix, Inc. v. HTC Corp.*, No. 5:14-cv-02359-PSG, 2015 WL 12839246, at *3 (N.D. Cal. Aug. 5, 2015) (denying motion to stay where the PTAB instituted review of only 25% of the asserted claims); *Aylus Networks, Inc. v. Apple Inc.*, No. C-13-4700 EMC, 2015 WL 12976113, at *2 (N.D. Cal. June 2, 2015) (denying motion to stay pending IPR review, where two of the asserted claims were not under review, reasoning that "[r]egardless of the result of IPR, these claims will have to be addressed in this suit").

Even as to the patents that are, or may become, subject to IPR review, Netflix's infringement is likely to remain in this case, and the Court will still have to address numerous

---

[7] In addition, Netflix did not challenge at least one asserted claim of the '663 Patent, so even if the PTAB grants Netflix's petition as to that patent, that claim will remain in the case. **Ex. A**: Wynne Decl. ¶ 5.

[8] **Ex. A**: Wynne Decl. ¶ 5. This does not include the unchallenged claim of the '663 Patent.

defenses and counterclaims not relevant to Netflix's obviousness invalidity arguments. Indeed, "[t]he chance that all claims in suit would evaporate is nonexistent as a practical matter, even before considering that some claims in suit will not be covered by the reexaminations." *Comcast Cable Commc'ns*, 2007 WL 1052883, at *1 (N.D. Cal. Apr. 5, 2007).

Because so many issues will be left unresolved even if Netflix's IPRs are successful, the simplification factor does not favor a stay. *See Asetek Holdings, Inc v. Cooler Master Co.*, No. 13-cv-00457-JST, 2014 WL 1350813, at *3 (N.D. Cal. Apr. 3, 2014) ("[W]here only some of the patents-in-suit are subject to reexamination and the litigation presents issues not before the PTO, a stay is less appropriate.").

**C.  Netflix's infringement has damaged, and continues to damage, Broadcom.**

Netflix's contention that Broadcom and Netflix are not competitors is misleading. *See* Mot. at 9. Although Broadcom does not provide video-streaming services, Netflix's infringement has damaged and continues to damage Broadcom's System on Chip (SoC) business. Broadcom SoCs power set-top boxes that consumers use to watch programming provided by cable- and satellite-television service providers.[9] The rise of on-demand video streaming services like those offered by Netflix has led to a decrease in demand for traditional cable and satellite services.[10] *Variety* reported in February 2019, for example, that "[t]he five biggest U.S. pay-television providers saw their traditional subscriber rolls shrink 4.2% in 2018, as they collectively lost around 3.2 million

---

[9]  **Ex. B**: Declaration of Lewis Brewster (May 12, 2021) ¶ 6 (Brewster Decl.).

[10]  *See, e.g.,* Michelle Clancy, *OTT migration continues to grow steadily*, RapidTVNews (May 15, 2019), https://www.rapidtvnews.com/2019051556052/ott-migration-continues-to-steadily-grow.html#axzz6uOZj6Dmj ("[T]raditional multichannel subscriptions (including residential and commercial) are down 16.4 million in the last year, to 73.6 million. Traditional residential multichannel households (excluding commercial and overlap) are down 15.6 million to 70.5 million. In contrast, virtual multichannel households are up 6.4 million to 13.5 million. Online video-only households up 10.6 million to 25.2 million; and over-the-air (OTA) households are up 3.8 million to 21 million.").

customers for the year."[11] *Variety* attributed the loss in part to a migration to Netflix.[12]

The success of Netflix's streaming service is due, in large part, to its infringement of Broadcom's patents. Netflix uses Broadcom's technology without authorization to deliver content to subscribers effectively and reliably with minimal interruptions, resulting in lost business for cable and satellite providers as viewers are able to obtain higher-quality video from Netflix than Netflix would be able to provide without using Broadcom's patented technology. The decreased demand for cable and satellite also impacts Broadcom, which has suffered a significant loss in sales of SoCs for the set-top boxes used to access cable and satellite television.[13]

Plainly put, Netflix's infringement is damaging Broadcom's SoC business. Broadcom has therefore asked the Court to enjoin Netflix from infringing its patents.[14] Courts regularly find that under these facts—i.e., when a defendant's infringement directly harms the plaintiff's business—this factor weighs strongly against granting a stay. *See Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10–cv–02863–EJD, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011) ("Unlike patent infringement actions involving non-practicing entities, infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages."); *Allergan Inc. v. Cayman Chem. Co.*, No. SACV07–01316–JVS (RNBx), 2009 WL 8591844, at *4 (C.D. Cal. Apr. 9, 2009) ("[M]onetary damages may not be adequate in this case, such that [plaintiff] would be prejudiced by a stay that would deprive it of the opportunity to seek injunctive relief."). Any delay in resolving this matter will prejudice Broadcom.

