1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7   BROADCOM CORPORATION, et al.,          Case No. 3:20-cv-04677-JD

8              Plaintiffs,
                                           **ORDER RE MOTION TO DISMISS**
9        v.
                                           Re: Dkt. No. 87
10  NETFLIX INC,

11             Defendant.

12

13       This suit was brought by the plaintiff patentees over technologies related to video

14  streaming services.  Plaintiffs Broadcom Corporation and Avago Technologies International Sales

15  PTE Limited (Broadcom) sued defendant Netflix Inc. (Netflix) for infringement of twelve patents:

16  U.S. Patent Nos. 7,266,079 (the '079 Patent); 8,259,121 (the '121 Patent); 8,959,245 (the '245

17  Patent); 8,270,992 (the '992 Patent); 6,341,375 (the '375 Patent); 8,572,138 (the '138 Patent);

18  6,744,387 (the '387 Patent); 6,982,663 (the '663 Patent); 9,332,283 (the '283 Patent), 8,548,976

19  (the '976 Patent); 7,457,722 (the '722 Patent); and 8,365,183 (the '183 Patent).  Broadcom alleges

20  that Netflix's internet video streaming services and supporting technology infringe the patents.

21  First Amended Complaint (FAC), Dkt. No. 52 at ¶ 2-3.

22       Netflix asks to dismiss four claims for relief relating to the '079 patent, the '245 patent, the

23  '992 patent, and the '375 patent, for patent ineligibility under 35 U.S.C. § 101.  Dkt. No. 87.  In

24  Netflix's view, the asserted claims cannot be patented because they are directed to abstract ideas,

25  and lack an inventive concept that might push them into the realm of patentability.

26       In light of "the sources properly considered on a motion to dismiss, such as the complaint,

27  the patent, and materials subject to judicial notice," *Aatrix Software, Inc. v. Green Shades*

28  *Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018), the first, third, and fourth claims for relief

United States District Court
Northern District of California

which relate to the '079, '245, and '992 patents, respectively, are dismissed under Section 101 and *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014), with leave to amend. Dismissal of the fifth claim for relief, which relates to the '375 patent, is denied.

## BACKGROUND

### I.      THE '079 PATENT

The '079 patent was issued on September 4, 2007 and assigned to Avago, which currently holds all substantial rights, title, and interest in the '079 patent.  Dkt. No. 52 at ¶¶ 26-28.  The patent is directed to balancing data flows through heterogeneous speed networks.  Dkt. No. 52 at ¶ 30; Dkt. No. 1-1 at 1:47-49.  The inventors described a need to balance transmission of traffic in heterogeneous link-speed environments compared to prior art systems that were only able to balance data traffic in homogeneous link-speed environments.  Dkt. No. 52 at ¶ 33; Dkt. No. 1-1 at 1:23-43.  The patent claims a method of balancing transmission unit traffic over the network links by grouping traffic flows, measuring traffic, and regrouping traffic flows to balance their transmission.  *Id.* at 12:50-62.

The parties treat Claim 1 as the representative independent claim and as the sole asserted claim of the '079 patent in the FAC.  Dkt. No. 52 at ¶ 59; Dkt. No. 87 at 5; Dkt. No. 90 at 9; Dkt. No. 91 at 2.  The Court will do the same.  *See Elec. Power Grp. v. Alstom S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016).  Claim 1 recites:

> 1.  A method for balancing transmission unit traffic over network links, comprising:
>
>     a.  disposing transmission units into flows;
>
>     b.  grouping flows into first flow lists, each of the first flow lists corresponding to a selected network link;
>
>     c.  determining a traffic metric representative of a traffic load on the selected network link
>
>     d.  responsive to the traffic metric, regrouping flows into second flow lists corresponding to the selected network link, the regrouping balancing the transmission unit traffic among the network links; and
>
>     e.  transmitting the respective second flow list over the respective selected network link.

Dkt. No. 1-1 at 12:50-62.

## II.     THE '245 PATENT

The '245 patent was issued on February 17, 2015 and is assigned to Avago, which currently holds all substantial rights, title, and interest in the '245 patent.  Dkt. No. 52 at ¶¶ 95-96.  The patent is directed to delivering content to a user using multiple routes for delivering the content based on the user's profile.  Dkt. No. 52 at ¶ 99; Dkt. No. 1-3 at 2:13-45.  The inventors describe a need to improve content delivery in this way because prior art systems that used a single architecture to deliver all traffic frequently resulted in dropped services and content.  Dkt. No. 52 at ¶ 100; Dkt. No. 1-3 at 1:19-40.  To that end, the patent claims an invention that uses a network management server to determine and use multiple routes for delivering content.  Dkt. No. 1-3 at 2:13-45, 11:64-12:5.  The patent explains that the system of using multiple routes to deliver content increases reliability by taking advantage of combining those multiple routes.  *Id*. at 2:41-45.

