UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROADCOM CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NETFLIX INC,<br><br>Defendant. | Case No. 3:20-cv-04677-JD<br><br>**ORDER RE JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 181 |

Plaintiffs Broadcom Corp. and Avago Technologies (Broadcom) sued defendant Netflix Inc. (Netflix) for infringement of twelve patents related to video streaming. Dkt. No. 172. Netflix seeks judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on Broadcom's twelfth claim for relief, which relates to U.S. Patent No. 8,365,183 (the '183 patent). Netflix says that the asserted claims of the '183 patent are directed to patent-ineligible subject matter. Dkt. No. 181. The twelfth claim for relief is dismissed with leave to amend.

## BACKGROUND

The '183 patent was issued on January 29, 2013, and is assigned to Avago, which currently holds all substantial rights, title, and interest in the '183 patent. Dkt. No. 172 at ¶¶ 357-58. The patent is directed to a "method for dynamic resource provisioning for job placement" that can be used to allocate jobs to computers in a system. Dkt. No. 172-12 at 1:27-31. The '183 patent relates to "distributed computing systems that share resources across multiple users." Dkt. No. 172 at ¶ 362. The patent is said to improve operational efficiency of distributed computer systems by selecting the best computer device in the system for the job. Dkt. No. 172-12 at 1:20-23.

For the eligibility dispute, the parties agree that Claim 1 is representative. Dkt. No. 181 at 4, Dkt. No. 185 at 5. Netflix also challenged the patent eligibility of dependent Claims 2, 4, 6, 8, 11, 14, and 15. Dkt. No. 181 at 8-9. Broadcom did not respond, and so has waived argument on

those claims.  *See Elec. Power Grp. v. Alstom S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).  Consequently, the Court will not review the dependent claims on their own.

Claim 1 recites:

> 1.  A method for dynamic resource provisioning for job placement, comprising,
>
> receiving a request to perform a job on an unspecified computer device;
>
> determining one or more job criteria for performing the job, the one or more job criteria defining one or more operational characteristics needed for a computer device to perform the job;
>
> determining one or more utilization criteria for performing the job;
>
> providing a list of available computer devices, the list comprising a plurality of computer devices currently provisioned to perform computer operations;
>
> from the list of available computer devices, determining a list of suitable computer devices for performing the job by comparing operational characteristics for each available computer device with the job criteria, the list of suitable computer devices comprising one or more computer devices having operational characteristics that satisfy the job criteria;
>
> using the utilization criteria to determine whether one or more underutilized computer devices exist on the list of suitable computer devices, the one or more underutilized computer devices having a suitable level of utilization for performing the job; and
>
> if the one or more underutilized computer devices exist, forwarding the job to one of the one or more underutilized computer devices.

Dkt. No. 172-12 at 15:43-16:3.

## DISCUSSION

### I.  LEGAL STANDARDS

Rule 12(c) provides that "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings."  Rule 12(c) and Rule 12(b)(6) motions are functionally identical, and so the standards for a Rule 12(b)(6) motion apply to a Rule 12(c) motion.  *Gregg v. Hawaii*, 870 F.3d 883, 887 (9th Cir. 2017).  The Court takes as true the plausible and nonconclusory factual allegations in the complaint, and draws all reasonable

2

inferences from those allegations in plaintiffs' favor. *See Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1068 (9th Cir. 2020). A Rule 12(c) motion may be granted when there is no issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Fleming v. Pickard,* 581 F.3d 922, 925 (9th Cir. 2009). Rule 12(b)(6) and Rule 12(c) motions generally are confined to the four corners of the complaint, and any materials it incorporates. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

"Challenges to patentability under Section 101 may be brought based solely on the pleadings, including on a Rule 12(c) motion for judgment on the pleadings." *Open Text S.A. v. Box, Inc.*, 78 F. Supp. 3d 1043, 1045 (N.D. Cal. 2015). "[E]valuation of a patent claim's subject matter eligibility under § 101 can proceed even before a formal claim construction." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016) (citations omitted); *see also Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). Even so, the question of eligibility may be determined at the pleadings stage "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix*, 882 F.3d at 1125 (citing *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed Cir. 2016)); *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1320 (Fed. Cir. 2019). So too for the element of an inventive concept, which may raise a question of fact that can be resolved in a motion to dismiss only if the answer may be found in the complaint, the patent, and matters subject to judicial notice. *Aatrix*, 882 F.3d at 1128.

