```
                                          Pages 1 - 12

                    UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA

      Before The Honorable James Donato, Judge

      BROADCOM CORPORATION, a        )
      California corporation, and    )
      AVAGO TECHNOLOGIES              )
      INTERNATIONAL SALES PTE        )
      LIMITED, a Singapore           )
      corporation,                   )
                                     )   Case No. 3:20-cv-04677 JD
              Plaintiffs,            )
                                     )
        VS.                          )
                                     )
      NETFLIX, INC.,                 )
                                     )
              Defendant.             )
      _____)

                                         San Francisco, California
                                         Thursday, February 1, 2024

                        TRANSCRIPT OF PROCEEDINGS

      APPEARANCES:

      For Plaintiffs:
                            HOLLAND & KNIGHT LLP
                            One Arts Plaza
                            1722 Routh Street, Suite 1500
                            Dallas, TX 75201
                      BY:   RICHARD L. WYNNE, JR.

      For Defendant:
                            KEKER, VAN NEST & PETERS LLP
                            633 Battery Street
                            San Francisco, CA 94111-1809
                      BY:   SHARIF E. JACOB




      REPORTED BY:  Kendra A. Steppler, RPR, CRR
                    Official Reporter
```

```
 1   Thursday - February 1, 2024                          10:43 a.m.
 2                        P R O C E E D I N G S
 3                              ---o0o---
 4            THE CLERK:  Calling Civil 20-4677, Broadcom
 5   Corporation v. Netflix.
 6            THE COURT:  All right.  Thank you.
 7            MR. WYNNE:  Good morning, Your Honor.  Richard Wynne
 8   for the plaintiffs.
 9            MR. JACOB:  Morning, Your Honor.  Sharif Jacob, Keker,
10   Van Nest & Peters, on behalf of defendant Netflix.
11            THE COURT:  Okay.  Well, the last time I visited with
12   you, it was to tell you that burying the Court under 17 motions
13   was a bad strategy.  I asked you to adjust that.  And now I
14   have five -- which is still quite a few, but I suppose more
15   manageable -- five motions.  Those motions are one motion for
16   partial summary judgment on the defendant's affirmative
17   defenses, one motion for partial summary judgment on patent
18   misuse, one motion to exclude Dr. Clifford Neuman's opinions,
19   one motion for summary judgment by Netflix, and a motion to
20   exclude a slew of Broadcom technical damages and survey
21   evidence.
22        I cannot have you in for trial this month, for three
23   reasons:  One, there are cases I have set that have priority.
24   Two, this is still a mountain of work.  It may not be an
25   Everest, but it's certainly, you know, a Mount Shasta that I
```

have to get through.  On top of all the other orders I've done in this case, I got five more now I'm going to have to do.  And I cannot do that any time soon.  And the third reason is I'm not satisfied you all have put your heart and soul into trying to resolve this.  This case is begging, in my long experience, for a business solution.

Now, I know you've been working with a magistrate judge.  And I'm not criticizing that procedure at all.  I'm sure that you all have done whatever you can do in that constraint.  But I'm not satisfied you've done what you need to do to really get this thing settled.

So I'm going to tell you what we're going to do.  Here is option one -- I want you to discuss this after you leave here.  If we can forego the summary judgment motions, and I can just do the two Rule 702 motions for expert opinions, I have a good probability -- I'm not guaranteeing it -- a good probability of being able to try you in late June, early July.  Okay?

If I can't -- if you cannot see your way to doing that, I can't have you back in until Q4 of the year.  All right?  And that's probably after Thanksgiving and between Thanksgiving and Christmas.  Very much what I did with my Google MDL case.  It worked out fine.  I mean, it worked out fine.  But I couldn't do you before then.  So you two discuss what you want to do.  All right?

Now, maybe that's feasible, maybe it's not.  But that's

1  the best I can offer you for -- if you want to go to trial in
2  late June -- mid-June to early July.
3       Now, for settlement, I want you to do -- I want you to
4  turn a new page.  I think you need a fresh set of eyes.  I
5  think you need someone who is going to be able to approach this
6  with some different energy and different perspective.  I used,
7  in the Facebook biometric information privacy -- BIPA -- case a
8  former United States ambassador and long-time legal
9  practitioner -- Jeff Bleich -- as a mediator.  He got that case
10 settled.  He got it settled in hotly contested circumstances
11 with a record-breaking $650 million for the -- for the class.
12      Don't be alarmed by that.  That's just the way it worked
13 out in that case.  But I will take credit for 100 million of
14 that, because I had them kick it up after they came in with 550
15 and I took it to 650.  But he did all the hard work and got it
16 to happen.  So I'm going to order you to have at least one day
17 with him.  All right?
18      And in order to make this work -- Mr. Wynne, who is
19 your -- who is Broadcom's CEO?
20           **MR. WYNNE:**  Hock Tan.
21           **THE COURT:**  Okay.  Can you spell that for me?
22           **MR. WYNNE:**  H-O-C-K is his first name; last name Tan,
23 T-A-N.
24           **THE COURT:**  Tam [sic] -- okay.
25      And who's currently Netflix CEO, Mr. Jacob?

