UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROADCOM CORPORATION, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>NETFLIX INC,<br><br>    Defendant. | Case No. 20-cv-04677-JD<br><br>**ORDER RE SUMMARY JUDGMENT ON THE '121 PATENT** |

Plaintiffs Broadcom Corp. and Avago Technologies (together Broadcom) sued defendant Netflix Inc., alleging that Netflix's internet video streaming services and supporting technology infringed twelve patents. *See* Dkt. No. 421 (FAC) ¶¶ 25-439. Netflix counterclaimed, alleging, *inter alia*, that certain of Broadcom's asserted patents are invalid. *See, e.g.*, Dkt. No. 654 ¶¶ 52-55. After years of motion practice and many ineligibility decisions by the Court, *see, e.g.*, Dkt. Nos. 160, 205, 259, 418, the number of remaining claims has been whittled down, *see* Dkt. No. 706 at 3-4, and Netflix now seeks summary judgment as to some of the remaining patents-in-suit, Dkt. No. 451. Specifically, Netflix contends that asserted claims 1 and 3 of U.S. Patent No. 8,259,121 ('121 Patent) are invalid under 35 U.S.C. § 101 because the claims are directed to patent-ineligible subject matters. *See* Dkt. No. 451 at 7-14.

The parties' familiarity with the record is assumed. Summary judgment is granted to Netflix on Broadcom's second claim for relief and Netflix's fourth counterclaim relating to the '121 Patent.

## BACKGROUND

The background facts are undisputed. The '121 patent was issued on September 4, 2012, and is assigned to Avago, which currently holds all substantial rights, title, and interest in and to

the '121 patent. FAC ¶¶ 62, 64. The patented invention "relates to a network adapted to process data. More specifically, the present invention relates to a network environment in an [audio/visual or A/V] system using 'A/V decoders', where the A/V decoders are adapted to process, decode or decompress one or more input data streams." Dkt. No. 421-2 at 1:41-45. The '121 patent explains that, at the time, "[m]ost video processing modules [were] connected together in an ad-hoc manner" and that there was "no known methodological way to connect video processing modules in A/V systems." *Id.* at 1:48-51. This circumstance was said to result in "long development cycles, poor design reuse and an unreliable product." *Id.* at 1:55-57. Broadcom says that embodiments of the patented invention "ameliorate this problem that is particular to A/V networks designed for video processing." Dkt. No. 505 at 2.

Broadcom asserts, and Netflix seeks to establish as invalid, two claims recited in the '121 patent. *See* Dkt. Nos. 451 at 7; 505 at 2. Claim 1 recites:

> A network for processing data configured by a controller to form at least one display pipeline therein by dynamically selecting use of at least two selectable nodes from a plurality of selectable nodes and dynamically concatenating the selected at least two selectable nodes in the network together, wherein said at least one display pipeline has an independent data rate and a flow control module enables said independent data rate.

Dkt. No. 421-2 at 16:33-40. Claim 3, dependent on Claim 1, recites: "The network of claim 1, further comprising at least two display pipelines having different data rates." *Id.* at 16:44-45.

## DISCUSSION

### I. LEGAL STANDARDS

"[A] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact." *IPLearn-Focus, LLC v. Microsoft Corp.*, No. 14-cv-00151-JD, 2015 WL 4192092, at *2 (N.D. Cal. Jul. 10, 2015). "When the moving party has carried its burden," the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radios Corp.*, 475 U.S. 574, 586 (1986). "The burden is on the parties to identify the relevant evidence. The Court will not

root through the record for them." *Gabriel v. Cnty. of Sonoma*, 725 F. Supp. 3d 1062, 1071 (N.D. Cal. 2024). "Resolving a question of patent eligibility is perfectly appropriate on summary judgment," and "[c]onstruing disputed claim terms is not a mandatory precondition to determining Section 101 eligibility." *IPLearn-Focus*, 2015 WL 4192092, at *3.

"The scope of patentable subject matter includes 'any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof.'" *Broadcom Corp. v. Netflix Inc.* (*Broadcom II*), 598 F. Supp. 3d 800, 805 (N.D. Cal. 2022) (quoting 35 U.S.C. § 101). The Supreme Court of the United States has concluded that there are certain implied exceptions to § 101 for "[l]aws of nature, natural phenomena, and abstract ideas," the last of which "embodies the longstanding rule that an idea of itself is not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216, 218 (2014) (cleaned up) (quotations omitted). "These exclusions are intended to guard against undue preemption of innovation and invention." *Broadcom II*, 598 F. Supp. 3d at 805.