Broadcom sued Netflix in a proper forum in March 2020, and Netflix first delayed by

---

[11]   *See* Todd Spangler, *Cord-Cutting Sped Up in 2018: Biggest Pay-TV Ops Shed 3.2 Million Subscribers Last Year*, Variety (Feb. 13, 2019), https://variety.com/2019/biz/news/cord-cutting-2018-accelerate-us-pay-tv-subscribers-1203138404/.

[12]   *Id.* ("Comcast, AT&T/DirecTV, Charter, Dish and Verizon all sustained year-over-year net pay-TV losses, as more consumers dropped pricey bundles in favor of internet streaming video services like Netflix and free, over-the-air broadcast TV.").

[13]   **Ex. B**: Brewster Decl. ¶ 7.

[14]   *See* First Amended Complaint at 141 (requesting that Netflix be enjoined from infringing the '079, '121, '245, '992, '138, '976, '722, and '183 Patents).

transferring the case to this District three months later. By seeking a stay, Netflix attempts to further delay the case. Given the early stage of the reexamination and the average time it takes to complete a reexamination (including appeals), it follows that a stay, if granted, would almost certainly last many years. These delays weigh heavily against granting the stay, especially since they "will only increase the likelihood of loss of evidence." *See Affinity Labs of Tex. v. Apple Inc.*, No. 09-04436 CW, 2010 WL 1753206, at *2 (N.D. Cal. Apr. 29, 2010).

**D. If a stay is granted, it should be limited to patents that are actually subject to *inter partes* review.**

When evaluating a request to stay an entire case involving multiple asserted patents, courts in this District analyze whether a complete or partial stay is more appropriate. *See, e.g., Hewlett-Packard Co. v. ServiceNow, Inc.*, No. 14-cv-00570-BLF, 2015 WL 5935368, at *3 (N.D. Cal. Oct. 13, 2015) (holding that various factors favored a stay relative to certain patents involved in post-grant review, but the factors weighed against a stay relative to other asserted patents not involved in post-grant review); *Parity Networks, LLC v. Juniper Networks, Inc.*, No. 18-cv-06452-JSW, 2019 WL 8810383, at *3 (N.D. Cal. July 3, 2019) ("[G]iven the large number of Patents-in-Suit, disputed claims, and disputed claim terms . . . this factor weighs in favor of a partial stay, which would permit the parties to focus their litigation efforts on the non-IPR Patents.").

In *Hewlett-Packard*, two of four asserted patents were involved in IPR proceedings and the defendant moved to stay the entire case. *Hewlett-Packard*, 2015 WL 5935368, at *2. The court examined the three motion-to-stay factors and found that each favored staying only the patents that were under review by the PTAB. *Id.* at *2–3. Similarly, in *Parity Networks*, the plaintiff asserted nine patents, six of which were either under review by the PTAB or had already been invalidated in a prior IPR. *Parity Networks*, 2019 WL 8810383, at *1. The other three patents were not challenged. *Id.* When the defendant sought to stay the entire case, the court followed *Hewlett-Packard* in limiting the stay to claims based on the patents under review by the PTAB and allowing claims based on the remaining patents to proceed. *Id.* at *3–4.

Here, Netflix moves to stay the entire case, despite the fact that at least the five Non-IPR

- 7 -

Memorandum ISO Opposition to Motion to Stay

Case No. 3:20-cv-04677-JD

Patents remain, and will continue to remain, fully intact. Netflix fails to provide any reasonable justification to stay the case with respect to patents that are not subject to any IPRs, nor has it identified any benefit to the parties or the Court that would result from doing so. In fact, there is no reason the case should be stayed as to the Non-IPR Patents—or any other patents as to which the PTAB may deny Netflix's IPR petitions. On the contrary, any stay should be limited to just the patents over which the PTAB grants review. Such a partial stay would "conserve the resources of the Court and the parties pending final decisions on the IPRs but at the same time . . . permit [Broadcom] to continue with the immediate litigation of the [Non-IPR Patents] and ultimately to litigate all of the asserted claims in this action." *See Hewlett-Packard*, 2015 WL 5935368, at *3.

Therefore, if the Court finds that the case should be stayed, the stay should be limited to claims based on patents over which the PTAB has granted Netflix's petitions. The case should proceed with respect to claims based on the Non-IPR Patents and any other patents as to which the PTAB may deny Netflix's petitions.

## CONCLUSION

For the reasons set forth above, Broadcom respectfully requests that the Court deny Netflix's motion to stay in its entirety. In the alternative, Broadcom requests that if the Court grants a stay, the Court: (i) limit the stay to patents over which the PTAB has granted Netflix's petitions; and (ii) allow Broadcom's claims under any patents that are not subject to *inter partes* review, including the '079, '245, '121, '387, and '283 Patents, as well as any other patents as to which the PTAB may deny Netflix's petitions, to proceed.

| | |
|---|---|
| Dated: May 13, 2021 | THOMPSON & KNIGHT LLP<br><br>By: *Richard L. Wynne, Jr.*<br>Richard L. Wynne, Jr.<br>Attorney for Plaintiffs<br>BROADCOM CORPORATION,<br>AVAGO TECHNOLOGIES<br>INTERNATIONAL SALES PTE.<br>LIMITED |