The parties focus primarily on Claim 1 as the only asserted independent claim, but also address Claims 3 and 6.  Dkt No. 87 at 10-11, 13; Dkt. No. 90 at 10, 14; Dkt. No. 91 at 6, 8-9.  Claims 1, 3, and 6 recite:

> 1.     A method for communication, the method comprising:
>
> receiving from a user device, by a network management server via a communication network, a request for a service
>
> determining multiple routes for delivering content associated with said requested service based on a provisioning profile for said user device; and
>
> delivering said content associated with said requested service via said determined multiple routes.
>
> 3.     The method according to claim 1, wherein said provisioning profile comprises preferred service types, desired QoS for one or more services, client account information, and/or client credit verification information.
>
> 6.     The method according to claim 1, comprising allocating via said network management server, one or more of said determined multiple routes based on priority.

Dkt. No. 1-3 at 11:64-12:5, 12:8-11, 12:21-23.  No other claims are asserted in the FAC.

United States District Court
Northern District of California

### III.     THE '992 PATENT

The '992 patent was issued on September 18, 2012 and is assigned to Avago, which currently holds all substantial rights, title, and interest in the '992 patent.  Dkt. No. 52 at ¶¶ 131-132.  The patent is directed to a method of delivering higher quality content through the allocation and utilization of resources from other systems in a network.  Dkt. No. 52 at ¶ 135; Dkt. No. 1-4 at 1:58-2:40.  The '992 patent addresses delivery of content over dynamic networks where systems may have different capabilities for providing content to the user.  Dkt. No. 52 at ¶ 136; Dkt. No. 1-4 at 1:35-49.  The patent provides a method that allows networks to communicate and allocate resources across systems.  Dkt. No. 1-4 at 1:58-67.

The parties again focus primarily on Claim 1 as the asserted independent claim, and also touch upon Claims 2, 3, and 5.  Dkt. No. 87 at 13; Dkt. No. 90 at 14-15; Dkt. No. 91 at 10-11.  The claims recite:

> 1.     In a portable system, a method for providing a digital media service to a user, the method comprising:
>
> delivering digital media content having a current quality level to a user;
>
> determining that a network connection with a second system is available and is characterized by a communication bandwidth that is high enough to provide the digital media content to the user at a quality level higher than the current quality level;
>
> using the network connection to obtain the digital media content at the higher quality level from the second system; and
>
> delivering the digital media content at the higher quality level to the user instead of the digital media content at the current quality level.
>
> 2.     The method of claim 1, where the digital media content is video media.
>
> 3.     The method of claim 1, where the digital media content is audio media.
>
> 5.     The method of claim 1, where the portable system automatically performs, without user interaction, said determining, said using, and said delivering the digital media content at the higher quality level to the user.

Dkt. No. 1-4 at 26:29-47, 26:51-54.  No other claims are asserted in the FAC.

The patent does not identify any specific way that its method is carried out, allowing for various methods to be used to achieve the results of the method.  The patent states that a variety of methods can be used to detect the availability of other systems.  *See id*. at 3:48-54.  The patent expressly declines to limit the information that might be used to determine whether resources of a second system will provide higher quality content.  *See id*. at 7:23-29.  The patent also indicates that resource utilization can be performed using various processing activities from either system. *See id*. at 8:23-25.

## IV.    THE '375 PATENT

The '375 patent was issued on January 22, 2002 and is currently assigned to Broadcom, which holds all substantial rights, title, and interest in the '375 patent.  Dkt. No. 52 at ¶¶ 163-64. The patent is directed to a video-on-demand system that separates the functions of decoding and processing the data streams using a drive server, control server, and decoder devices.  Dkt. No. 52 at ¶ 165; Dkt. No. 1-5 at 1:55-2:8.  The inventors described previous systems as requiring a single device to both process and decode the data, requiring separate devices for each user of the video-on-demand system located at the user's location.  Dkt. No. 1-5 at 1:10-53.  The patent addresses this problem and allows for delivery of content to multiple users with the use of less hardware at a centralized location.  Dkt. No. 52 at ¶¶ 169-70; Dkt. No. 2:1-8.

The parties briefing focuses on independent Claim 15, which is the sole asserted claim of the '375 patent.  Dkt. No. 52 at ¶ 184; Dkt. No. 87 at 17-18; Dkt. No. 90 at 17-18; Dkt. No. 91 at 12-13.  Claim 15 recites:

> 15.    A method for distributing video comprising the steps of:
>
> (A)    presenting a plurality of compressed data streams with a drive server to a control server in response to one or more first control signals;
>
> (B)    distributing said one or more compressed data streams received from said drive server with said control server to one or more decoder devices in response to one or more request signals;
>
> (C)    decoding at least one of said one or more compressed data streams with said one or more decoders in response to receiving said one or more compressed data streams from said control server; and

United States District Court
Northern District of California

5

(D)     presenting at least on signal selected from a decoded video signal and a decoded audio signal in response to decoding said at least one of said one or more compressed data streams, wherein at least one of said one or more decoders is disposed in a separate room from said control server and said driver server, wherein a first portion of a selected one of said compressed data streams is presented to one of said decoder devices and a second portion of said selected compressed data stream is presented to another of said decoder devices.