To be sure, a patentee cannot avoid dismissal for ineligible claims purely on the basis of conclusory or generalized statements, and fanciful or exaggerated allegations that later prove to be unsupported may lead to fee shifting or other sanctions. *See Cellspin*, 927 F.3d at 1317 ("While we do not read *Aatrix* to say that any allegation about inventiveness, wholly divorced from the claims or the specification, defeats a motion to dismiss, plausible and specific factual allegations that aspects of the claims are inventive are sufficient."); *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1373 (Fed. Cir. 2018) (Moore, J., concurring in denial of rehearing en banc) ("[I]f the allegations in the complaint about the invention as claimed ultimately lack evidentiary support or if the case is exceptional, district courts can award attorneys' fees to the accused infringer under either Rule 11

3

or [35 U.S.C.] § 285 to compensate the accused infringer for any additional litigation costs it incurs."). The inquiry in a motion to dismiss is typically confined to the contents of the complaint and the plain words of the patent that is incorporated by reference. To the extent claim construction issues might arise, the Court will adopt the patentee's proposed constructions. *Aatrix*, 882 F.3d at 1125; *IPLearn-Focus, LLC v. Microsoft Corp.*, 2015 WL 4192092, at *3 (N.D. Cal. July 10, 2015), *aff'd*, 667 F. App'x 773 (Fed. Cir. July 11, 2016).

Broadcom does not object to answering the Section 101 question in the context of Netflix's motion, and has not identified any factual disputes that might make resolution on the pleadings inappropriate. Neither side has called for claim construction as part of the eligibility inquiry, and no construction disagreements were identified in the briefs or arguments. Consequently, the Section 101 inquiry may properly be made at this stage of the case.

The scope of patentable subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The "laws of nature, physical phenomena, and abstract ideas" are "specific exceptions to § 101's broad patent-eligibility principles." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010) (citation omitted). These exclusions are intended to guard against undue preemption of innovation and invention. *Alice*, 573 U.S. at 216 (citing U.S. Const., Art. I, § 8, cl. 8). The Court must "distinguish between patents that claim the 'buildin[g] block[s]' of human ingenuity and those that integrate the building blocks into something more," because overbroad patent protection "would risk disproportionately tying up the use of the underlying ideas." *Id*. at 217 (alterations in original) (cleaned up).

In *Alice*, the Supreme Court set out a two-part test for Section 101. First, the Court determines "whether the claims at issue are directed to a patent-ineligible concept" such as an abstract idea, law of nature or natural phenomenon. *Id*. at 218. It is often "sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases" for purposes of the step one analysis. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016); *see also Alice*, 573 U.S. at 221 ("In any event, we need not labor to delimit the precise contours of the 'abstract ideas' category in this case. It is enough to recognize that there is no

4

meaningful distinction between the concept of risk hedging in *Bilski* and the concept of intermediated settlement at issue here."). The Court may also take into account undisputed facts about well-known practices that have stood the test of time. *See Yu v. Apple, Inc.*, 1 F.4th 1040, 1045-46 (Fed. Cir. 2021).

The "purely functional nature of the claim confirms [whether the patent] is directed to an abstract idea, not to a concrete embodiment of that idea." *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016); *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (describing "abstract" as turning on "the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it"). Oversimplifying the claims should be avoided because "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Alice*, 573 U.S. at 217 (second alteration in original) (citation omitted). For the technology at stake here, the relevant inquiry is "whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea." *Enfish*, 822 F.3d at 1335; *see also BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1287 (Fed. Cir. 2018) ("For an application of an abstract idea to satisfy step one, the claim's focus must be on something other than the abstract idea itself.").