1        **MR. JACOB:**  Netflix currently has two CEOs.  I would
2   recommend --
3        **THE COURT:**  Two?
4        **MR. JACOB:**  Two co-CEOs.  I would recommend --
5        **THE COURT:**  Who's the boss?  Is there one?  It's
6   really a dual --
7        **MR. JACOB:**  It is a dual arrangement because of the
8   relationship between technology and content.
9        **THE COURT:**  Oh.
10       **MR. JACOB:**  So I would recommend --
11       **THE COURT:**  Who's most on this type of thing for
12  patent disputes?  Who is the --
13       **MR. JACOB:**  I would just recommend Greg Peters,
14  because he's been involved in patent litigation matters before,
15  and I think he understands the relationship between business
16  and patent litigation.  That's why I would recommend him.
17       **THE COURT:**  Okay.  So Mr. Peters and Mr. Tam are going
18  to come with you, in person, to the mediation.
19      Now, I believe there's a possibility you may be doing it
20  here in the courtroom.  I'm not going to be involved.  But for
21  the convenience of the mediator and for you, I think we're
22  going to do it here.  Now, you all may work out something
23  different, but it may be in this space.  All right?
24      I think this is essential.  I think you can do this.  All
25  right?  Now, if you can't, you can't.  We're the trial court of

1  the United States.  That's what we're here for.  But I just
2  feel like the time has come for one serious, major -- I'm not
3  going to say "last" -- but end-game run before we go down to
4  the chute of trial.  Okay?
5      So I will have Mediator Bleich reach out to you, and he
6  will take it from there.  Okay?
7          **MR. WYNNE:**  Okay.
8          **THE COURT:**  So how much time would you like to think
9  about my proposal?  Two weeks?  A week?  Ten days?  Whatever
10 you want.
11     Mr. Wynne?
12         **MR. WYNNE:**  I think two weeks would be good, Your
13 Honor.
14     I have a question about option one.
15         **THE COURT:**  Yes.
16         **MR. WYNNE:**  With the removal of the summary judgment
17 motions, plaintiffs have two summary judgment that -- summary
18 judgments -- that are directed to Netflix equitable defenses
19 for which -- if -- we have argued that if those were denied, we
20 would ask for a bench trial on that, because the extreme
21 prejudice to the jury hearing these issues -- these
22 equitable --
23         **THE COURT:**  Can you just remind me, what are the two
24 equitable defenses?
25         **MR. WYNNE:**  They have an equitable defense of patent

1   misuse, and they have an equitable defense of waiver.  There's
2   also a legal threshold issue on the counterclaim that they have
3   for breach of a RAND obligation.  There's a threshold legal
4   issue as to whether there is any such obligation -- any RAND
5   obligation.  These are what are teed up in those two summary
6   judgment motions that the plaintiffs have filed.  And they may
7   be a large sticking point to being able to get anywhere in
8   terms of the mediation.
9           **THE COURT:**  Well, let me suggest this:  It is not
10  uncommon for cases to have equitable and legal issues.  And, of
11  course, as you know -- and I do have some orders on this, as
12  well -- the Seventh Amendment legal issues are going to get
13  tried first.  I will take up, after that, any equitable issues
14  that remain.
15      Now, it's going to be influenced, to some extent, by the
16  verdict.  So sometimes the issues go away, depending on what
17  the verdict is.  But I will -- after the jury has made all of
18  its factual decisions relevant to the triable -- jury
19  triable -- claims, I will take up the equitable issues.
20      Now, if there are disputed facts that go to those
21  equitable issues, we might just be able to try them without
22  saying the words to the jury.  Without saying "waiver" or
23  "patent misuse" or arguing the claim.  But if you needed to
24  have a finding or two or three, or whatever, on some key
25  facts -- I can imagine what they might be for waiver, for

1  example -- we can do that.  Okay?
2      Now, I'm not -- I want to be clear here -- we're not going
3  to have a 50-page fact finding, you know, verdict that goes
4  down to, on October 6th, did Netflix not send this letter in?
5  Okay?  We're not going to do things like that.  But we can work
6  it out.  I know you -- we can do that.  All right?
7          **MR. WYNNE:**  Right.  Your Honor --
8          **THE COURT:**  So use that as a discussion point and see
9  if that can work.
10     Now, if you believe it just can't work, then just tell me.
11 And then we'll see you in December.  Okay?
12         **MR. WYNNE:**  I understand, Your Honor.  The issue with
13 the patent misuse is the alleged misuse is directed to a party
14 that is not in the case.
15         **THE COURT:**  You're just going to have -- you two talk
16 first.  I mean, for me, the only decision is, if you're
17 amenable to this, I can work hard to have you in middle of
18 June.  And if you're not, you're just going to have to let me
19 have the runway to get this thing done.  So that's not going to
20 be for a while.
21         **MR. WYNNE:**  And on the schedule, just so I understand
22 the Court's schedule, the last two weeks of June are the one
23 time --
24         **THE COURT:**  Vacation time?
25         **MR. WYNNE:**  -- that don't work for any of the parties?