To determine whether the challenged patents claim the "building blocks of human ingenuity" or, instead, "integrate the building blocks into something more," courts apply *Alice*'s well-trodden two-step test. 573 U.S. at 216-17. At step one, the Court determines "whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Id.* at 218. "It is often 'sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases.'" *Broadcom II*, 598 F. Supp. 3d at 806 (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016)). The analysis entails ascertaining the "basic character" of the claimed subject matter, *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361 (Fed. Cir. 2023) (citations omitted), and for that, the Court "must avoid describing the claims at a high level of abstraction, divorced from the claim language itself," *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1379 (Fed. Cir. 2024). "For the technology at stake here, the relevant inquiry is 'whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea.'" *Broadcom II*, 598 F. Supp. 3d at 806 (quoting *Enfish*, 822 F.3d at 1335).

3

1    If the claim is directed to an abstract concept, the Court proceeds to step two and looks for an "inventive concept." *Alice*, 573 U.S. at 217 (quotation omitted). Step two basically asks, "What else is there in the claims[?]" *Mayo Collab. Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78 (2012). The Court must "consider the elements of [the] claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Trinity Info Media*, 72 F.4th at 1365 (alteration in original) (quoting *Alice*, 573 U.S. at 217). Merely tacking on claim language relating to "well-understood, routine, conventional" activities and components "previously known to the industry" does not suffice to imbue an otherwise ineligible claim with a patent-eligible "innovative concept." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 773 (Fed. Cir. 2019) (quoting *Alice*, 573 U.S. at 221). "[W]hether a claim element or combination of elements is well-understood, routine and conventional to a [person having ordinary skill in the art (POSITA)] is a question of fact" that "must be proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

## II.  CLAIM 1 IS DIRECTED TO AN ABSTRACT IDEA

The heart of the dispute between Broadcom and Netflix over whether Claim 1 of the '121 patent is directed to an abstract idea turns on a prepositional phrase: "in an A/V system." Claim 1 recites a (1) "network for processing data" (2) "configured . . . to form at least one display pipeline" (3) by "dynamically selecting" and "dynamically concatenating" "at least two selectable nodes" (4) where "at least one display pipeline has an independent data rate" (5) enabled by "a flow control module."[1] Dkt. No. 421-2 at 16:33-40.

Claim 1 is directed to the abstract idea of routing and processing data or information through a network by connecting nodes together. This is a familiar concept rooted in history. For example, if you were in Boston in September 1878 and wanted to make a phone call, it is quite likely you would have been assisted by Emma Nutt, a pioneering switchboard operator who

---

[1] The Court previously construed "display pipeline" to mean a "chain of multiple nodes." Dkt. No. 218 at 5.

1    connected parties by inserting a pair of plugs into the appropriate jacks on the switchboard.[2]  In

2    making the connection, Nutt practiced the idea, and claimed invention, of routing information

3    through a network by connecting nodes on demand.  In the language of the claim, the phone

4    receivers were the "nodes" that "process[ed]" sound waves into electrical signals, and vice versa,

5    and switchboard operators like Nutt would "dynamically" "select[]" and insert plugs into jacks

6    (further "nodes"), thereby "concatenating" them to form a "chain of multiple nodes" through

7    which the electrical signals would be routed, resulting in what anyone today would recognize as a

8    regular phone call.  Dkt. No. 421-2 at 16:33-40.

9           Consequently, it's no overstatement to say that humans have been processing and routing

10   information over a network by connecting nodes since the advent of electric long-distance

11   communication and information-sharing (e.g., the electric telegram, telephones, email).  Under

12   Broadcom's expansive understanding of "node," *cf.* FAC ¶¶ 78 (characterizing devices capable of

13   streaming videos on Netflix, like a phone or gaming console, as well as the servers on which

14   Netflix's content is stored as "nodes"), and the general language with which the claim is written, it

15   appears that any computer system wherein two nodes are "dynamically" connected to process or

16   route information is covered.  *See, e.g.*, *ChargePoint, Inc.*, 920 F.3d at 769 (considering the

17   "breadth with which the claim is written" at *Alice* step one).  The concerns of "undue preemption

18   of innovation and invention" animating the exceptions to § 101 are acutely implicated here,

19   *Broadcom II*, 598 F. Supp. 3d at 805, because such routing and processing of information over a

20   network "has been and continues to be a 'building block of the modern economy,'" *ChargePoint,*

21   *Inc.*, 920 F.3d at 773 (quoting *Alice*, 573 U.S. at 220).