Dkt. No. 1-5 at 6:66-8:2.

## DISCUSSION

## I.     LEGAL STANDARDS

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." To meet that rule and survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This does not impose a probability requirement at the pleading stage. It simply calls for enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility analysis is "context-specific" and not only invites, but "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion. In many cases, too, evaluation of a patent claim's subject matter eligibility under § 101 can proceed even before a formal claim construction." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016) (citations omitted); *see also Aatrix*, 882 F.3d at 1125. But as the circuit has recently emphasized, the question of eligibility may be determined at the pleadings stage "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix*, 882 F.3d at 1125 (citing *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed Cir. 2016)); *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1320 (Fed. Cir. 2019). This can be particularly true for the element of an inventive concept, which may raise a question of fact that can be resolved in a motion to dismiss only if the answer may be found in the complaint, the patent, and matters subject to judicial notice. *Aatrix*, 882 F.3d at 1128.

United States District Court
Northern District of California

To be sure, a patentee cannot avoid dismissal for ineligible claims purely on the basis of conclusory or generalized statements, and fanciful or exaggerated allegations that later prove to be unsupported may lead to fee shifting or other sanctions. *See Cellspin*, 927 F.3d at 1317 ("While we do not read *Aatrix* to say that any allegation about inventiveness, wholly divorced from the claims or the specification, defeats a motion to dismiss, plausible and specific factual allegations that aspects of the claims are inventive are sufficient."); *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1373 (Fed. Cir. 2018) (Moore, J., concurring in denial of rehearing en banc) ("[I]f the allegations in the complaint about the invention as claimed ultimately lack evidentiary support or if the case is exceptional, district courts can award attorneys' fees to the accused infringer under either Rule 11 or [35 U.S.C.] § 285 to compensate the accused infringer for any additional litigation costs it incurs."). But the inquiry in a motion to dismiss is typically confined to the contents of the complaint and the plain words of the patent that is incorporated by reference. To the extent claim construction issues might arise, the Court will adopt the patentee's proposed constructions. *Aatrix*, 882 F.3d at 1125; *IPLearn-Focus, LLC v. Microsoft Corp.*, 2015 WL 4192092, at *3 (N.D. Cal. July 10, 2015), *aff'd*, 667 F. App'x 773 (Fed. Cir. July 11, 2016).

Broadcom does not object to resolving the Section 101 question in the context of Netflix's motion and has not identified any factual disputes that might make resolution on the pleadings inappropriate. Neither side has called for claim construction as part of the eligibility inquiry, and no construction disagreements were identified in the briefs or arguments. Consequently, the Section 101 inquiry may properly be made at this stage of the case.

For the merits of the Section 101 question, the scope of patentable subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The "laws of nature, physical phenomena, and abstract ideas" are "specific exceptions to § 101's broad patent-eligibility principles." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010) (citation omitted). These exclusions are intended to guard against undue preemption of innovation and invention. *Alice*, 573 U.S. at 216 (citing U.S. Const., Art. I, § 8, cl. 8). The Court must "distinguish between patents that claim the 'buildin[g] block[s]' of human ingenuity and those that integrate the building blocks into something more," because

7

1    overbroad patent protection "would risk disproportionately tying up the use of the underlying

2    ideas." *Id*. at 217 (alterations in original) (internal quotation marks and citation omitted).

3         In *Alice*, the Supreme Court set out a two-part test for Section 101.  First, the Court

4    determines "whether the claims at issue are directed to a patent-ineligible concept" such as an

5    abstract idea, law of nature or natural phenomenon.  *Id*. at 218.  It is often "sufficient to compare

6    claims at issue to those claims already found to be directed to an abstract idea in previous cases"

7    for purposes of the step one analysis.  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed.

8    Cir. 2016); *see also Alice*, 573 U.S. at 221 ("In any event, we need not labor to delimit the precise

9    contours of the 'abstract ideas' category in this case.  It is enough to recognize that there is no

10   meaningful distinction between the concept of risk hedging in *Bilski* and the concept of

11   intermediated settlement at issue here.").  In addition, the Court may take into account undisputed

12   facts about well-known practices that have stood the test of time.  *See Yu v. Apple, Inc.*, 1 F.4th

13   1040, 1045-46 (Fed. Cir. 2021).

14        The "purely functional nature of the claim confirms [whether the patent] is directed to an

15   abstract idea, not to a concrete embodiment of that idea."  *Affinity Labs of Tex., LLC v.*

16   *Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016); *see also SAP Am., Inc. v. InvestPic,*

17   *LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (describing "abstract" as turning on "the specificity

18   required to transform a claim from one claiming only a result to one claiming a way of achieving

19   it").  Oversimplifying the claims should be avoided because "[a]t some level, 'all inventions . . .