If a patent is directed to a patent-ineligible concept, the second step in *Alice* is to look for an "'inventive concept' -- i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217-18 (alteration in original) (internal quotation marks and citation omitted). This step asks, "[w]hat else is there in the claims before us?" *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78 (2012). The answer must include something "significantly more" than the abstract idea itself. *BSG Tech*, 899 F.3d at 1290. "It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea. Rather, the components must involve more than performance of 'well-understood, routine, conventional activit[ies] previously known to the industry.'" *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (alteration in original) (quoting

*Alice*, 573 U.S. at 225). In addition, merely reducing an abstract concept to a particular technical platform is not enough to provide the inventive element needed to support a patent. *Elec. Power Grp.*, 830 F.3d at 1354; *TriDim Innovations LLC v. Amazon.com, Inc.*, 207 F. Supp. 3d 1073, 1080 (N.D. Cal. 2016). "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG Tech*, 899 F.3d at 1290-91.

## II. CLAIM 1 IS DIRECTED TO AN ABSTRACT IDEA

Claim 1 recites, in relevant part, a method for job placement comprising: (1) "receiving a request to perform a job"; (2) "determining one or more job criteria for performing the job," which defines an operational characteristic needed to perform the job; (3) "determining one or more utilization criteria for performing the job"; (4) "providing a list of available computer devices"; (5) "determining a list of suitable computer devices" from the list of available devices "by comparing operational characteristics for each available computer device with the job criteria"; (6) "using the utilization criteria to determine whether one or more underutilized computer devices exist on the list of suitable computer devices"; and (7) if an underutilized computer device exists, "forwarding the job to one of the one or more underutilized computer devices." Dkt. No. 172-12 at 15:43-16:3. The '183 patent teaches a central processor that receives various jobs and then allocates those jobs to other servers in the system based on the capabilities and availabilities of those computers and what is needed for the jobs. *Id.* at 2:35-41. This is directed to improving operability and efficiency of the system. *Id.* at 1:20-23.

The plain language of Claim 1 and the specification make clear that the claim is drawn to the abstract idea of allocating tasks across a system of servers. Processes are directed to an abstract idea where they are "the sort of process that 'can be performed in the human mind, or by a human using a pen and paper.'" *Ericsson Inc. v. TLC Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020) (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011)). Netflix says that Claim 1 is no different from the commonplace occurrence of a manager assigning tasks in an office. Dkt. No. 181 at 5. Countless other analogs can be found in everyday life stretching back through time, from Roman magistrates allocating

work to citizens in the Forum to meet the needs of the city, to the host of a local restaurant directing customers to the bar, a table, or other location in the restaurant based on the customer's needs and the waiters' availability to address those needs. Such a "fundamental [and] long prevalent" practice is a quintessential abstract idea. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 219).

Broadcom's suggestion that Claim 1 is directed to a non-abstract computer functionality improvement is not well taken. Dkt. No. 185 at 5-6; *see also Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018) (finding improvements to efficiency "can be a non-abstract computer functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem."). Broadcom says that Claim 1 provides an efficiency improvement to distributed computing systems, Dkt. No. 185 at 6, but how Claim 1 solves a specific computer problem using a specific technique departing from earlier approaches is not at all clear. *See Ancora*, 908 F.3d at 1348. The '183 patent teaches that the method of Claim 1 might increase the reliability and efficiency of computer systems by balancing workloads of the computer devices within the system. Dkt. No. 172-12 at 2:53-57. That is not a specific improvement to computer functionality as Broadcom would have it, but rather an articulation of the idea that rules may be applied to decide which devices should be used for a particular device. *Id*. at 2:63-3:5.