1       **THE COURT:**  Well, we can do July.  Do you want to do
2   July?  I mean -- well, when do you get back?
3       **MR. WYNNE:**  Okay.
4       **THE COURT:**  You can't just get back on a Friday and
5   start on Monday.  What day would work for you?
6       **MR. WYNNE:**  I think July 16th -- is that a -- what's
7   that -- 18th -- whatever the Monday is.
8       **THE COURT:**  The second Monday kind of a thing?
9       **MR. WYNNE:**  Right.  Yep.
10      **MR. JACOB:**  Your Honor, may I request that the
11  parties, if they do agree to option one, meet and confer?
12      **THE COURT:**  Yeah, that's a good idea.  Yeah.
13      **MR. JACOB:**  Because we have availability issues also.
14      **THE COURT:**  Okay.  Why don't you do that.  But the
15  window is really June 1st through let's say -- I'm going to
16  regret this -- but let's say August 30th.  Okay?
17      **MR. WYNNE:**  Thank you, Your Honor.
18      **THE COURT:**  Other than that, December, possibly a
19  little bit later, but that's the best I can do.  Okay?  But try
20  to see if you can work out the other things first.
21      Could you do it -- when is your trip -- your --
22      **MR. WYNNE:**  The last two weeks of June through after
23  the 4th of July.
24      **THE COURT:**  Well, what if we did like May -- oh,
25  shoot, I've got a circuit sitting.  What if we did, like,

1  May 12th? I'm sorry. The best I could do would probably be
2  the end of May. Would that be --
3          **MR. WYNNE:** That's better for us. But to Mr. Jacob's
4  point --
5          **THE COURT:** Okay. Well, you can consider that --
6  May 19th or after.
7          **MR. WYNNE:** Okay.
8          **THE COURT:** Yeah.
9          **MR. WYNNE:** Thank you, Your Honor.
10         **THE COURT:** I can possibly do that.
11     And let me just ask -- just a nonbinding fashion -- just
12  remind me how long you think the trial might be.
13         **MR. WYNNE:** Well, it's a large part with these
14  equitable issues, Your Honor. We think, reasonably, it can be
15  done 17 hours of testimony a side.
16         **THE COURT:** 17 hours?
17         **MR. WYNNE:** With all of the -- all of the -- if you
18  look at the witness lists that were submitted, Netflix
19  identified 43 witnesses. If they're all going to be presented
20  at trial, the number gets -- gets bigger. And so --
21         **THE COURT:** Okay.
22         **MR. WYNNE:** -- it's largely in the hands of who
23  Netflix -- you know -- if we're really going to have that many
24  witnesses, which I can't understand how we could. But
25  that's -- the number was something like 56 hours of testimony

1  if you add up what's in the exhibit list.
2          **THE COURT:** So you think 17 per side would work?
3          **MR. WYNNE:** I think 17 per side would work. We'll
4  make it work, Your Honor.
5          **THE COURT:** Mr. Jacob?
6          **MR. JACOB:** Your Honor, we believe, on the current
7  record, the trial would take 25 hours per side; however, if the
8  Court were to grant Netflix's pending -- single pending summary
9  judgment brief and single pending Daubert brief -- that would
10 shave ten hours off, per side.
11    If the Court were to grant Broadcom's motions, which are
12 not meritorious, that would only shave off three hours per
13 side. So the ROI is clearly in Netflix's motion. So in that
14 case, if the Court were to grant our motions, we do believe
15 that we could try it for 15 hours per side.
16         **MR. WYNNE:** I absolutely disagree with that, Your
17 Honor. They have a number of expert witnesses that would go
18 away if the Court were to grant our summary judgment motions.
19         **THE COURT:** Okay. I understand. Let's just say 17 as
20 a working number. That's 34 hours total. After all the breaks
21 and everything, I usually get a solid four and a half hours per
22 day. So that would be about, say, nine trial days; right?
23         **MR. WYNNE:** Yes, Your Honor.
24         **THE COURT:** That's not bad. So we could do the
25 19th and be done -- even with a little bumper on the end for

1  safety -- be done before you have to leave.
2          **MR. WYNNE:**  Yes, Your Honor.
3          **MR. JACOB:**  Unfortunately, Your Honor, our client
4  representative is gone at the end of May.  So I do believe --
5          **THE COURT:**  Well, you'll talk about it --
6          **MR. JACOB:**  Yes.
7          **THE COURT:**  -- but that is a possibility.  Okay?
8      Okay.  So anything else for today, Mr. Wynne?
9          **MR. WYNNE:**  No, Your Honor.
10         **THE COURT:**  Mr. Jacob?
11         **MR. JACOB:**  No, Your Honor.  Thank you.
12         **THE COURT:**  Okay, great.  So stand by for the
13 mediator, and he'll be in touch.
14     All right.  Thanks very much.
15         **THE CLERK:**  All rise.  Court's in recess.
16              (Proceedings adjourned at 10:58 a.m.)
17                          ---oOo---

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Tuesday, February 6, 2024

_____

Kendra A. Steppler, RPR, CRR

Official Reporter, U.S. District Court