22          That the claim also recites a display pipeline in the network with an "independent data

23   rate" set by a "flow control module" does not change this conclusion.  Dkt. No. 421-2 at 16:38-39.

24   It is true that language narrows the claim's breadth, but the limitation is not of a kind that disturbs

25   the conclusion that the claim's "basic character," *Trinity Info Media*, 72 F.4th at 1361, concerns

---

[2] Hired by Alexander Graham Bell, Emma Nutt was the first woman telephone operator in the world.  She began working at Boston's Edwin Holmes Telephone Dispatch Company on September 1, 1878.  Jennifer Latson, *The Woman Who Made History by Answering the Phone*, TIME (Sept. 1, 2015), https://time.com/4011936/emma-nutt/ (last accessed Dec. 13, 2024).

the "building blocks of human ingenuity" themselves rather than an attempt to "integrate the building blocks into something more." *Alice*, 573 U.S. at 217 (cleaned up) (quoting *Mayo*, 566 US. at 89). A claim need not reach every conceivable manifestation of an idea to be deemed as trying to patent that idea. *Cf. Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1259 (Fed. Cir. 2016) ("The Supreme Court and this court have repeatedly made clear that merely limiting the field of use of the abstract idea . . . does not render the claims any less abstract.").

Broadcom does not argue that, if so understood, Claim 1 is not directed to an abstract idea. *See generally* Dkt. No. 505 at 2-7. Rather, Broadcom says that the claim is more narrowly directed to a "*specific improvement*" in "network architecture in [A/V] systems," Dkt. No. 505 at 2-3 (emphasis in original), and on that ground is more akin to those claims held not to be directed to abstract ideas because they improve computer functionality, *see, e.g.*, *Enfish*, 822 F.3d 1327; *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303 (Fed. Cir. 2020). The unspoken premise of Broadcom's contention is that Claim 1's reference to "[a] network" recites not just any network for processing data but such a network in an A/V system. Dkt. No. 421-2 at 16:33.

To be sure, the specification states that the "present invention relates to a network environment *in an A/V system*," *id.* at 1:42-43 (emphasis added), and Netflix does not dispute that many of the embodiments detailed in the specification contemplate an A/V system or environment. But, although the specification may be "helpful in illuminating what a claim is 'directed to,'" *ChargePoint, Inc.*, 920 F.3d at 766, "reading a limitation from the written description into the claims" is "one of the cardinal sins of patent law," *Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005) (quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001)). Consequently, "reliance on the specification must always yield to the claim language in identifying" whether the claim is directed to an abstract idea. *ChargePoint, Inc.*, 920 F.3d at 766; *see also SuperGuide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004) ("Specifications teach. Claims claim." (quotation omitted)).

The plain language of Claim 1 does not limit the type of environment in which the claimed network can exist to that of an A/V system. In addition, Broadcom has not pointed to anything in the specification tending to show that the claim's material terms -- "processing," "data,"

1  "controller," "display pipeline" as construed by the Court, Dkt. No. 218 at 5-7, "nodes,"
2  "concatenating," "control module," "data rate" -- would be understood on their own or in
3  combination by a POSITA as relating only to networks existing in an A/V system, rather than any
4  network for processing data. *See Phillips*, 415 F.3d at 1314 ("[T]he context in which a term is
5  used in the asserted claim can be highly instructive."). Nor has Broadcom identified "with
6  reasonable particularity" extrinsic evidence suggesting that is the case. *Metro. Life Ins. Co. v.*
7  *Oyedele*, No. 12-cv-04607-JD, 2014 WL 6985079, at *3 (N.D. Cal. Dec. 10, 2014) (citing *Keenan*
8  *v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)). Looking to unasserted claims also does not support
9  Broadcom's position. *See Phillips*, 415 F.3d at 1314 ("Other claims . . . can also be valuable
10 sources of enlightenment as to the meaning of a claim term."). Claim 27's recitations demonstrate
11 that the patentee knew how to use verbiage denoting networks in an A/V system, Dkt. No. 421-2
12 at 18:6-21, thereby undercutting the idea that "network," as used in the claims, was redefined "by
13 implication" to mean a "network in an A/V system." *Trustees of Columbia Univ. v. Symantec*
14 *Corp.*, 811 F.3d 1359, 1364 (Fed. Cir. 2016).