20   embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'"

21   *Alice*, 573 U.S. at 217 (second alteration in original) (citation omitted).  For the digital technology

22   at stake here, the relevant inquiry is "whether the claims are directed to an improvement to

23   computer functionality versus being directed to an abstract idea."  *Enfish*, 822 F.3d at 1335; *see*

24   *also BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1287 (Fed. Cir. 2018) ("For an

25   application of an abstract idea to satisfy step one, the claim's focus must be on something other

26   than the abstract idea itself.").

27        If a patent is directed to a patent-ineligible concept, the second step in *Alice* is to look for

28   an "'inventive concept' -- i.e., an element or combination of elements that is sufficient to ensure

United States District Court
Northern District of California

8

that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217-18 (alteration in original) (internal quotation marks and citation omitted).  This step asks, "[w]hat else is there in the claims before us?"  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78 (2012).  The answer must include something "significantly more" than the abstract idea itself.  *BSG Tech*, 899 F.3d at 1290.  "It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea.  Rather, the components must involve more than performance of 'well-understood, routine, conventional activit[ies] previously known to the industry.'"  *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (alteration in original) (quoting *Alice*, 573 U.S. at 225).  In addition, merely reducing an abstract concept to a particular technical platform is not enough to provide the inventive element needed to support a patent.  *Elec. Power Grp.*, 830 F.3d at 1354; *TriDim Innovations LLC v. Amazon.com, Inc.*, 207 F. Supp. 3d 1073, 1080 (N.D. Cal. 2016).  "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."  *BSG Tech*, 899 F.3d at 1290-91.

## II.     THE '079 PATENT

### A.     Claim 1 is Directed to an Abstract Idea

Claim 1 recites, in relevant part, a "method for balancing transmission unit traffic over network links, comprising:  a. disposing transmission units into flows; b. grouping flows into first flow lists . . . corresponding to a selected network link; c. determining a traffic metric representative of a traffic load on the selected network link; responsive to the traffic metric, regrouping flows into second flow lists corresponding to the selected network link, the regrouping balancing the transmission unit traffic among the network links; and e. transmitting the respective second flow list over the respective selected network link."  Dkt. No. 1-1 at 12:50-62.  The '079 patent teaches that transmission units are first classified into flows, with both transmission units and flows being types of information.  *Id.* at 7:23-24, 4:45-50.  Flows are then ordered into lists for network links, and the traffic is measured on each link.  Next, the traffic across links is balanced by regrouping the flows and lists across network links.  *Id.* at 7:35-47.

The language of Claim 1, along with the specification, show that it is directed to the abstract idea of measuring data traffic and rebalancing traffic flow.  This brings to mind the image of a traffic cop, which Netflix invokes.  Dkt. No. 87 at 7.  Just as the officer redirects traffic from one road to another based on the observed traffic flow, Claim 1 measures data traffic flow and then redirects data traffic across multiple network links.  Processes are directed to an abstract idea where they are "the sort of process that 'can be performed in the human mind, or by a human using a pen and paper.'"  *Ericsson Inc. v. TLC Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020) (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011)).  That fits to a T the claimed concept of rebalancing traffic based on traffic flow.

The purely functional language of Claim 1 further confirms that the claim is directed to an abstract idea.  In *Two-Way Media Ltd. v. Comcast Cable Communications, LLC*, the Federal Circuit concluded that a claim using only result-based functional language was directed to an abstract idea.  874 F.3d 1329, 1337 (Fed. Cir. 2017).  So too, here.  Claim 1 uses functional language like "disposing," "grouping," determining," "regrouping," "balancing" and "transmitting" without reciting how those results are accomplished.

Broadcom relies on *Enfish* to suggest that Claim 1 is a patentable improvement of computer technology.  *See Enfish*, 822 F.3d 1327.  But Claim 1 is not similar to the invention in *Enfish*.  The claim there recited a data storage and retrieval system for a computer memory which utilized a self-referential table.  *Id*. at 1336.  This self-referential table functioned differently from conventional databases, which according to the specification achieved "increased flexibility, faster search times, and smaller memory requirements."  *Id*. at 1337.  The Federal Circuit determined that the invention was not directed to an abstract idea because it provided improvements to computer systems.  *Id*. at 1339.

That is not the situation here.  Broadcom cites the specification of the '079 patent to the effect that the invention enhances an "efficient utilization of network resources, particularly with regard to bandwidth."  1:23-25.  But nothing in the '079 patent suggests that it functions differently from other conventional systems, or provides a technological solution to a technological problem.  The primary benefit of the '079 patent is that it enables comparison of

traffic flow across heterogeneous network links, rather than over homogenous network links. While this may provide some efficiency benefits, there is no indication in the '079 patent that the improvements change the functioning of the system in any way.  It simply applies the idea of comparing and distributing traffic flows across homogeneous link speeds to heterogeneous link speeds.  Implementing an old practice in a new environment does not convert an otherwise abstract idea into something patentable.  *Simio LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1360 (Fed. Cir. 2020).