This stands in stark contrast to inventions that truly solved technological problems. For example, the claim in *Ancora Technologies, Inc. v. HTC America, Inc.* taught a specific and unique Basic Input Output System used in a new way to reduce hacking risks. *Ancora*, 908 F.3d at 1349. Similarly, the claim in *Data Engine Technologies LLC v. Google LLC* taught a specific, intuitive, user-friendly interface to navigate between spreadsheets which increased functionality and ease of processing data across spreadsheets. *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 (Fed. Cir. 2018). And the claim in *Enfish, LLC v. Microsoft Corp.*, taught a self-referential table that functioned differently from traditional databases to increase search times and decrease memory requirements. *Enfish*, 822 F.3d at 1337. The '183 patent, in contrast, does not teach any specific improvement to computer functionality, but instead teaches using general,

7

1    abstract resource allocation principles to pick the best computer device to perform a job.  Dkt. No.
2    172-12 at 15:43-16:3.

### III.    CLAIM 1 LACKS AN INVENTIVE CONCEPT

Turning to step two, Claim 1 "does not include an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible invention." *Yu*, 1 F.4th at 1045.  The claim recites a conventional ordering of functions:  receiving a job request, determining job criteria and utilization criteria for performing the job, selecting suitable computer devices that meet those job and utilization criteria, and forwarding the job to the selected computer device.  Dkt. No. 172-12 at 15:43-16:3.  Nothing in the '183 patent indicates that the computer system that performs these steps is anything but an ordinary, generic computer system.  Claim 1 simply recites ordinary steps, performed in a conventional order, on conventional computer technology.  *See, e.g.*, *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017).

As in *Intellectual Ventures I LLC v. Capital One Financial Corp.*, Claim 1 "merely describe the functions of the abstract idea itself, without particularity," which is insufficient under *Alice* step two.  *Intellectual Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017).  Claim 1 relies on generic computer systems and devices that perform generic computer functions, such as receiving requests, determining job criteria, determining utilization criteria, and then forwarding the job to the appropriate device.  Dkt. No. 172-12 at 15:43-16:3.  These are simply the functions needed to perform the abstract idea, and nothing more.

Broadcom says that an inventive concept can be found in the way that the method uses utilization values, utilization metrics, and user-defined parameters in order to determine which computer device should perform a job.  Dkt. No. 185 at 8.  Broadcom also points to the specification to explain why Claim 1 is inventive, which states that not every available computer device in a system is appropriate or suitable to perform a required job.  *Id.* at 7; Dkt. No. 172-12 at 2:36-41.  But Broadcom's attempts to show an inventive concept in Claim 1 do no more than restate the abstract idea that the claim is directed to.

Broadcom's attempt to analogize Claim 1 to the claims in *Amdocs (Israel) Ltd. v. Opnet Telecom, Inc.* and *Bascom Global Internet Services., Inc. v. AT&T Mobility LLC* is misdirected.

8

In *Amdocs*, the specification of the patent in issue explained how conventional systems worked and how the claimed invention functioned differently. *Amdocs (Israel) Ltd. v. Opnet Telecom, Inc.*, 841 F.3d 1288, 1300 (Fed. Cir. 2016). Likewise, in *Bascom*, the specification explained that installing a filtering tool at a specific location allowed for greater customization for users that was not possible with previous systems. *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Broadcom points to no similar disclosure in the '183 patent. Although the '183 patent states that its invention results in a technical advantage of improved operational efficiency, Dkt. No. 172-12 at 1:20-23, 1:53-58, there is no disclosure that explains how the claimed method causes computer systems to function in any fundamentally different way from traditional computer systems. Consequently, the claimed invention lacks an inventive concept to transform the abstract idea of Claim 1 into patent-eligible subject matter.

## CONCLUSION

Because the '183 patent is directed to an abstract idea and lacks an inventive concept, Broadcom's twelfth claim of the Second Amended Complaint is dismissed. While Rule 12(c) does not expressly mention the possibility of amending a complaint, the option is available. *See Gregg v. Hawaii*, 870 F.3d 883, 889 (9th Cir. 2017). In light of the plain language of the claims in the patent, the Court has some doubt that Broadcom can amend around this problem. Even so, Broadcom may file by May 4, 2022, an amended complaint. Failure to meet this deadline will result in dismissal with prejudice under Rule 41(b).

**IT IS SO ORDERED.**

Dated: April 13, 2022

JAMES DONATO
United States District Judge