15  Broadcom repeatedly refers to how the "[e]mbodiments in the '121 Patent ameliorate this
16 problem that is particular to A/V networks." Dkt. No. 505 at 2; *see also id.* at 3 (referring to the
17 "claimed embodiments"). But "[e]ven when the specification describes only a single embodiment,
18 the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear
19 intention to limit the claim scope." *Leibel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed.
20 Cir. 2004). The Court can discern no such clear intention here. This case is on all fours with
21 *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138 (Fed. Cir. 2016). There, the Federal
22 Circuit held that several claims reciting methods relating to logic circuit design processes were
23 directed to an abstract idea on the ground that they attempted to claim a mental process that could
24 be done on pen and paper. *Id.* at 1147-49. Pointing to hundreds of pages of code in the
25 specification, the patentee, similar to Broadcom here, attempted to append a limiting prepositional
26 phrase by contending that the claimed methods would "in practice, be performed *on a computer*."
27 *Id.* at 1148 (emphasis added). The Federal Circuit rejected the argument, reasoning that, "[o]n
28 their face, the claims do not call for any form of computer implementation" and noting that the

7

patentee "stops short of arguing that the Asserted Claims must be *construed* as requiring a computer to perform the recited steps." *Id.* at 1149.

So, too, here. Broadcom "never sought such a construction before," and "it does not press for such a construction here" at summary judgment. *Id.* "Its argument therefore fails." *Id.*

## III.     CLAIM 1 LACKS AN INVENTIVE CONCEPT

The Court will now "consider [the rest of] the elements of [the] claim both individually and 'as an ordered combination'" to determine if those elements imbue the claim with an inventive concept. *Trinity Info Media*, 72 F.4th at 1365 (second alteration in original) (quoting *Alice*, 573 U.S. at 217).

Viewing the elements individually, Netflix has met its burden of putting forth materially undisputed evidence from which a reasonable factfinder could find, by clear and convincing evidence, that the additional elements of Claim 1 are "well-understood, routine, conventional" elements "previously known to the industry." *ChargePoint, Inc.*, 920 F.3d at 773. Two of Netflix's experts, Dr. Mark Crovella and Mr. Richard Goodin,[3] opine at length about how "nodes," *see* Dkt. No. 451-1 at Ex. 5 ¶¶ 470-77; 451-1 at Exh. 6 ¶¶ 139-44, the performance of steps "dynamically," *see* Dkt. No. 451-1 at Exh. 5 ¶¶ 465, 467-69, the use of "controllers," Dkt. No. 451-1 at Exh. 5 ¶¶ 460-61, 463; 451-1 at Exh. 6 ¶¶ 120-22, and "valves" to "control data flow" and enable "independent data rate[s]," Dkt. No. 451-1 at Exh. 5 ¶¶ 478-81; 451-1 at Exh. 6 ¶¶ 145-49, were all conventional and well-known components and processes in computer and network technology at the time of the patent's issuance.

Broadcom says there are two fact disputes as to whether the claim's elements, taken individually, were conventional in the art, but those asserted disputes are more smoke than fire. The points are not well taken.

To start, Broadcom contends that Dr. Crovella's own testimony on "nodes" is contradictory and so "create[s] a disputed issue of material fact," insofar as he opines both that the

---

[3] Broadcom has not asked to exclude the opinions of Dr. Crovella and Mr. Goodin under Federal Rule of Evidence 702. *See* Dkt. No. 647.

8

nodes are conventional but also "a specialized type of 'processors' or 'processing modules.'" Dkt. No. 505 at 8.

Not so. The part of Dr. Crovella's report Broadcom highlights summarizes the expert's understanding of the embodiments detailed in the specification and suggests the processors are "specialized," in the sense that they are made to perform a specific function. Dkt. No. 504-6 ¶ 59; 587-1 ¶ 59. It goes too far to say the opinions contradict Dr. Crovella's opinions elsewhere relating to his understanding of whether "nodes," as recited in the claims, are conventional or routine in the art. Dkt. No. 451-1 at Ex. 5 ¶¶ 470-77. Even if Dr. Crovella's opinions were contradictory, the paragraph of the report to which Broadcom cites does not provide a non-speculative basis for denying summary judgment in the face of Mr. Goodin's opinions. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence . . . will be insufficient.").