### B.     Claim 1 Lacks an Inventive Concept

Turning to step two, Claim 1 "does not include an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible invention."  *Yu*, 1 F.4th at 1045.  The claim recites a conventional ordering of functions: first determining traffic metrics, and then balancing traffic in response.  Dkt. No. 1-1 at 12:50-62.  These functions are performed on a "conventional, general purpose microprocessor."  *Id*. at 12:26-30.  Just like the ineligible claim in *Two-Way Media*, which featured commonplace steps executed in a conventional order on conventional technology, 874 F.3d at 1339, Claim 1 of the '079 patent recites only ordinary steps, performed in their conventional order on a conventional microprocessor.

Broadcom does not seriously dispute any of these conclusions.  Rather, it says that it alleged an inventive concept in the complaint by asserting that the claim is directed to "new, improved methods and apparatuses for balancing transmission unit traffic over networks links."  Dkt. No. 90 at 9 (quoting Dkt. No. 52 at ¶ 34).  That is nothing more than a conclusory allegation, unsupported by any facts that might make the inference of an inventive concept plausible.  The allegation that the "'079 patent claims specific, novel ways to solve [] technical problems by dynamically balancing data traffic," is also purely conclusory.  Such *ipse dixit* declarations of inventiveness, divorced from the language of the claim or the specification, fall well short of alleging an inventive concept.  *See Cellspin Soft*, 927 F.3d at 1318.

The same goes for Broadcom's suggestion that the inventive concept may be found in "dynamically balancing data traffic in a computer networking environment with heterogeneous link speeds."  Dkt. No. 52 at ¶ 34.  This simply restates the abstract idea of balancing data traffic,

United States District Court
Northern District of California

which "cannot supply the inventive concept that renders the invention 'significantly more' than that [abstract idea]." *Simio*, 983 F.3d at 1364 (quoting *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018)).

### III.   THE '245 PATENT

#### A.   Claim 1 is Directed to an Abstract Idea

Claim 1 of the '245 patent recites, in relevant part "a method for communication . . . comprising: [1] receiving from a user device . . . a request for a service; [2] determining multiple routes for delivering content associated with said requested service . . . ; and [3] delivering said content . . . via said determined multiple routes." Dkt. No. 1-3 at 11:64-12:5. The invention utilizes a "network management server" which receives the request for service from the user device. *Id.* at 2:15-18. The network management server then analyzes the provisioning profile of the user device to determine the routes for delivering the requested content and service. *Id.* at 2:19-22. The provisioning profile contains information, including client account information, credit card information, and preferred service types. *Id.* at 2:29-32. After determining the routes for delivering the content, the network management server delivers the content to the user device. *Id.* at 2:22-25.

As this language makes clear, Claim 1 is directed to the abstract idea of delivering requested services and content over multiple routes based on user information. This is akin to the time-honored practice of delivering packages from one address to another, using different carriers and routes depending on which is most efficient considering the recipient's address and preferences. Claim 1 of the '245 patent also recites "receiving" requests and "delivering" services and content without explaining how those are accomplished, other than through the use of multiple routes and pathways. This vagueness underscores the abstraction of the concept. *See Two-Way Media*, 874 F.3d at 1337. The '245 patent specification states that a network management server is used to determine routes and pathways for the content and accomplish these functions, but the specification does not indicate that the network management server is anything more than a generic computer component. *See id.*, 874 F.3d at 1338 ("At best, the constructions propose the use of generic computer components to carry out the recited abstract idea, but that is not

sufficient."); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (claims directed to an abstract idea where "physical components merely provide[d] a generic environment in which to carry out the abstract idea").

Broadcom again attempts to cast Claim 1 as an improvement to the functionality of a computer network, this time in light of *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303 (Fed. Cir. 2020). Dkt. No. 90 at 11 (also citing Dkt. No. 1-3). The claims in *Uniloc* were deemed patent eligible because they were directed to a primary station used in a communication system which "reduce[d] the delay present in conventional systems." *Uniloc*, 957 F.3d at 1308. They "changed the normal operation of the communication itself to 'overcome a problem specifically arising in the realm of computer networks.'" *Id.* (quoting *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257-58 (Fed. Cir. 2018)).

Not so, here. Broadcom says that the claims "change the manner of transmitting data, result[ing] in [higher quality of service] by a [NM server and provisioning profile] which are part of the claimed system." Dkt. No. 90 at 11 (quoting *Uniloc*, 957 F.3d at 1308). But Broadcom points to only one sentence in the specification to indicate that the invention of the '245 patent is an improvement to computer technology: "in order to increase reliability, different sets of packets associated with content for the service are routed over different routes among the determined multiple routes to take advantage of diversity combining different paths." *Id.* at 10 (citing Dkt. No. 1-3 at 2:41-45). This language alone is not enough to support the broad assertion that the invention of the '245 patent results in higher quality of service or an improvement to computer technology.