Broadcom's argument as to the second asserted dispute of fact fails for the reasons its *Alice* step-one arguments did not prevail. Broadcom's proffered evidence that dynamic A/V network configuration may not have been conventional, *see* Dkt. No. 505 at 8-9, is of no moment. That is because Claim 1 on its face does not limit itself to A/V systems or networks, and Broadcom never asked for the claim to be so construed. *See Synopsys, Inc.*, 839 F.3d at 1149. Broadcom's evidence as to the unconventionality of dynamic network configuration in A/V systems cannot provide a non-speculative basis from which a reasonable factfinder could conclude that Netflix did not meet its burden of showing, by clear and convincing evidence, that dynamic configuration was conventional across computer networks generally, let alone networks writ large. *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1293 (Fed. Cir. 2020) ("[W]e have repeatedly held that features that are not claimed are irrelevant as to step 1 or step 2 of the *Mayo/Alice* analysis." (collecting cases)). Consequently, Broadcom's evidence does not create a dispute of material fact.

And when taken as an ordered combination, the elements of Claim 1 still do not suffice to imbue the claim with an inventive concept. The claim recites configuring a network with a controller by selecting and connecting two nodes to form a chain of nodes, and one chain ought to

have an independent data rate set by another module. Dkt. No. 421-2 at 16:33-40. As discussed, these steps mimic the ordinary steps by which switchboard operator Nutt would have routed a phone call in 1878. "Claim 1 'merely describe[s] the functions of the abstract idea itself, without particularity,' which is insufficient under *Alice* step two." *Broadcom II*, 598 F. Supp. 3d at 808 (quoting *Intellectual Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017)). Even if limited to computer networks, "Claim 1 relies on generic computer systems and devices that perform generic computer functions" such as dynamically selecting nodes, processing data, and setting data rates. *Id.* As with its prior arguments, Broadcom relies on assertions and evidence pertaining to the state of A/V network architecture at the time to contend that the ordered combination of the claim's elements is inventive. *See* Dkt. No. 505 at 9-10. But Claim 1 claims far more than just networks in A/V systems. Evidence of unconventionality in that niche does not show that the steps so ordered were not conventional in the broader swath of networks covered by the claim.

## IV.  CLAIM 3 IS DIRECTED TO PATENT-INELIGIBLE SUBJECT MATTER

Netflix contended that Claim 1 of the '121 patent, on which Claim 3 is dependent, was representative, Dkt. No. 451 at 2, and Broadcom never contested this or developed meaningful separate arguments as to Claim 3's validity, Dkt. No. 505 at 3; *see Scanner Techs. Corp. v. ICOS Vision Sys. Corp. N.V.*, 528 F.3d 1365, 1383 (Fed. Cir. 2008) ("[It is] black letter law that a finding of invalidity of an independent claim does not determine the validity of the claims that depend on it."). Accordingly, the Court treats Claim 1 as representative, such that the conclusions regarding invalidity under *Alice* apply with equal force to Claim 3. *See Berkheimer*, 881 F.3d at 1365 ("Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim . . . ."); *Intellectual Ventures*, 838 F.3d at 1316 n.9 ("We focus on claim 1 of the '142 patent, which [plaintiff] states is representative. Addressing each of the asserted claims is unnecessary when 'all the claims are substantially similar and linked to the same abstract idea.'" (quotation omitted)).

**CONCLUSION**

Claims 1 and 3 of the '121 Patent are directed to the patent-ineligible abstract idea of routing and processing information through a network by connecting nodes, and there is no dispute of fact that the claims' elements fail to demonstrate that "the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *ChargePoint, Inc.*, 920 F.3d at 765 (alteration in original) (quoting *Alice*, 573 U.S. at 217-18). Consequently, summary judgment is granted to Netflix on Broadcom's second claim for relief and Netflix's fourth counterclaim.

The Court will issue a separate order for the rest of Netflix's motion for summary judgment. Dkt. No. 451. The parties are directed to confer with the mediator by February 9, 2025, to select a date for further mediation to be held at the mediator's convenience.

**IT IS SO ORDERED.**

Dated: January 8, 2025

JAMES DONATO
United States District Judge