### B.    Claim 1 Lacks an Inventive Concept

Claim 1 of the '245 patent also lacks an inventive concept sufficient to find it patent eligible at *Alice* step 2. Claim 1 uses a conventional ordering of functional elements: first receiving a request, then determining how to deliver the request, and then delivering the request. *See* Dkt. No. 1-3 at 11:64-12:5. In addition to the functional elements, Claim 1 further recites the use of a user device, a network management, a communication network, and a provisioning

profile, but none of these provide an inventive concept to the claim.  *Id.*  All of these elements are conventional technology, which neither party disputes.

Broadcom says that the ordered combination of elements in the claim is inventive on the basis of the allegation in the FAC that Claim 1 is a "novel solution for transmitting digital media content over a communication network via multiple routes" and that this was "not well-understood, routine, or conventional at the time of the '245 patent."  Dkt. No. 52 at ¶ 107; *see also* Dkt. No. 90 at 12-13.  But these statements are again purely conclusory, and Broadcom did not allege any facts to make them plausible.  Broadcom also did not allege facts showing that the functional elements of the claims are themselves inventive.

As with the '079 patent, this reliance on the conventional and the conclusory will not do.  Broadcom makes a final play for inventiveness by contending that the generic computer components in the claims present an inventive concept because they improve computer networking functioning, Dkt. No. 90 at 13, but the FAC does not allege enough facts to make this a fair inference.

## C.      Dependent Claims 3 and 6

Dependent Claim 3 builds on Claim 1 by reciting that the provisioning profile comprises "preferred service types, desired QoS for one or more services, client account information and/or client credit verification information."  Dkt. No. 1-3 at 12:8-11.  Claim 3 specifies the information, which is also detailed in the specification, *see id.* at 2:29-32, that the network management server considers while determining the multiple routes that may be used to deliver content to the user.  Claim 3 does not add any elements that direct the claim to a non-abstract idea.  While the claim adds detail about the type of information the network management server considers while determine routes for delivery of content, it does not provide any further detail as to how the network management server determines those routes.  Claim 3 also fails to recite an inventive concept because it does no more than recite conventional steps implemented using conventional technology.  The addition of information contained in the provisioning profile does not recite any non-conventional steps, nor does it recite any additional non-conventional technology.

1    Dependent Claim 6 builds on Claim 1 by using the network management server to allocate

2    "one or more of said determined multiple routes based on priority."  This adds an element of

3    "allocating" to the already recited steps of "receiving," "determining," and "delivering" in Claim

4    1.  This additional step in Claim 6 fails to add any elements that direct the claim to a non-abstract

5    idea.  The language of the claim provides only additional functional language without any

6    explanation of how the allocation is accomplished by the network management server.  The

7    specification explains that the network management server can be configured to allocate the routes

8    based on route costs and readability levels, but does not explain how the server determines which

9    routes should be prioritized or how that prioritization occurs.  2:45-50.  The limitation is recited

10   using only functional language and without any explanation of how that function is achieved,

11   other than the fact that it is done by the network management server.  Consequently, Claim 6 is

12   also directed to an abstract idea.  *See In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611

13   (Fed. Cir. 2016).

14       Claim 6 also lacks a saving inventive concept.  As with Claims 1 and 3, Claim 6 recites

15   that the conventional steps, which include allocating routes based on priority, are implemented

16   using conventional technology, the network management server.

17   **IV.    THE '992 PATENT**

18       **A.    Claim 1 is Directed to an Abstract Idea**

19       In pertinent part, Claim recites a method for providing digital media service in a portable

20   system comprising "[1] delivering digital media content having a current quality level . . .; [2]

21   determining that a network connection with a second system is available . . . [with a] bandwidth

22   that is high enough to provide the digital media content . . . at a quality level higher than the

23   current quality level; [3] using the network connection to obtain the digital media content at the

24   higher quality level . . . ; and [4] delivering the digital media content at the higher quality level to

25   the user."  Dkt. No. 1-4 at 26:29-43.  The method is a way to determine whether a second system

26   with higher quality content is available, and if it is, to deliver that higher quality content to the

27   user.  *Id*. at Abstract.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Based on the plain language of the claim and specification, the claimed method of the '992

2   patent is directed to the abstract idea of switching between lower and higher quality content when

3   higher quality content is available.  Netflix equates this to the claims found wanting in *Electric*

4   *Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) and *Affinity Labs of Tex. LLC*

5   *v. DIRECTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016), and the observation is well-taken.  The patent

6   in *Electric Power Group* claimed a method of gathering and analyzing data and displaying results

7   of that analysis.  830 F.3d at 1353.  The claim broadly described information to be collected and

8   analyzed without explaining how the data could be analyzed.  *Id*. at 1353-54.  The same is true

9   here.  Claim 1 broadly claims steps for determining whether a second network is available with

10   higher quality content and then using that connection to obtain and deliver the higher quality

11   content without providing further detail about those functional steps.

12   Broadcom tries to sidestep *Electric Power Group* by cabining its conclusions to

13   preemption concerns, but that goes too far.  Potential preemption is always a factor in the Section

14   101 analysis, *see Alice*, 573 U.S. at 216-17, and *Electric Power Group* appropriately considered

15   preemption as an additional ground for concluding that the patent in issue was directed to an

16   ineligible abstract idea.  *Electric Power Group*, 838 F.3d at 1356.  The decision was not based on

17   preemption alone.  This also undercuts Broadcom's related suggestion that preemption is not an

18   issue here.  Claim 1 of the '992 patent broadly claims a method of switching between lower and

19   higher quality levels in a portable system without limiting the way in which it is determined such a

20   switch can occur, or the way in which the switch is accomplished.  The specification states that

21   any method can be used to detect other networks, Dkt. No. 1-4 at 3:48-54, or to determine whether

22   the second system provides higher quality content, *id*. at 7:23-29.  In effect, it poses a solution to a

23   general problem in the same manner that *Electric Power Group* rejected.  *Electric Power Group*,

24   830 F.3d at 1356.

25   The claim at issue in *Affinity Labs* is similar to Claim 1 of the '992 patent.  In *Affinity*

26   *Labs*, the claim was directed to providing "out-of-region access to regional broadcast content."

27   838 F.3d at 1258.  The Federal Circuit noted that the same idea could be applied in any technology

28   and implemented in any way.  *Id*.  Even though the claim included a limitation that narrowed the

16

1    application of the abstract idea to cellphones, the court found the claim patent ineligible because

2    the limitation merely "confine[d] the abstract idea to a particular technological environment." *Id*.

3    at 1258-59.  Claim 1 of the '992 patent similarly is directed to a broad idea of switching between

4    low and high quality content and includes a limitation that narrows the scope of the claim to

5    portable systems providing digital media services.  As in *Affinity Labs*, limiting the claim's scope

6    to a particular technological environment cannot convert an otherwise abstract idea into something

7    concrete.

8            **B.      Claim 1 Lacks an Inventive Concept**

9            Claim 1 of the '992 patent also fails to recite an inventive concept that saves it from

10   ineligibility.  As with the claims of the '079 and '245 patents, the Claim 1 recites functional

11   elements such as "delivering," "determining," and "using."  Broadcom does not allege that the

12   ordering of those functional elements is anything but conventional, and nothing in the

13   specification of the '992 patent suggests the elements are ordered in an unconventional way.

14   Claim 1 also recites conventional technology, like a "portable system" and "digital media," to

15   implement the abstract idea of switching between low and high quality content.  Once again,

16   because the claim recites only conventional, functional elements, ordered in a conventional way,

17   and implemented on conventional technology, it lacks an inventive concept.  *Two-Way Media*, 874

18   F.3d at 1339.

19           Broadcom says that Claim 1 recites an inventive concept of "evaluating bandwidth to

20   determine whether a second system on a network may be capable of delivering higher quality

21   content to a user than a first system."  Dkt. No. 90 at 16.  But Broadcom does not identify

22   allegations in the FAC that might demonstrate the inventiveness of using bandwidth to determine

23   whether higher quality content can be delivered to the user.  The allegation that Claim 1 recites a

24   "novel solution of determining, accessing, and using the resources of another system on a dynamic

25   network environment in order to improve digital media content quality," Dkt. No. 52 at ¶ 143, is

26   again a purely conclusory statement insufficient to avert dismissal.

27           Broadcom also gestures to allegations in the complaint based on the specification to the

28   effect that quality control and communication modules are used to perform resource allocations

United States District Court
Northern District of California

and utilization.  Dkt. No. 90 at 16.  But at step 2 of the *Alice* analysis, it is insufficient to point to an inventive concept in the specification if that concept is not also present in the claims.  *See Two-Way Media*, 874 F.3d at 1338.  Although the specification of the '992 patent describes the communication and quality control modules that are used in resource allocation and utilization, Dkt. No. 1-4 at 2:8-32, Claim 1 does not.  The claim lacks any such concept, and is instead directed only to functional elements, performed in a conventional order on conventional technology.

### C.    Dependent Claims 2, 3, and 5

Claim 2 recites the additional limitation that the digital media content being delivered is video media and Claim 3 recites the additional limitation that the digital media content being delivered is audio media.  Dkt. No. 1-4 at 26:44-47.  These additional limitations simply apply the abstract idea of switching between low and high quality content to specific media.  Limiting claims to a particular field of use or particular technological environment is insufficient to establish that claims are not directed to an abstract idea.  *Simio*, 983 F.3d at 1361.  And limiting the claims to a particular technological environment is insufficient to establish an inventive concept.  *Elec. Power. Grp.*, 830 F.3d at 1354.  Applying the method of Claim 1 to the specific audio and video content is no more patent eligible than the method itself.

Claim 5 recites the additional limitation that the steps of the method in Claim 1 are performed automatically, without user interaction.  Dkt. No. 1-4 at 26:51-54.  In *Customedia Technologies, LLC v. Dish Network Corp.*, the Federal Circuit found a claim directed toward providing automatic delivery of data was no less abstract simply because it took advantage of computer technology to perform a task quickly.  951 F.3d 1359, 1365 (Fed. Cir. 2020).  Here, too, the fact that Claim 5 specifies that the method of Claim 1 can be done automatically does not make the method any less abstract, nor does it provide the method with an inventive concept.

## V.    THE 375 PATENT

The '375 patent warrants a different outcome than its companions.  Claim 15, the sole asserted claim of the '375 patent, is directed to a method for distributing video.  The method recites distributing compressed data streams from a central drive and control server to decoder

United States District Court
Northern District of California

United States District Court
Northern District of California

1   devices to decrypt the compressed data stream.  The result is decoded video and audio signals that

2   can be presented to the user.

3          The specification describes a well-defined technical problem, and provides a technical

4   solution to it.  *See Packet Intelligence LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1309 (Fed. Cir.

5   2020); *DDR Holdings, LLC v. Hotels.com, LP*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) (finding a

6   claim non-abstract where "the claimed solution [wa]s necessarily rooted in computer technology

7   in order to overcome a problem specifically arising in the realm of computer networks").  To

8   deliver video-on-demand services, data must be decoded and then processed to deliver the data to

9   the end user.  Prior art technology required that the decoding and processing be done by a single

10  device, usually a DVD player or personal computer.  Video-on-demand systems were required to

11  have a DVD player for each user in order to perform the decoding and processing.  The system

12  described by the '375 patent separates the decoding and processing functions.  The encrypted data

13  stream is routed through a remote decoding device before being processed and delivered to the

14  user.  The claims of the '375 patent are directed to this method of separating these two functions

15  and the resulting system that avoids the need for individual DVD players or computers for each

16  user.

17         Netflix says that Claim 15 is directed to an abstract idea because it uses result-based

18  functional language, similar to the claim in *Two-Way Media*.  Dkt. No. 87 at 18.  That case

19  determined that the claim required functional results without describing how those results were

20  achieved in a non-abstract way.  *Two-Way Media*, 874 F.3d at 1337.  The claims recited

21  "converting," "routing," "controlling," "monitoring," and "accumulating records," and little else.

22  *Id.*

23         Claim 15 is different.  To be sure, it uses functional, result-based language like

24  "presenting," distributing," and "decoding," but the language of the claim and the specification are

25  directed to more than just these results.  The specification and claim make clear that the invention

26  is directed to separating the decoding and processing functions, solving problems with traditional

27  systems that required those functions to be performed by a single device.

28

1      Netflix also says that the invention of the '375 patent achieves the same results as ordinary

2    video-on-demand systems and is therefore directed to the same abstract idea of decoding and

3    processing data.  Dkt. No. 87 at 19.  While the end result of the system described in the '375

4    patent is the same as a traditional video-on-demand system -- delivery of video content to a user

5    following data decryption and processing -- the method is not directed to just the idea of decoding

6    and processing data.  It is directed to the separation of these functions to improve the overall

7    system.  Netflix oversimplifies the invention of the '375 patent to the most basic functions

8    performed by the system and misses the fact that the improvement to the system as a whole

9    provides a non-abstract idea.  Because Claim 15 of the '375 patent is directed to a non-abstract

10    idea, it is patent eligible under § 101 and *Alice*.

11      It bears mention that the Court's conclusions are based on a reading of the FAC in the Rule

12    8 and Rule 12(b)(6) context.  If Netflix obtains facts in discovery that give rise to a good-faith

13    basis for revisiting the eligibility of the '375 patent, it may ask for leave to file a renewed

14    challenge.

15                                              **CONCLUSION**

16      Because the '079 patent, '245 patent, and '992 patent are directed to abstract ideas and lack

17    inventive concepts, the first, third, and fourth claims for relief are dismissed.  In light of the plain

18    language of the claims in the patents, the Court has some doubt that Broadcom can amend around

19    these shortfalls.  Even so, an opportunity to amend will be provided.  Broadcom is reminded that

20    "a patentee cannot avoid dismissal for patent ineligible claims purely on the basis of conclusory or

21    generalized statements, and fanciful or exaggerated allegations that later prove to be unsupported

22    may lead to fee shifting or other sanctions."  *Yu v. Apple Inc.*, 392 F. Supp. 3d 1096, 1102 (N.D.

23    Cal 2019) (citations omitted).  Broadcom may file an amended complaint consistent with this

24    order by October 8, 2021.  Failure to meet this deadline will result in dismissal with prejudice

25    under Rule 41(b).

26

27

28

United States District Court
Northern District of California

Because the '375 patent is not directed to an abstract idea, Netflix's motion to dismiss the fifth claim for relief is denied.

**IT IS SO ORDERED.**

Dated:  September 14, 2021

_____
JAMES DONATO
United States District Judge